SEYFARTH SHAW LLP
Francis J. Ortman III (SBN 213202)
fortman@seyfarth.com
Andrew M. McNaught (SBN 209093)
amcnaught@seyfarth.com
Selyn Hong (SBN 303398)
shong@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California  94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

SEYFARTH SHAW LLP
David D. Jacobson (SBN 143369)
djacobson@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

Attorneys for Defendants
U.S. XPRESS ENTERPRISES, INC. and
U.S. XPRESS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY AYALA, individually and on behalf of all those similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>U.S. XPRESS ENTERPRISES, INC., U.S. XPRESS, INC., and DOES 1 - 100,<br><br>          Defendants. | Case No.      5:16-cv-137<br><br>**NOTICE OF REMOVAL OF STATE COURT ACTION PURSUANT TO 28 U.S.C. §§ 1332(A)(1), (C) AND (D)(2), 1441(A), 1446 AND 1453**<br><br>[Declarations of Selyn Hong and Amanda Thompson filed concurrently herewith]<br><br>Removed from Superior Court of the State of California, County of San Bernardino, Case No. CIVDS 1518600<br><br>Complaint Filed: December 23, 2015 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF ANTHONY AYALA AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendants U.S. Xpress Enterprises, Inc. ("USXE") and U.S. Xpress, Inc. ("USX") (together, "Defendants") hereby remove the above-referenced action from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California asserting original jurisdiction under 28 U.S.C. §§1332(a)(1) and (c) based on diversity of citizenship jurisdiction, 28 U.S.C. §§1332 (d)(2), the Class Action Fairness Act of 2005 ("CAFA"), and removal jurisdiction under 28 U.S.C. §§1441(a), 1446, and 1453. Defendants state that removal is proper for the following reasons:

## PLEADINGS, PROCESSES, AND ORDERS

1.    On December 23, 2015, Plaintiff Anthony Ayala ("Plaintiff") filed a Class Action Complaint for Violation of the California Labor Code, California Industrial Welfare Commission Orders, and California Unfair Competition Law in the Superior Court of the State of California, County of San Bernardino, entitled, *Anthony Ayala, individually and on behalf of all those similarly situated, Plaintiff vs. U.S. Xpress Enterprises, Inc., U.S. Xpress, Inc., and DOES 1-100, Defendants,* CIVDS 1518600 ("Complaint").  A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

2.    The Complaint alleges the following four purported claims:  (1) failure to provide meal and rest periods or pay wages in lieu thereof in violation of California Labor Code §§ 226.7 and 512 and California Industrial Commissions Wage Order 9-2001, §§ 11, 12, and comparable paragraphs in any other applicable Wage Order; (2) failure to  pay wages for all hours worked in violation of California Labor Code §§ 221, 223, and 1194, paragraph 4 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order; (3) failure to

2

provide itemized pay statements and maintain wage/time records in violation California Labor Code § 226 and paragraphs 7(A) and 7(B) of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)] , or any other applicable Wage Order; and (4) failure to pay wages, failure to provide meal/rest breaks or pay wages in lieu thereof, failure to provide itemized pay statements, and failure to maintain time/pay records in violation of California Unfair Competition Law.  Plaintiff also alleges that Defendants failed to pay all termination wages, including accrued added wages for missed meal/rest periods and wages for off-the-clock-work, within the 30 day limit set forth under California Labor Code §§ 201-203.  (*See* Complaint.)

3.     The Complaint seeks to certify a class of "all truck drivers who worked or work in California for U.S. [X]press after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit."  (Complaint ¶ 8.)

4.     On January 21, 2016, Defendants filed an Answer to the Complaint.  A true and correct copy of the Answer is attached hereto as **Exhibit 2**.

5.     Attached as **Exhibits 3** - **5** are true and correct copies of the remaining pleadings, processes, and orders filed in the state court action within the meaning of 28 U.S.C. § 1446(a).

## TIMELINESS OF REMOVAL

6.     A Notice of Removal is timely when filed within 30 days of service of a complaint. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (removal is timely if made within 30 days after complaint is served on defendant); *see* Cal. Code Civ. Proc. §§ 415.10 & 416.10.

7.     Plaintiff personally served the Complaint on Defendants on December 24, 2015.  (**Exhibit 3**.)

1    8.    This Notice of Removal is timely as it is filed within 30 days of December

2  24, 2015.  *Id.*

3  **JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")**

4    9.    This Court has original jurisdiction of this action under the CAFA, codified

5  in pertinent part at 28 U.S.C. § 1332(d)(2).  This action is properly removable, pursuant

6  to 28 U.S.C. § 1441(a), because the aggregated amount in controversy exceeds

7  $5,000,000, exclusive of interest and costs, at least one class member is a citizen of a

8  state different from any Defendant (28 U.S.C. §§ 1332(d)(2) & (d)(6)), and the number of

9  putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B).

10 **I.    There Is Minimal Diversity For Removal Under CAFA**

11   10.   CAFA requires that "any member of a class of plaintiffs is a citizen of a

12 State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

13   **A.    Plaintiff Is A Citizen Of California**

14   11.   For diversity purposes, a person is a "citizen" of the state in which he is

15 domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A

16 person's domicile is the place he resides with the intention to remain or to which he

17 intends to return.  *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

18 Plaintiff alleges that he "is a resident of California."  (Complaint ¶ 3.)  Residence is

19 *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514,

20 520 (10th Cir. 1994).  For purposes of determining diversity jurisdiction, various types of

21 objective facts can establish the plaintiff's state of domicile, including place of

22 employment.  *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  Based on information

23 from Plaintiff's personnel file, which includes information Plaintiff submitted to USX

24 throughout the course of his employment, Plaintiff has, without exception, listed a

25 California address as his current address, which demonstrates "an intent to remain" in

26 California and establishes domicile in California.  Declaration of Amanda Thompson in

27

28

4

Support of Removal ("Thompson Decl.") ¶ 4.  Neither Plaintiff nor Plaintiff's counsel has provided a different address or expressed any intention that Plaintiff does not intend to remain domiciled in California.  Plaintiff's residence and domicile in California is confirmed by a search of public records for Plaintiff available through the LexisNexis SmartLinx system.  That search shows that, as of the latest date for which information is available, Plaintiff resides in California.  Declaration of Selyn Hong in Support of Removal ¶ 2, **Exhibit A**.  Thus, Plaintiff has, at all relevant times, resided in the State of California and he is, and was at the time of the filing of this action, a citizen of the United States and California.

### B.   Defendants Are Not Citizens Of California

12.   Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).  Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters.  *Id.* at 92-93.  Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based.  *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters was located, where the corporate officers worked, and from where corporate policies and procedures arose).  Thus, the "nerve center" is "where the majority of its executive and administrative functions are performed."  *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001) (citing *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990)).

13.     Defendant USXE is a corporation formed under the laws of the State of Nevada.  Thompson Decl. ¶ 5.  USXE's principal place of business is Chattanooga, Tennessee, which is where USXE's corporate headquarters and executive offices are located and where USXE's high-level officers direct, control, and coordinate its activities.  *Id.*; *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

14.     As such, Defendant USXE has been at all relevant times a citizen of the States of Nevada and Tennessee.  *Id.*  It is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.

15.     Defendant USX is a corporation formed under the laws of the State of Nevada.  Thompson Decl. ¶ 5.  USX's principal place of business is Chattanooga, Tennessee, which is where USX's corporate headquarters and executive offices are located and where USX's high-level officers direct, control, and coordinate its activities. *Id.*; *Friend*, 130 S. Ct. at 1192.

16.     As such, Defendant USX has been at all relevant times a citizen of the States of Nevada and Tennessee.  *Id.*  It is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.

## C.     The Residence Of Doe Defendants Should Be Disregarded For Purposes Of Establishing Removal Jurisdiction

17.     Defendants are not aware of any Doe defendant having been served with a copy of the Summons and Complaint.  Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe Defendants one through one hundred, does not deprive this Court of jurisdiction.

18.     Accordingly, pursuant to 28 U.S.C. § 1332(c), Plaintiff and Defendants have diverse citizenship.  CAFA diversity is satisfied here as at least one Plaintiff is diverse from at least one Defendant.

## II.    There Are More Than 100 Putative Class Members

19.     CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100.  28 U.S.C. § 1332(d)(5)(B).

20.     The putative class is defined as "all truck drivers who worked or work in California for U.S. [X]press after the completion of training at any time since four years before the filing of this legal action until such time as there is a final disposition of this lawsuit."  (Complaint ¶ 8.)

21.     Plaintiff alleges that the putative class "is many thousands of persons[.]" (Complaint ¶ 10.)  Indeed, from December 23, 2011 through December 23, 2015, there are well over 100 individuals who fall within the class described by Plaintiff.  Thus, the 100 class member requirement is met here.

## III.   The Amount In Controversy, Accepting The Allegations In The Complaint As True, Exceeds $25,000,000

22.     While Defendants deny *any* liability as to Plaintiff's claims, it is apparent from the face of the Complaint that the amount in controversy here exceeds $25,000,000. Plaintiff alleges that "[t]he monetary value of [his] claims *exceeds* $25,000."  (Complaint ¶ 5.) (emphasis added)  Plaintiff alleges that his claims are "*typical* of the claims of the [class] he would represent."  (Complaint ¶ 13.) (emphasis added) and he alleges that the number of putative class members with similar claims is "*many thousands*."  (Complaint ¶ 10.) (emphasis added)  Presuming that there are only 1,000 putative class members (instead of the "many thousands" alleged by Plaintiff), multiplied by the amount Plaintiff claims is at issue for each class member (more than $25,000), the amount in controversy exceeds $25,000,000.

7

23.     Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, his class definitions, and calculation of damages in all respects.  However, for purposes of removal only, Defendants base their calculations of the amount in controversy on the allegations, facts known to Defendants, and the class definition as pled by Plaintiff.

24.     "The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will *actually* owe."  *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original) (citations and internal quotation marks omitted).  This burden "is not 'daunting,' as courts recognize that under this standard, a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Id.* at 1204-05 (emphasis in original).[1]

25.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal

---

[1] The Supreme Court has held that evidence establishing the amount in controversy is not required in a notice of removal, which "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

26.     Removal under CAFA is proper where the named plaintiff's total claim for damages (here, over $25,000) is multiplied by the number of potential class members (here, at least 1,000).  *Frederico v. Home Depot*, 507 F.3d 188, 195-197, *rev'd on other grounds* (3rd Cir. 2007) (multiplying named plaintiff's damages by number of putative class members to determine that the amount in controversy exceeded $5,000.000.00). Multiplying Plaintiff's claim for (at least) $25,000 in damages by 1,000 putative class members (which is far less than the "many thousands" Plaintiff alleges) provides for a recovery of $25,000,000.00—far in excess of the required $5,000,000 needed to confer CAFA jurisdiction.  Even if the claim of the average class member was only $5,100.00— about one fifth of Plaintiff's expected recovery—the total amount in controversy would still exceed $5,000,000, due to the "many thousands" of putative class members involved in the class, as defined by Plaintiff.  When attorneys' fees are added to this number, it only becomes more apparent that the jurisdictional minimum has easily been met.

27.     Plaintiff also seeks attorneys' fees.  A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 167463, at *26 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

28.     Based on factors including the damages alleged by Plaintiff and the number of putative class members Plaintiff alleges, the amount in controversy here far exceeds the requirements for CAFA removal and lies somewhere in excess of $5,000,000. As Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $5,000,000, removal is proper.

## JURISDICTION UNDER 28 U.S.C. § 1332(a)

29.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332(a)(1), and is one which may be removed to this Court by Defendants pursuant to 28 U.S.C. section 1441(a), in that this action involves citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**I.     There is Complete Diversity For Removal**

30.     28 U.S.C. section 1332(a)(1) requires that plaintiffs and defendants be "citizens of different states."  28 U.S.C. § 1332(a)(1).

**A.     Plaintiff Is A Citizen Of California**

31.     Plaintiff was at all relevant times, and still is, a citizen of the State of California.  *See supra,* at ¶ 11.

**B.     Defendants Are Not Citizens Of California**

32.     Defendant USXE has been at all relevant times a citizen of the States of Nevada and Tennessee.  It is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.  *See supra,* at ¶¶ 13-14.

33.     Defendant USX has been at all relevant times a citizen of the States of Nevada and Tennessee.  It is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.  *See supra,* at ¶¶ 15-16.

**C.    The Residence Of Doe Defendants Should Be Disregarded For Purposes Of Establishing Removal Jurisdiction**

34.    The existence of Doe Defendants one through one hundred does not deprive this Court of jurisdiction.  *See supra,* at ¶ 17.

35.    Accordingly, pursuant to 28 U.S.C. section 1332(c), Plaintiff and Defendants have diverse citizenship.

**II.    The Amount in Controversy as to Plaintiff's Individual Claims "More Likely Than Not" Exceeds $75,000**

36.    While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied here because it is "more likely than not" that the amount in controversy exceeds the jurisdictional minimum.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, his class definitions, and calculation of damages in all respects.  However, for purposes of removal, Defendants base their calculations of the amount in controversy on the allegations and facts known to Defendants.

37.    When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold.  *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir. 1992).  A defendant may also rely on verdicts in comparable cases to establish the amount in controversy.  *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

38.    Here, Plaintiff prays for the following damages:  For compensatory damages with interest thereon for wages owed for all time worked, whether calculated at the statutory minimum wage rate or regular rate of pay, all meal period and rest break wages owed, all waiting time penalties owed, all damages and/or monies owed for failing to

comply with itemized employee wage statement provisions, injunctive relief, and attorneys' fees.  Plaintiff alleges that the monetary value of his claims "*exceeds* $25,000." (Complaint ¶ 5.) (emphasis added)  As discussed below, Plaintiff's claims for relief, as well as verdicts reached in comparable cases, establish that it is more likely than not that Plaintiff's Complaint places more than $75,000 in controversy.

39.    Plaintiff's first claim is for failure to provide meal and rest periods or pay wages in lieu thereof in violation of California Labor Code §§ 226.7 and 512 and California Industrial Commissions Wage Order 9-2001, §§ 11, 12, and comparable paragraphs in any other applicable Wage Order.  (Complaint at ¶¶ 19-22.)  Under California law, the premium amount owed for a missed meal period pursuant to California Labor Code section 226.7 is one hour of pay at the employee's regular rate of pay for each workday that the meal period is not provided.  Likewise, the premium owed for a missed rest period is also one hour of pay at the employee's regular rate of pay for each for each workday that the rest period is not provided.  Cal. Labor Code § 226.7(c). Plaintiff alleges that Defendants "willfully failed to provide duty free meal/rest periods or pay wages in lieu thereof[.]"  (Complaint ¶ 19.)

40.    Plaintiff's second claim is for failure to pay wages for all hours worked in violation of California Labor Code §§ 221, 223, and 1194, paragraph 4 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order.  (Complaint at ¶¶ 24-27.)  Plaintiff alleges that Defendants "willfully failed to pay to Plaintiff . . . accrued wages for all hours of work performed[.]" (Complaint ¶ 24.)

41.    Plaintiff's third claim is for failure to provide itemized pay statements and maintain wage/time records in violation California Labor Code § 226 and paragraphs 7(A) and 7(B) of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order.  (Complaint at ¶¶ 29-31.)  The

12

penalty for violations of Labor Code § 226(e) is $50 for the first violation and $100 for each subsequent violation, up to a maximum of $4,000 per employee.  Plaintiff alleges that Defendants "willfully failed to provide itemized pay statements to Plaintiff . . . as required by California Labor Code § 226 . . . "  (Complaint ¶ 29.)

42.  Plaintiff also asserts a fourth claim under the California Unfair Competition Law (Business & Professions Code § 17200, *et seq.*).  (Complaint at ¶¶ 33-36.)  This claim type allows a plaintiff to recover restitution in the form of unpaid wages and extends the statute of limitations back an additional year, to four years.  Cal. Bus. & Prof. Code § 17308.  Defendants contend that restitution is not available in connection with a meal or rest break premium, thus Business & Professions Code § 17200 does not operate to extend the statute of limitations as to those claims.  *Murphy v. Kenneth Cole Prod., Inc.,* 40 Cal. 4th 1094 (2007).  However, Plaintiff asserts such a claim, and therefore it is part of the amount in controversy.

43.  Finally, Plaintiff also alleges that Defendants failed to pay all termination wages, including accrued wages for missed meal/rest periods and wages for off-the-clock-work, within the 30 day limit set forth under California Labor Code §§ 201-203.  (Complaint ¶¶ 20, 25.)  Labor Code § 203 authorizes penalties of one day of pay for each day the employer fails to pay the wages due for a maximum of 30 days.  Since Plaintiff alleges that Defendants "willfully failed to pay all termination wages . . . within the 30 day time limit set forth for the payment of termination wages under California Labor Code §§  201-203," (*id.*) it is plausible that Defendants failed to pay Plaintiff his wages due upon termination for at least 30 days, calling for the maximum penalties due under Labor Code § 203.  (*Id.*)

44.  Based on the nature of the claims alleged by Plaintiff, and the applicable rates of pay, the amount in controversy as to Plaintiff's individual claims is "more likely than not" to exceed $75,000.

13

45.     Indeed, the amount in controversy as to Plaintiff's claim for recovery of attorneys' fees, alone, would more likely than not exceed $75,000.  In determining whether a complaint meets the $75,000 threshold, a court may consider the aggregate value of claims for compensatory damages as well as attorneys' fees "throughout the entirety of the litigation."  *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012) ("The Court can use its discretion to determine, within its own experience, that an award of attorneys' fees alone will satisfy the amount in controversy requirement."); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).

46.     Here, Plaintiff alleges various wage and hour violations, including failure to pay wages for all hours worked, failure to provide meal and rest breaks, failure to furnish proper itemized wage statements, and failure to pay all wages due at termination.  (*See* Complaint.)  Under California Labor Code § 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation … is entitled to recover … reasonable attorney's fees[.]"  Cal. Lab. Code § 1194(a).  Similarly, a plaintiff is entitled to recover "reasonable attorney's fees" for successfully pursuing violations under Section 226 of the Labor Code.  Cal. Lab. Code § 226(e)(1).  Plaintiff prays for an award of reasonable attorneys' fees.

47.     Attorneys' fees awarded in similar individual wage/hour cases can exceed the jurisdictional amount in controversy, standing alone.  *See, e.g., Liu v. Wong, et al.*, BC 459007, 2012 Jury Verdicts LEXIS 14830 (L.A. Sup. Ct. July 5, 2010) (awarding attorneys' fees of $177,816.25 for two-plaintiff wage/hour case); *Puerto v. Wild Oats Markets, Inc*., BC359723, 2011 Jury Verdicts LEXIS 213326 (L.A. Sup. Ct. July 5, 2010) (awarding attorneys' fees of $200,000 after concluding that two plaintiffs prevailed on their wage and hour claims for which plaintiffs recovered $56,673.39 in damages,

excluding interest); *Martin v. The Old Turner Inn*, 2003 WL22416020 (Cal. Sup 2003) (awarding $147,610 in attorneys' fees and costs in a single-plaintiff wage/hour case in which the plaintiff recovered $49,508 in compensatory and punitive damages); *Accord, Lippold v. Godiva Chocolatier, Inc*., 2010 U.S. Dist. LEXIS 47144, *11 (N.D. Cal. April 15, 2010) (concluding that defendant's estimate of attorneys' fees in a wage and hour case in the amount excess of $75,000 was a good faith estimate). Accordingly, this case is more likely than not to generate attorneys' fees well in excess of $75,000.

48.     Because diversity of citizenship exists and the amount in controversy as to Plaintiff is over $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a). Therefore, this action is a proper one for removal to this Court.

## VENUE

49.     Venue lies in this Court pursuant to 28 U.S.C. section 1441(a), as this action originally was brought in the Superior Court of the State of California, County of San Bernardino.

## NOTICE OF REMOVAL

50.     Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino.

51.     This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

1

## **PRAYER FOR REMOVAL**

2         WHEREFORE, Defendants pray that the above action now pending before the

3 Superior Court of the State of California for the County of San Bernardino be removed to

4 the United States District Court for the Central District of California.

5

6 DATED: January 22, 2016                    Respectfully Submitted,

7                                            SEYFARTH SHAW LLP

8

9                                            By: /s/ Selyn Hong

10                                               Francis J. Ortman III
                                                 Andrew McNaught
11                                               David D. Jacobson
                                                 Selyn Hong

12                                            Attorneys for Defendants
                                              U.S. XPRESS ENTERPRISES, INC. and
13                                            U.S. XPRESS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF STATE COURT ACTION PURSUANT TO 28 U.S.C. §§ 1332(a)(1), (c) AND d(2), 1441(a),
1446 AND 1453
(SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO, CASE NO. CIVDS 1518600)
24193052v.2