UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 16-137-GW(KKx) | Date | December 22, 2016 |
|---|---|---|---|
| Title | *Anthony Ayala v. U.S XPRESS ENTERPRISES, INC., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David Borgen - by telephone<br>Justin L. Swidler - by telephone<br>James M. Sitkin | James H. Hanson |

**PROCEEDINGS:**   **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [66]**

The Court's Tentative Ruling is circulated and attached hereto.  Court hears oral argument.  For reasons stated on the record, the above-entitled motions are TAKEN UNDER SUBMISSION.  Court to issue ruling.

: 45

Initials of Preparer   JG

*Ayala v. U.S. Xpress Enters., Inc., et al.*, Case No. CV-16-0137-GW (KKx)
Tentative Ruling on Motion for Class Certification

## I. Background

In this putative class action against U.S. Xpress Enterprises, Inc. ("USXE") and U.S. Xpress, Inc. ("USX") (collectively, "Defendants"), Anthony Ayala ("Plaintiff") seeks certification of a class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). *See generally* Mot. for Class Cert. ("Mot."), Docket No. 67. In the Complaint, Plaintiff asserts claims for violations of the California Labor Code and California Industrial Commission Wage Orders, including (1) failure to provide meal and rest periods in violation of Labor Code §§ 226.7 and 512, and Wage Order 9-2001 §§ 11, 12; (2) failure to compensate for all hours of work performed in violation of Labor Code §§ 2221, 223, and 1194, and Wage Order 9-2001 ¶ 4; and (3) failure to provide itemized pay statements and/or maintain required wage/time records in violation of Labor Code § 226, and Wage Order 9-2201 ¶ 7-B. *See generally* Compl., Docket No. 1-1. Plaintiff also alleges one claim for unfair competition in violation of California Business & Professions Code § 17200.[1] *Id.*

USX is a subsidiary of USXE and provides delivery services, including the hauling and delivery of freight loads by truck. *Id.* ¶ 1. USX provides these services to customers in the forty-eight contiguous states. *See* Dep. of Anthony Ayala ("Ayala Dep.") at 55:7-25, Docket No. 80-1. Both Defendants are Nevada corporations with their principal place of business in Chattanooga, Tennessee. *See* Notice of Removal ¶¶ 13-14, Docket No. 1. All executive and company-wide administrative functions, including hiring and firing decisions, compensation decisions, and payroll processing, are performed at the Tennessee headquarters. *See* Decl. of Amanda Thompson ("Thompson Decl.") ¶ 5, Docket No. 80-2. USX does not manage or direct any drivers out of California, but some drivers occasionally drive within the state to complete deliveries. *See* Decl. of Tina Doud ("Doud Decl.") ¶ 2, Docket No. 80-4. Defendants' only physical presence in California is a drop yard in Fontana, California; that facility does not have an operations center or maintenance shop, but rather is merely a trucking terminal with one USX employee that maintains the building and grounds. *See* Thompson Decl. ¶ 7.

---

[1] On January 22, 2016, Defendants removed the action to this Court on the basis of diversity jurisdiction. *See* Notice of Removal ¶ 9, Docket No. 1.

Plaintiff is a California resident who was previously employed by USX as a truck driver. *See* Compl. ¶ 3; Notice of Removal ¶ 11. Plaintiff applied to work at USX online and submitted his application for employment to USX headquarters in Chattanooga, Tennessee, which processed his application at that location. *See* Thompson Decl. ¶ 9. Prior to beginning work for USX, Plaintiff attended a USX orientation in Dallas, Texas. *Id.* ¶ 10.

USX pays most of its drivers for completed deliveries based on the computerized miles attributable to each delivery and certain accessorial pay. *See* Doud Decl. ¶ 2; Decl. of Jaqueline Thompson ("Jacqueline Thompson Decl.") Ex. 12 at 28, Docket No. 67-7 at page 11 (USX handbook). USX maintains business records of each driver's total miles in order to determine the amount to pay each driver, and in order to calculate taxes due in each state where a given driver has traveled. *Id.* Drivers who are not paid by the mile are instead paid a flat rate for each completed trip, which closely resembles mileage pay. *See* Decl. of Diana Johnson at 16:3-18:21 ("Johnson Decl."), Docket No. 80-3. In addition, USX's records include service logs that record each driver's time entries and the location of each driver's truck when a time entry is recorded. *See* Thompson Decl. ¶ 12.

USX's records indicate that, throughout his employment, Plaintiff spent approximately 25% of his employment hours in California, and approximately 19% of his total miles were driven in California. *Id.* In addition, these records indicate that during the relevant time period, USX employed 9,860 drivers who completed deliveries that involved driving in or through California (and therefore meet the Class definition discussed *infra* page 4); during the relevant time period, these drivers traveled in California on a total of 262,345 occasions. *Id.* Of these drivers, approximately 89% are not citizens of California. *Id.* ¶ 13.

In the Complaint, Plaintiff alleges that, as a result of Defendants' policy of paying drivers based on miles driven, he and the putative Class Members were not paid for off-the-clock work, not paid minimum wage, not provided meal and rest periods or a premium in their absence, not given properly itemized pay statements or accurate and complete time and pay records, and not paid accrued wages at the end of employment, in violation of California's wage and hour laws. *See* Compl. ¶¶ 9, 17.

Plaintiff seeks class certification, attorneys' fees and costs, pre-judgment and post-judgment interest, and other just and proper relief. *Id.* at 14:21-28. The proposed Class consists of:

> [A]ll truck drivers who worked or work in California for U.S. Express after the completion of training at any time since four years from the filing of this legal action until such time as there is a final disposition of this lawsuit.

*Id.* ¶ 8.

Now pending before the Court is Plaintiff's Motion for Class Certification. *See* Mot., Docket No. 22. Defendants have opposed the Motion, *see* Opp'n to Mot. ("Opp'n"), Docket No. 76, to which Plaintiff has replied, *see* Reply, Docket No. 82.

## II. Legal Standard

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 2361 (2013); *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[2] and at least one of the subparagraphs of Rule 23(b).[3] *See id.* at 1234. The Court is permitted to consider any material necessary to its determination, though it should not engage in a trial of the merits. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011) (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must*

---

[2] Rule 23(a) requires that the party/parties seeking certification show:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[3] Here, Plaintiff seeks certification under Rule 23(b)(3). A class may be certified under Rule 23(b)(3) where questions of law or fact common to members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

consider the merits if they overlap with the Rule 23(a) requirements."); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (characterizing as "a correct statement of law" the district court's determination that "although it could not 'weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim,' it could 'compar[e] the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification'"); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009) ("The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis."); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975) (approving of class certification analysis where district judge "analyzed the allegations of the complaint and the other material before him (material sufficient to form a reasonable judgment on each requirement), considered the nature and range of proof necessary to establish those allegations, determined as best he was able the future course of the litigation, and then determined that the requirements were met at that time," and noting that a court is permitted to "request the parties to supplement the pleadings with sufficient material to allow an informed judgment on each of the Rule's requirements").

## III. Analysis

Defendants argue that class certification is inappropriate because the predominance requirement of Rule 23(b)(3) is not satisfied. Defendants primarily argue that there is no practical and manageable basis for the Court to determine whether each putative Class Member is subject to California law under the requisite choice-of-law analysis. *See* Opp'n at 1:5-27. In addition, Defendants also raise other individualized inquiries that the Court would have to conduct for each putative Class Member.[4] *Id.*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," in addition to a finding that the class device is "superior" to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). "The predominance inquiry of Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"

---

[4] In their Opposition, Defendants do not address Plaintiff's contentions that the requirements of Rule 23(a) are met, but the Court notes that the issues raised by Defendants with respect to Rule 23(b)(3) would also affect the Court's typicality and commonality analysis under Rule 23(a). *See Vengurlekar v. Silverline Techs., Inc.*, 220 F.R.D. 222, 232 (S.D.N.Y. 2003) (denying class certification based on individualized choice-of-law analyses court would have to perform, explaining that "whether analyzed in terms of commonality, typicality, or predominance, the cohesiveness between plaintiffs and class members needed to justify class certification is glaringly absent").

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (quoting *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001)).

Predominance analysis is "much more rigorous" than commonality analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It does not involve counting the number of common issues, but weighing their significance. *See, e.g., Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (contrasting the "number and importance" of common issues with the "few" and "relatively easy" individualized issues). In addition, the predominance analysis looks, at least in part, to whether there are common issues the adjudication of which "will help achieve judicial economy," further the goal of efficiency and "diminish the need for individual inquiry." *See Vinole*, 571 F.3d at 939, 944 (quoting and citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)); *see also In re Wells Fargo*, 571 F.3d at 958 ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)).

### A. *Individualized Issues Predominate Due to Individual Choice-of-Law Analyses the Court Would Be Required to Conduct*

Defendants contend that class certification is inappropriate because the Court would have to perform individualized choice-of-law analyses for each putative Class Member, yet Plaintiff has not provided the Court with a manageable method of doing so. Defendants point out that very few putative Class Members actually reside in California, and those that do regularly work outside of California. *See* Opp'n at 5:15-26. As such, Defendants argue that California law would only apply to each putative Class Member's claims if Plaintiff is able to demonstrate that California's conflict-of-law rules warrant the application of California law for each putative Class Member. *Id.*

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza*, 666 F.3d at 589 (citation omitted). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Id.* (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 921 (Cal. 2001)). "Such a showing is necessary to ensure that application of California law is

5

constitutional. Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply." *Id.* (internal quotation marks and citations omitted).

    As the Ninth Circuit explained in *Mazza*,

> California law may only be used on a class-wide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." To determine whether the interests of other states outweigh California's interest, the court looks to a three-step governmental interest test:
>
>> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>>
>> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>>
>> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81-82 (Cal. 2010); *Wash Mut. Bank*, 24 Cal.4th at 921).

    In *Mazza*, the Ninth Circuit found that California had a constitutionally sufficient aggregation of contacts to the claims of each putative class member in a false advertising lawsuit because the defendant's headquarters, the advertising agency's headquarters, and one fifth of the proposed class members were all located in California. *Id.* However, the Ninth Circuit held that the district court "abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws." *Id.* The Circuit explained that there were material differences between the elements of a false advertising claim under the various state statutes, as well as the remedies provided. *Id.* at 591. In addition, the Circuit held that the district court had

6

failed to adequately recognize that each foreign state had an interest in applying its law to transactions within its borders, because "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce"; moreover, the district court had failed to recognize that "California's interest in applying its law to residents of foreign states is attenuated." *Id.*

Here, Plaintiff has provided no evidence establishing that California has "significant contact or aggregation of contacts" to the claims of each putative Class Member. *See Mazza*, 666 F.3d at 589. As Defendants point out, Defendants are headquartered in Tennessee and make all of their employment, payroll, and compensation decisions at that location. *See* Thompson Decl. ¶ 5. Moreover, approximately 89% of the putative Class Members do not reside in California, and are not employed full-time in California – rather, they have only temporarily driven in or through California while performing deliveries. *See id.* ¶ 13. In light of these circumstances, it is entirely unclear whether each putative Class Member has sufficient contacts with California such that the application of California law is appropriate.[5]

Second, even assuming each putative Class Member does have sufficient contacts with California, Plaintiff has not provided a manageable way for the Court to perform a conflict-of-law analysis for each of the 48 states that the putative Class Members reside in. Indeed, Defendants point out that even with respect to only Plaintiff's claims, the Court would need to determine whether California or Tennessee law governs, which in itself would be a complex analysis given that the majority of Plaintiff's work was conducted outside of California, Tennessee has different break and minimum wage statutes than California, and Tennessee has strong public policies supporting at-will employment and freedom of contract. *See* Opp'n at 11:3-12:5.

Plaintiff conclusorily argues that "[t]he conflict-of-laws analysis involved in this case will not introduce individualized questions." *See* Mot. at 19:18-24. In support, Plaintiff relies on

---

[5] Plaintiff contends that he has met his burden "by making clear that his claims pertain solely to work performed within the State of California." *See* Reply at 8:4-15. However, the location of the transaction giving rise to the litigation is but one factor considered in evaluating an individual's contacts with a state, which the case Plaintiff relies on in support of its contention makes clear. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307 (1981) ("In deciding constitutional choice-of-law questions . . . this Court has traditionally examined the contacts of the State, whose law was applied, with the parties and the occurrence or transaction giving rise to the litigation."). Moreover, this Court would still have to analyze the relevant factors with respect to each putative Class Member, which would be particularly difficult given the number of states at issue and the varying number of hours each putative Class Member drove within California.

*Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (Cal. 2011). However, *Sullivan* was not a class action, but rather involved three plaintiffs, one of whom resided out of state. *See* 51 Cal.4th at 1192. In *Sullivan*, the Ninth Circuit had certified to the California Supreme Court three questions regarding whether the California Labor Code and the California Business & Professions Code applied to "overtime work performed in California for a California-based employer by out-of-state plaintiffs." *Id.* at 1196.

The California Supreme Court held that the Labor Code did apply to out-of-state plaintiffs working for California employers in California, emphasizing that the Labor Code did not expressly distinguish between residents and nonresidents. *Id.* at 1197. The court reasoned that depriving nonresidents of California's Labor Law protections would encourage California employers to substitute lower paid temporary employees from other states in place of California's employees. *Id.* at 1206. *Sullivan* is therefore significantly distinguishable from the instant action, which (1) involves a class action; (2) against an out-of-state employer; (3) involving mostly nonresident putative Class Members that temporarily work in California.[6]

Of significant importance, after concluding that the Labor Code did apply to nonresident employees employed by in-state employers, the court in *Sullivan* proceeded to conduct a conflict-of-law analysis between the out-of-state plaintiff's home state laws and California laws to determine which state's law should apply to the out-of-state plaintiff. As discussed *supra*, here, it is unclear how the Court would efficiently be able to perform such an analysis for each of the states that the putative Class Members reside in. *See Utility Consumers Action Network v. Spring Solutions, Inc.*, 259 F.R.D. 484, 487-88 (S.D. Cal. 2009) (denying class certification where laws of 50 states were at issue, emphasizing that class action would not be manageable due to choice-of-law analyses); *Vengurlekar v. Silverline Techs., Inc.*, 220 F.R.D. 222, 232 (S.D.N.Y. 2003) (denying class certification because it was "far from clear that the New Jersey [labor] statute applies to all of the wage claims of the proposed class members . . . whether analyzed in terms of commonality, typicality, or predominance, the cohesiveness between

---

[6] In its Reply, Plaintiff contends that other courts have "determined that *Sullivan's* logic extends to employees of non-California-based employers while they work in California." *See* Reply at 9:14-23. However, the case Plaintiff cites in support was also not a class action; moreover, after determining that the Labor Code applied, the court proceeded to perform an in-depth analysis on the plaintiff's contacts with California and determined that there were "sufficient California contacts to [plaintiff's] claims to permit the application of California law." *See Aguilar v. Zep Inc.*, 13-cv-00563, 2014 WL 4245988, *13 (N.D. Cal. Aug. 27, 2014). As discussed *supra*, Plaintiff has not presented a manageable method for the Court to conduct such an analysis for each of the 9,860 putative Class Members.

8

plaintiffs and class members needed to justify class certification is glaringly absent").

Indeed, the predominance issues presented by the instant case were appropriately summarized in *Cruz v. Lawson Software, Inc.*, 08-5900 (MGD/JSM), 2010 WL 890038, *8 (D. Minn. Jan. 5, 2010), a similar wage and labor class action involving employees that resided in 43 different states and worked in multiple different states each year. In *Cruz*, the court denied class certification, emphasizing that:

> [p]laintiffs have failed to provide the [c]ourt with a thorough conflicts of law analysis for the . . . wage and hour laws at issue in this case. For instance, it is possible that a putative class member lived in a state with no applicable state [labor] law, traveled to Minnesota for work-related reasons at some point, for one year worked on a prolonged project in another state that has a state [labor] law which materially conflicts with [Minnesota's labor law], and another year worked on various projects in various states. The Court cannot simply decree that [Minnesota's labor law] applies to this plaintiff's claim for overtime for the last six years. The Court must conduct an analysis of the plaintiff's particular situation and the state laws that potentially apply. There is no shortcut around . . . conducting an individualized choice of law analysis for each putative class member. Such a task would be herculean, particularly given the potential applicability of the laws of all fifty states, the varying geographic nature of each putative plaintiff's job history, and the number of putative class members.

*Cruz*, 2010 WL 890038, at *8.

These issues alone prevent class certification. *See Vengurlekar*, 220 F.R.D. at 228 (holding that potential application of substantive law of multiple states established that common issues of law were not present and class certification was not warranted); *Lewis Tree Serv., Inc. v. Lucent Tech. Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) ("Courts have refused to certify nationwide class actions where the substantive law of multiple states must be applied."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 256, 370 (4th Cir. 2004) (A plaintiff has "the burden of showing that common questions of law predominate, and [it] cannot meet this burden when the various [applicable state laws] laws have not been identified and compared.").

### B. Individualized Inquiries Predominate for Plaintiff's Minimum Wage Claims

Defendants also point out that there are additional individualized inquiries the Court would have to make in the instant action, which preclude certification under Rule 23(b)(3). For example, with respect to Plaintiff's claim that Defendants failed to pay minimum wage for all hours of work performed, Plaintiff would have to demonstrate that there were specific hours in

9

which each putative Class Member did not receive minimum wage. *See* Opp'n at 13:22-26. Defendants point out that merely showing that USX maintained a compensation system based on mileage does not establish liability for a minimum wage claim under California law. *See Reinhardt v. Gemini Motor Transport*, 869 F.Supp.2d 1158, 1168 (E.D. Cal. 2012) ("'Compliance with the minimum wage law is determined by analyzing the compensation paid for each hour worked; averaging hourly compensation is not permitted under California Law.'" (quoting *Sheppard v. N. Orange Cnty. Reg'l Occupational Pr.*, 191 Cal.App.4th 278, 297 n.5 (Cal. 2010)).

The Court would agree. In a recent California wage-and-hour class action brought by a putative class of truck drivers (all of whom were California residents) who were paid by the mile instead of by the hour, a court in this District refused to certify the putative class. *See Burnell v. Swift Transp. Co. of Az., LLC*, No. 10-809-VAP (SPx), 2016 WL 2621616 (C.D. Cal. May 4, 2016). The court explained that, although it was undisputed that the defendant maintained a policy of compensating drivers based on miles driven, there was no evidence it had a policy *not* to pay drivers minimum wage for all work completed, and thus there was no indication that the putative class was "denied a minimum wage in a manner appropriate for class-wide resolution." *Id.* at *3. The court reasoned that there was a wide variation in "how long any particular driver performed any of the[] allegedly uncompensated tasks (e.g., waiting, conducting pre- and post-trip vehicle inspections, filling out and submitting paperwork, refueling, and communicating with dispatchers)," demonstrating that an individualized inquiry would be required to determine whether the defendant was liable for not paying minimum wage. *Id.*

Similarly, here, while there is evidence that Defendants maintain a policy of compensating drivers based on mileage, there is no evidence that Defendants maintain a policy of not paying drivers minimum wage. Thus, as in *Burnell*, the Court would have to make an individualized determination with respect to each putative Class Member as to whether Defendants are liable for failing to pay minimum wage.

### C. Individualized Issues Predominate for Plaintiff's Rest and Meal Break Claims

Defendants also contend that individualized issues predominate with respect to whether USX prevented each putative Class Member from taking meal and rest breaks. *See* Opp'n at 16:5-18:22. Defendants argue that Plaintiff has offered no method for distinguishing between a meal or rest breaks that a driver was entitled to take, but voluntarily elected not to take, and one

that a driver was prevented from taking by Defendants. *Id.* Indeed, Defendants point out that Plaintiff's own testimony confirms that Plaintiff took meal breaks when he worked, and could not recall ever being unable to take a break. *See* Ayala Dep. at 173:16-174:6. Plaintiff also testified that he was free to schedule rest breaks as he pleased, and that no one from USX ever told him he could not take a meal or rest break. *Id.* at 176:21-177:21; 183:18-21.

Plaintiffs contend that their theory of liability is based on the allegation that USX's companywide policy regarding work breaks "are incompatible with California meal and rest period laws on their face," because they do not expressly provide for meal or rest periods of the duration or timing that California mandates. *See* Mot. at 13:26-14:3.

The Ninth Circuit has emphasized that "it is an abuse of discretion for the district court to rely on uniform policies 'to the near exclusion of other relevant factors touching on predominance.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (quoting *In re Wells Fargo*, 571 F.3d at 957). In *In re Wells Fargo*, the Ninth Circuit reversed a district court's certification of a class for claims related to an employer's internal exemption policy because the court had relied entirely on the internal policy and had disregarded the "existence of other potential individual issues that may make class treatment difficult if not impossible." *See In re Wells Fargo*, 571 F.3d at 958.

In contrast, in *Abdullah*, the Ninth Circuit affirmed a district court's certification of a class for claims that the defendant had failed to provide proper meal and rest breaks, explaining that the district court had not merely relied on the defendant's defective policy, but had expressly "found that nearly all of the evidence in the record—including [the plaintiff's] testimony about [the defendant's] actual business practices, as well as the declarations of [the defendant's] employees—support a finding that common questions would predominate." *Id.* at 965. Specifically, *Abdullah* held that the evidence indicated that the defendant's policy as implemented required that on-duty meal breaks be taken, in violation of California law. *Id.* at 965-66; *see also Ruiz v. XPO Last Mile, Inc.*, No. 5CV2125 JLS (KSC), 2016 WL 4515859, *7 (S.D. Cal. Feb. 1, 2016) (certifying class where evidence, including testimony of drivers and documentary evidence, established "at least a question of whether Defendant structured its business in a way that gave rise to an unofficial policy of not providing breaks or created a work environment in which it was difficult for the Drivers to take breaks required by California law."); *Antemate v. Estenson Logistics, LLC*, CV 14-5255 DSF (RZx), 2015 WL 3822267, *2 (C.D. Cal.

11

June 15, 2016) (certifying class alleging meal and rest break violations where the plaintiff established, through substantive evidence, that the company's informal policies and practices created an environment in which class members were routinely pressured not to take breaks).[7]

Here, Plaintiff contends that USX's policy is defective because it does not expressly allow for meal and rest breaks. *See* Mot. at 13:26-14:3. However, Plaintiff has not provided any evidence indicating that USX's policy, as implemented, violates California law. USX's failure to maintain an affirmative policy providing for meal and rest breaks, on its own, is insufficient to establish a common theory of liability. *See Cole v. CRST, Inc., et al.*, 317 F.R.D. 141, 144-45 (C.D. Cal. 2016) (decertifying class where plaintiff's theory of liability rested "on the assumption that [the defendant's] failure to maintain an affirmative policy allowing for meal and rest breaks creates a rebuttable presumption that the breaks were not taken. This argument fails . . . . [Under California law] an employers' liability springs not simply from a defective policy, but from proof that rest breaks were unlawfully denied.").

Absent evidence that USX's policy, as implemented class-wide, violates California law, the Court would have to conduct individualized inquiries into whether each putative Class Member took meal and rest breaks, and if they did not, the reasons why. As such, class certification under Rule 23(b) is inappropriate. *See Cole*, 317 F.R.D. at 145-46 ("As [the plaintiff' cannot show that [the D]efendant had a policy of preventing drivers from taking meal and rest breaks, and because there is evidence in the record of drivers taking meal and rest breaks without interference from [the defendant], individualized inquiries predominate.").

### D. Conclusion

The Court would agree that the significant individualized inquiries it would have to conduct with respect to each putative Class Member establish that the predominance requirement of Rule 23(b) is not satisfied. As such, class certification under Rule 23(b) is not warranted.

## IV. Conclusion

For all of the foregoing reasons, the Court would DENY Plaintiff's Motion for Class Certification.

---

[7] Plaintiff claims that Defendants "ignore[] these authorities in their opposition." *See* Reply at 23:2-5. However, as discussed *infra*, these cases are distinguishable because here, Plaintiff has presented no evidence that Defendants implemented their policies in a manner that discouraged the putative Class Members from taking meal and rest breaks.