Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
Scopelitis, Garvin, Light, Hanson & Feary, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101
P: 626-795-4700
F: 626-795-4790

James H. Hanson, *Pro Hac Vice*
jhanson@scopelitis.com
R. Jay Taylor, Jr., *Pro Hac Vice*
jtaylor@scopelitis.com
E. Ashley Paynter, *Pro Hac Vice*
apaynter@scopelitis.com
Alaina C. Hawley (SBN 309191)
ahawley@scopelitis.com
James A. Eckhart (SBN 321101)
jeckhart@scopelitis.com
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-637-1777
F: 317-687-2414

Adam C. Smedstad (SBN 303591)
asmedstad@scopelitis.com
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
3214 W. McGraw Street, Suite 301F
Seattle, WA  98199
P: 206-288-6192
F: 206-299-9375

Attorneys for Defendants, U.S. Xpress Enterprises, Inc. and U.S. Xpress, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY AYALA, individually and on behalf of all those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br><br>U.S. XPRESS ENTERPRISES, INC., U.S. XPRESS, INC., and DOES 1 - 100,<br><br>                    Defendants. | Case No.: 5:16-cv-00137-GW-KK<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Before: Hon. George H. Wu<br><br>Hearing: December 20, 2018<br>Time: 8:30 a.m.<br>Courtroom: 9D<br><br>Trial Date: February 5, 2019 |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS AND BACKGROUND ........................................................................ 2

**III.  ARGUMENT** ....................................................................................................... 3

    A.    Summary Judgment Standard............................................................... 3

    B.    Application of California Law In This Case Would Unreasonably
          Burden Interstate Commerce ................................................................ 4

    C.    There is No Classwide Meal and Rest Break Claim ..................... 8

          1.    USX Complied with California's Break Laws ..................... 8

          2.    The PHMSA Has Preempted California's Break Laws
               for Hazardous Materials Loads ............................................. 11

          3.    At Best, California Law Only Applies When Class Members
               Worked the Entire Day in California ................................. 13

    D.    The Class's Minimum Wage Claim Has No Legal or Factual Basis......... 14

          1.    USX's Pay System Properly Compensated Class Members
               for All Tasks........................................................................ 14

          2.    USX's Policies Did Not Convert Off-Duty Time to
               On-Duty Time ...................................................................... 17

          3.    The FAAAA Preempts State Laws That Prevent Motor
               Carriers From Offering Particular Services ................... 21

    E.    The Wage Statement Claims Are Untimely................................... 22

    F.    Class Members Cannot Recover Section 203 Penalties............... 24

          1.    There Is No Evidence Defendants Willfully Failed to
               Pay Any Wages .................................................................... 24

          2.    Section 203 Penalties Are Not Permitted for Non-Payment of
               Premiums for Missed Meal and Rest Breaks................... 28

    G.    The Class's Claims Under California's Unfair Competition
           Law ("UCL") Should Also Be Dismissed ................................... 28

    H.    USXE Is Not A Proper Defendant ................................................. 29

IV.   CONCLUSION................................................................................................ 30

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Amaral v. Cintas Corp. No. 2*,
  78 Cal. Rptr. 3d 572 (Cal. App. 1st Dist. 2008)....................................25, 26, 27

*Amey v. Cinemark USA Inc.*,
  No. 13-CV-05669-WHO, 2015 WL 4148366 (N.D. Cal. July 9, 2015).....................23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................3, 4

*Barnhill v. Robert Saunders & Co.*,
  177 Cal. Rptr. 803 (Cal. App. 1st Dist. 1981) ............................................................25

*Bibb v. Navajo Freight Lines, Inc.*,
  359 U.S. 520 (1959) ........................................................................................................5

*Bradescu v. Hillstone Rest. Group, Inc.*, SACV 13-1289-GW RZX,
  2014 WL 5312546 (C.D. Cal. Sept. 18, 2014) ............................................................25

*Brewer v. Gen. Nutrition Corp.*,
  No. 11-cv-3587, 2015 WL 5072039 (N.D. Cal. Aug. 27, 2015) ..................................23

*Brinker Rest. Corp. v. Sup. Ct.*,
  53 Cal. 4th 1004 (2012) ...........................................................................................9, 10

*Cal. Trucking Ass'n v. Su*,
  903 F.3d 953 (9th Cir. 2018) ........................................................................................22

*Cavanaugh v. S. Cal. Permanente Med. Grp., Inc.*,
  583 F. Supp. 2d 1109 (C.D. Cal. 2008) ..........................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ......................................................................................................26

*Cleveland v. Groceryworks.com, LLC*,
  No. 14-CV-00231-JCS, 2016 WL 4140504 (N.D. Cal. Aug. 4, 2016)...................23, 28

*Cole v. CRST, Inc.*,
  317 F.R.D. 141 (C.D. Cal. 2016) .................................................................................10

*Cole v. CRST, Inc.*, EDCV 08-1570-VAP (SPX),
  2012 WL 4479237 (C.D. Cal. Sept. 27, 2012)........................................................17, 18

*Cole v. CRST, Inc.*,
  2017 WL 1234215  (C.D. Cal. March 30, 2017) ............................................15, 16, 26

*Dan's City Used Cars, Inc. v. Pelkey*,
  569 U.S. 251 (2013) ................................................................................................21, 22

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) ......................................................................................26

*Dilts v. Penske Logistics, LLC*,
  769 F.3d 637 (9th Cir. 2014).........................................................................................22

*Dilts v. Penske Logistics, LLC*,
  188 F. Supp. 3d 1016 (S.D. Cal. 2016) .........................................................................10

*Francisco v. Emeritus Corp.*,
  CV1702871BROSSX, 2017 WL 7790038 (C.D. Cal. July 14, 2017)............................29

ii

*FTC v. Stefanchik*,
   559 F.3d 924 (9th Cir. 2009) ..............................................................................4

*Gomez v. Lincare, Inc.*,
   173 Cal. App. 4th 508 (2009) .....................................................................19, 20

*Guerrero v. Halliburton Energy Servs., Inc.*,
   231 F. Supp. 3d 797 (E.D. Cal. 2017) ...............................................................29

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989) ............................................................................................4

*Henryhand v. Digital Sys. LLC*,
   LACV1302735JAKAGRX, 2014 WL 11728721 (C.D. Cal. May 19, 2014)..........24, 28

*Hirst v. Skywest, Inc.*,
   No. 15 C 02036, 2016 WL 2986978 (N.D. Ill. May 24, 2016)................................6, 7

*Hirst v. Skywest, Inc.*,
   283 F. Supp. 3d 684 (N.D. Ill. 2017)..................................................................6

*Johnson v. Serenity Transp., Inc.*,
   No. 15-cv-02004-JSC, 2018 WL 3760983 (N.D. Cal. Aug. 8, 2018) ..........................30

*Kassel v. Consol. Freightways Corp.*,
   450 U.S. 662 (1981) ............................................................................................5

*Kirby v. Immoos Fire Protec., Inc.*,
   274 P.3d 1160 (Cal. 2012).................................................................................28

*Ling v. P.F. Chang's China Bistro, Inc.*,
   200 Cal. Rptr. 3d 230 (Cal. App. 6th Dist. 2016) ...........................................28

*Lockard v. v. Pizza Hut*,
   162 F. 3d 1062 (10th Cir. 1998) .......................................................................30

*Lucas v. Michael Kors (USA), Inc.*,
   CV181608MWFMRWX, 2018 WL 2146403 .................................................29

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................23

*Maddock v. KB Homes, Inc.*,
   631 F. Supp. 2d 1226 (C.D. Cal. 2007) ...........................................................30

*Maldonado v. Epsilon Plastics, Inc.*,
   232 Cal. Rptr. 3d 461 (Cal. App. 2d Dist. 2018), *review denied* ...................25

*Mendiola v. CPS Sec. Sol'ns, Inc.*,
   60 Cal. 4th 833 (2015) ................................................................................18, 19

*Mitchell v. Abercrombie & Fitch*,
   C2-04-306, 2005 WL 1159412 (S.D. Ohio May 17, 2005) ...............................7

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000)................................................................................18, 19

*Munoz v. Giumarra Vinyards Corp.*,
   No. 1:09-cv-0703 AWI JLT, 2015 WL 5350563 (E.D. Cal. Sep. 11, 2015) ...............10

*Murphy v. Kenneth Cole Prods., Inc.*,
   40 Cal. 4th 1094 (2007)......................................................................................9

*Nguyen v. Baxter Healthcare Corp.*, 8:10-CV-01436-CJC,
   2011 WL 6018284 (C.D. Cal. Nov. 28, 2011) ................................................24

iii

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ................................................................4

*Nw., Inc. v. Ginsberg*,
  572 U.S. 273 (2014) .............................................................................21

*Oman v. Delta Airlines, Inc.*,
  889 F.3d 1075 (9th Cir. 2018) ..............................................................27

*Parson v. Golden State FC, LLC*,
  No. 16-CV-00405-JST, 2016 WL 1734010 (N.D. Cal. May 2, 2016) ........29

*Perez v. Performance Food Grp., Inc.*,
  No. LA CV17-00357 JAK (SKx), 2017 WL 6940526 (C.D. Cal. Dec. 15, 2017) .......10

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ...............................................................................4

*Raymond Motor Transp., Inc. v. Rice*,
  434 U.S. 429 (1978) ...............................................................................5

*Ridgeway v. Wal-Mart Stores, Inc.*,
  107 F. Supp. 3d 1044 (N.D. Cal. 2015) .................................................16

*Ridgeway v. Wal-Mart Stores, Inc.*,
  2017 WL 363214 (N.D. Cal. Jan. 25, 2017) ..........................................26

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) .............................................................................21

*Rubin v. Wal–Mart Stores, Inc.*,
  599 F. Supp. 2d 1176 (N.D. Cal. 2009) ................................................28

*S. Pac. Co. v. Az. ex rel. Sullivan*,
  325 U.S. 761 (1945) ...........................................................................7, 8

*Pedroza v. PetSmart, Inc.*, ED CV 11-298 GHK DTB,
  2012 WL 9506073 (C.D. Cal. June 14, 2012) .......................................25

*Singh v. Gonzales*,
  502 F.3d 1128 (9th Cir. 2007) ..............................................................21

*Stewart v. San Luis Ambul., Inc.*,
  878 F.3d 883 (9th Cir. 2017) .................................................24, 25, 28

*Tekoh v. County of Los Angeles*,
  270 F. Supp. 3d 1163 (C.D. Cal. 2017) ...................................................4

*Urrutia v. Chipotle Mexican Grill, Inc.*,
  No. 16-02065-BRO (MRWx), 2017 WL 2901717 (C.D. Cal. June 16, 2017) .............29

*Vaquero v. Stoneledge Furniture, LLC*,
  9 Cal. App. 5th 98 (Ct. App. 2017) ......................................................16

*Vasquez v. Wells Fargo Bank, Nat'l Ass'n.*,
  77 F. Supp.3d 911 (N.D. Cal. 2015) ....................................................29

*Velazquez v. Costco Wholesale Corp.*,
  603 Fed. Appx. 584 (9th Cir. 2015) ................................................25, 26

*Villalpando v. Exel Direct Inc.*,
  No. 12-CV-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ........23

*Ward v. United Airlines, Inc.*,
  889 F.3d 1068 (9th Cir. 2018) ..............................................................27

iv

*Ward v. United Airlines, Inc.*,
   No. C 15-02309 WHA, 2016 WL 3906077 (N.D. Cal. July 19, 2016) .................4, 5, 6

## Statutes

49 U.S.C. 5103 ..............................................................................................................12
49 U.S.C. 5125(a)(1) ....................................................................................................12
49 U.S.C. 5125(a)(2) ....................................................................................................12
49 U.S.C. § 5125 ...........................................................................................................12
Cal. Code of Civil Proc. § 340(a) .................................................................................23
Cal. Lab. Code § 203(a) ...............................................................................................25
Cal. Lab. Code § 226.2 .......................................................................................1, 14, 15
Cal. Lab. Code § 226.7(b) ..............................................................................................9
Cal. Lab. Code § 226.7(c) ............................................................................................10
Cal. Lab. Code § 512(a), and (2) ...................................................................................9
California Labor Code § 226(a) ........................................................................22, 23, 24
California Labor Code § 226.7 ...........................................................................9, 10, 11
Section 203 and Section 226 ..................................................................................passim
section 203, subdivision (b) ..........................................................................................28
Section 226 .............................................................................................................23, 24
U.S. CONST. art. 1, § 8 ...................................................................................................4

## Rules

Fed. R. Civ. P. 56(a), (c) ................................................................................................3

## Regulations

49 C.F.R. Part 395 ...........................................................................................................3
49 C.F.R. Part 395.3(a)(ii) ............................................................................................17
49 C.F.R. § 177.800 ................................................................................................12, 13
49 C.F.R. § 395.3(a)(1) .................................................................................................17
49 C.F.R., Part 107, Subpart C .....................................................................................12
49 CFR 172.101 ............................................................................................................13
Cal. Code Regs. tit. 8, § 13520 .....................................................................................26
Cal. Code Regs, tit. 9, §§ 11040(A), 11040(12) ............................................................9

## Other Authorities

83 Fed. Reg. 47966- .....................................................................................................12
H.R. Rep. No. 101-444(I) .............................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

Defendants, U.S. Xpress, Inc. ("USX") and U.S. Xpress Enterprises, Inc. ("USXE"), respectfully submit this Memorandum of Points and Authorities in Support of their Motion for Summary Judgment.

## I.   **INTRODUCTION**

The theories advanced by the Class Members overstate the applicability and scope of California wage and hour law, compelling the Court to enter judgment for Defendants as a matter of law. As an initial matter, the Dormant Commerce Clause prohibits the type of case Class Members advance—a case seeking to impose a heavy and impermissible burden on interstate commerce by requiring a nonresident employer that operates nationally to comply with the wage-and-hour laws of individual states. Class Members' claims should be rejected for this reason alone.

Even if California applies to the Class Members' claims, they impermissibly seek both to *expand* and *contract* California's statutes. Class Members seek to expand the meal and rest break requirements to require an affirmative policy, when courts have held that USX complies with California law by letting Class Members take breaks whenever they choose. Likewise, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") has recently determined that California's meal and rest break laws do not apply to loads containing hazardous materials. Class Members argue further that activities they engaged in that were directly related to the piece being compensated (the delivery of the load) are not compensated by USX's pay program—even though Cal. Lab. Code § 226.2 explicitly permits this type of arrangement.

Class Members told this Court that they could prove their case by showing USX maintained several illegal policies. However, the Class Members are incapable of pointing to cognizable record evidence that those policies existed as Class Members imagined. Specifically, USX does not have a cargo security policy that required Class Members to act as security guards while off-duty in the sleeper berth, nor did USX require Class Members to remain constantly "on-call" for potential communications from USX even while in the sleeper berth. Class Members have oversold the reach and impact of

1

1  these policies. Summary judgment should therefore be entered against the Class Members
2  as outlined below.

3  ## II.  FACTS AND BACKGROUND

4          USX is a for-hire motor carrier authorized by the Federal Motor Carrier Safety
5  Administration ("FMCSA"), an agency of the U.S. Department of Transportation
6  ("DOT") to provide interstate transportation services to customers throughout the United
7  States, Canada, and Mexico. *Defendants' Statement of Uncontroverted Facts and
8  Conclusions of Law* ("SUF"), ¶ 1. USX's central operations are in its Chattanooga,
9  Tennessee, headquarters, where decisions about hiring, firing, and compensation of
10 drivers are made. *SUF*, ¶ 3. USX maintains additional terminals in Illinois, Texas,
11 Mississippi, Pennsylvania, Ohio, Indiana, Georgia, and Florida. *SUF*, ¶ 5. USX used to
12 maintain a terminal in Colton, California, that then moved to Fontana, California; that
13 facility only has one USX employee on staff and is not an operations or maintenance
14 center. *SUF*, ¶¶ 7-8. USX also does very little work in California. *SUF*, ¶¶ 96-97.

15         USX hires drivers like Class Members to deliver its loads. *SUF*, ¶ 12. While some
16 drivers are assigned to dedicated accounts where they return home each night, the
17 majority of drivers and all Class Members run "over-the-road" in trucks for days or weeks
18 at a time. *Id.* Some of the Class Members operate by themselves and others operate in
19 teams of two drivers. *Id.* Their trucks have DOT-compliant sleeper berths—i.e., rooms
20 attached to the truck with adequate space for sleeping, storage, entertainment, and eating.
21 *SUF*, ¶ 26. Class Members were paid a fixed amount using a designated mileage rate
22 based on the miles associated with the delivery of the load as compensation for delivering
23 a load. *SUF*, ¶¶ 37-38, 56. USX's Driver Handbook explains that delivering the load
24 involves a variety of tasks. *SUF*, ¶ 35. Besides driving the load from one location to
25 another, the driver is expected to perform all other tasks required to deliver the load,
26 including receiving the dispatch for the load, planning for the trip, performing DOT-
27 required pre-trip and post-trip inspections, fueling, communicating with customers,
28 waiting to load and unload, and completing paperwork. *Id.* Class Members also received

2

1  accessorial pay for other task they perform while delivering the load, such as layovers or
2  unusually long waits at customer facilities. *SUF*, ¶ 38.

3  USX required Class Members to attend orientation as part of the application and
4  qualification process before being hired and beginning work. *SUF*, ¶ 14. USX offers
5  orientation at eight different locations, including Irving, Texas, where Plaintiff Ayala
6  attended; Olive Branch, Mississippi; Shippensburg, Pennsylvania; Springfield, Ohio;
7  Indianapolis, Indiana; Tunnel Hill, Georgia; and Jacksonville, Florida. *Id.* While USX at
8  one-time years ago when it had a terminal in California offered orientation in California
9  USX did not offer orientation in California during the class period. *Id.* As part of
10  orientation, USX explained that Class Members are responsible to take reasonable
11  measures to protect the load while over-the-road, like parking truck and trailer in a safe
12  location, locking the doors of the truck, and taking the keys with them when they left the
13  truck. *SUF*, ¶ 19. USX did not tell Class Members that they could not leave the truck
14  unguarded; by contrast, USX instructed Class Members to take breaks whenever they
15  needed or wanted. *SUF*, ¶ 23. USX also reviewed the DOT hours-of-service ("HOS")
16  regulations , 49 C.F.R. Part 395, with Class Members and emphasized that USX expected
17  Class Members to abide by those regulations. *SUF*, ¶ 22.

18  USXE is the parent company of USX. Unlike USX, USXE is not a regulated, for-
19  hire motor carrier. *SUF*, ¶ 2. It does not own any trucks nor does it employ any drivers.
20  *Id.* Neither Plaintiff Ayala nor any of the Class Members were actually employed by
21  USXE, performed any services on behalf of USXE, or were paid by USXE. *SUF*, ¶¶ 2-3,
22  10-11. USXE is not involved in the hiring, supervising, or firing of Class Members, nor
23  does it assign them work or pay them. *Id.*

## III.  **ARGUMENT**

### A.  **Summary Judgment Standard**

26  A motion for summary judgment should be granted if there is no genuine issue of
27  material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.
28  P. 56(a), (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A moving

3

party without the burden of persuasion may carry its burden of production on summary judgment by negating an essential element of the opposing party's claim or defense or by 'showing' the opposing party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Cavanaugh v. S. Cal. Permanente Med. Grp., Inc.*, 583 F. Supp. 2d 1109, 1123 (C.D. Cal. 2008) (citing *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1102. "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Tekoh v. County of Los Angeles*, 270 F. Supp. 3d 1163, 1168 (C.D. Cal. 2017) (quoting *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)). Instead, they must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

**B.   Application of California Law In This Case Would Unreasonably Burden Interstate Commerce**

The U.S. Constitution imbues Congress with the power to "regulate Commerce with foreign nations and among the several States." U.S. CONST. art. 1, § 8. Embedded in this affirmative grant of authority to Congress is an "implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989). A state law "runs afoul" of this Dormant Commerce Clause when it "places an undue burden" on interstate commerce "such that it exceeds the local benefits of the law." *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL 3906077, at*5 (N.D. Cal. July 19, 2016) (currently on appeal to the Ninth Circuit, which has certified a question to the California Supreme Court) (citing *Pike*

4

*v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The application of California's employment laws to transient employees like Class Members, who work for non-resident employers—like USX—in interstate commerce throughout the continental United States, and who travel in and out of California only occasionally, would promote exactly the kind of economic Balkanization that the Dormant Commerce Clause is meant to avoid.

Indeed, recognizing the importance of uniformioty in this area, the U.S. Supreme Court has prohibited this type of burden on interstate trucking numerous times. *See*, *e.g.*, *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 674-75 (1981) (striking down Iowa highway safety law that banned trucks greater than 60 feet in length, stating that because the Iowa statute was different from those rules prevailing elsewhere and required changes in the business model of interstate carriers the state's minimal safety interest was outweighed by the burden the regulation placed on commerce); *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 444 (1978) (striking down highway safety law banning the use of 65-foot double semi-trailers when degree of interference with interstate commerce outweighed purported safety benefits); *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 529 (1959) (holding Illinois statute regarding use of a specific mudguard while operating on Illinois highways violates Commerce Clause because, although Illinois has a significant interest in regulating the safety on its highways, the "regulation of mudguards is not one of the matters admitting diversity of treatment, according to the special requirements of local conditions").

More recently, a district court for the Northern District of California found the Dormant Commerce Clause applied to a wage statement claim in *Ward*. In *Ward*, California resident pilots sued their employer for failure to provide proper wage statements. 2016 WL 3906077, at *1. The employer moved for summary judgment, and the district court granted the employer's motion because, among other reasons, applying wage statement laws imposed "too great an administrative burden" on its interstate business. *Id.* at *6. Indeed, the district court found that the application of the wage and hour laws of each state through which workers—like Class Members—travel would

5

require the non-resident employer to monitor the worker's "precise hours spent working in each state and determine which state's laws applied," a problem compounded by the fact that, as here, "multiple states' laws could apply simultaneously" by virtue of the workers' transient, nationwide work. *Id.* at *5. *Ward* had little difficulty concluding that "such a burden outweighs the local benefits" of applying California law. *Id.*; *see also Hirst v. Skywest, Inc.*, No. 15 C 02036, 2016 WL 2986978, at *10-11 (N.D. Ill. May 24, 2016) (finding the imposition of state law wage-and-hour claims on a national airline was an undue burden on interstate commerce and dismissing the claims under the Dormant Commerce Clause); *Hirst*, 283 F. Supp. 3d 684 (holding plaintiff's amended complaint failed under the Dormant Commerce Clause).

The same problem exists here. If this Court holds that Class Members are entitled to California's wage-and-hour protections while working in California—in other words, that residency is enough to garner the protections of a state's wage-and-hour law even though their work is not principally localized in California—then USX will be forced to have multiple sets of policies for individuals depending on their geographic location and residence. For example, if a Class Member was a team driver with an Illinois resident co-driver on a load from Chicago to Los Angeles, USX would have to use Illinois' policies for the Illinois driver while the team was in Illinois (but the Class Member would remain on USX's standard Tennessee-based policies); could use the Tennessee policies for both drivers while they crossed the states in between Illinois and California; and would have to use California-compliant policies for just the Class Member once the team crossed the California border. On this one load, then, USX would have to track multiple wage-and-hour laws, change the pay structure multiple times, and deal with the inevitable dissatisfaction of two drivers performing the same work but receiving different treatment. USX moves thousands of loads across the continental United States every day. To constantly adjust its pay, break, and other wage-and-hour practices for drivers based simply on their residency is unworkable. Class Members may suggest that USX could simply treat *all* of its drivers in accordance with California's wage-and-hour policies in

6

order to avoid this problem. But such a solution is fundamentally at odds with the Dormant Commerce Clause. *See Mitchell v. Abercrombie & Fitch*, C2-04-306, 2005 WL 1159412, at *4 (S.D. Ohio May 17, 2005) (explaining that adoption of the most restrictive law creates the type of burden on interstate commerce the Commerce Clause forbids).

That California has a police power interest in the regulation of working conditions is no answer to this problem. The Supreme Court has repeatedly recognized a need for uniformity in the regulations affecting interstate trucking. Indeed, interstate delivery of freight is the cornerstone of interstate commerce in the United States and interfering in the labor market for the provision of those services necessarily impedes both the uniformity of regulation and its very flow. *See Hirst*, 2016 WL 2986978, at *10-11. As the Supreme Court has recognized: "The principal that, without controlling Congressional action, a state may not regulate interstate commerce so as substantially to affect its flow or deprive it of needed uniformity in its regulation is not to be avoided by simply invoking the convenient apologetics of the police power." *S. Pac. Co. v. Az. ex rel. Sullivan*, 325 U.S. 761, 779-80 (1945) (quotations and citations omitted).

Further, holding that the Dormant Commerce Clause prohibits the application of California's wage-and-hour laws to California resident drivers who perform interstate work for an out-of-state employer does not mean that the Class Members will be completely bereft of state wage-and-hour protections. It simply means California's protections are not the ones that apply. It makes much more sense for USX and its drivers to be governed by Tennessee wage-and-hour laws. After all, Class Members were not hired in California, and USX has its principal place of business in Chattanooga, Tennessee, and runs its Human Resource, Payroll, and Compliance departments out of Tennessee. *SUF*, ¶ 3. There is no strong connection to California: USX does not conduct orientation for drivers in California, does not have dispatchers or other supervisory personnel in California, and only performs a small percentage of its total work in California. *SUF*, ¶¶ 6-9, 14, 96-97. Specifically, in 2017:

7

- USX trucks ran 567,540,674 total miles. Only 2.26% of those miles (12,859,505) were run in California.

- USX hauled a total of 1,163,632 loads. Of those loads, only 2.84% (33,073) had either an origin or destination in the State of California and only 0.48% (5,556) both picked up and delivered in California.

- 15,730 loads (or 1.35%) were delivered in California, while 1,147,902 (or 98.65%) were delivered outside California.

- 5.03% of USX's revenue from its trucking operations was attributable to loads originating in California, and 3.62% to loads delivered in California. Only 0.35% of the revenue was attributable to loads that both picked up and delivered in California. *Id.*

This Court should therefore hold that application of California law to Class Members would violate the Dormant Commerce Clause and enter summary judgment against the Class Members on the entirety of their claims.

## C.   There is No Classwide Meal and Rest Break Claim

Class Members' meal and rest break claims fail as a matter of law because they cannot show what they promised in their Renewed Motion for Class Certification: a company-wide policy of preventing Class Members from taking California-compliant breaks. Moreover, the PHMSA has held that California's meal and rest break laws have been explicitly preempted with respect to hazardous materials loads. Finally, if this Court does permit Class Members to move forward with their claims, it should hold that the meal and rest break regulations do not address, and do not govern, days in which Class Members work in both California and another state.

### 1.   USX Complied with California's Break Laws

The Court should enter summary judgment in favor of USX on Class Members' meal and rest break claims because the undisputed evidence shows that USX had a break policy broader than California's requirements. Specifically, USX allowed its drivers to take meal and rest breaks *at any time*. SUF, ¶¶ 23, 41-44, 49, 52-53, 55, 59, 61, 64, 68,

8

1   73, 83, 86, 91, 93. USX's policies did not prevent any Class Member from taking a break,
2   and USX has never told any Class Member that they could not take a meal or rest break.
3   It is insufficient for Class Members to show that USX had *no* meal and rest break policy—
4   they must show that USX had an affirmative policy to prevent Class Members from taking
5   their legal breaks. The Class Members cannot do so. Indeed, Plaintiff Ayala's own
6   testimony shows that Class Members could and did take breaks whenever he wanted.
7   *SUF*, ¶¶ 41-44.

8       California's meal and rest break rules require employers to (1) provide employees
9   the opportunity to take 30-minute off duty meal periods at specified intervals (one
10  beginning before the end of the fifth hour of work and a second beginning before the end
11  of the tenth hour of work), *see* Cal. Lab. Code § 512(a), and (2) authorize and permit a
12  net ten-minute rest period for every four hours of work. *See Brinker Rest. Corp. v. Sup.
13  Ct.*, 53 Cal. 4th 1004, 1040 (2012); Cal. Code Regs, tit. 9, §§ 11040(A), 11040(12)
14  ("Wage Order No. 9"). *Brinker* establishes both the quality of an "off-duty" meal break –
15  the employer must "relieve[] its employees of all duty, relinquish[] control over their
16  activities and permit[] them a reasonable opportunity to take an uninterrupted 30-minute
17  break," – and the conduct triggering an employer's obligation to pay its employees
18  premium pay – the employer must *"not impede or discourage them from doing so.*"
19  *Brinker Rest. Corp.*, 53 Cal. 4th at 1040 (emphasis added). While the first clause describes
20  the nature of the "off-duty" break an employer must provide, it is the second clause on
21  which an employer's liability for premium pay turns. Critically, echoing the language in
22  California Labor Code § 226.7 ("Section 226.7"), the second clause explains an employer
23  triggers liability to pay an employee premium pay when it, *in fact,* impedes or discourages
24  employees from taking an uninterrupted off-duty meal break. *See id.*; *compare* Cal. Lab.
25  Code § 226.7(b) ("An employer shall not require an employee to work during a meal or
26  rest or recovery period mandated pursuant to an applicable statute, or applicable
27  regulation, standard, or order of the Industrial Welfare Commission."); *see also Murphy
28  v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1113-14 (2007) (recognizing that the

9

obligation to pay premium wages is triggered by the employee being "forced to forgo rest and meal periods").  As a result, USX cannot be liable for premium pay as a result of missed or late meal breaks unless the Class Members show that USX impeded or discouraged them from taking those meal breaks. In other words, unless there is *classwide* evidence USX required Class Members to work during a particular meal break, it cannot be liable to the Class Members for premium pay as a result of late or missed meal breaks.

Further, an employer has no obligation to adopt a meal and rest break policy or to police employees to ensure that breaks are taken. *See*, *e.g.*, *Perez v. Performance Food Grp., Inc.*, No. LA CV17-00357 JAK (SKx), 2017 WL 6940526, at *7 (C.D. Cal. Dec. 15, 2017) (citing string of cases); *Cole v. CRST, Inc.*, 317 F.R.D. 141, 145 (C.D. Cal. 2016). The employer incurs no liability when an employee elects to work through a break or take it later than the end of the fifth hour of work. *See Brinker*, 53 Cal. 4th at 1040.

Consequently, even if the Court concludes that USX's meal break policy of allowing drivers to take their breaks at any time with no restriction as to frequency or length is somehow a non-compliant meal break policy as a matter of law, the Class Members' claim still cannot succeed because the Class does not (and cannot) demonstrate that USX forced the Class Members to forego compliant meal breaks. *See* Cal. Lab. Code § 226.7(c); Wage Order No. 9-2001 § 11(D). Indeed, the problem with relying on policy-based arguments is that they fail to create an evidentiary bridge between the alleged policy at issue and any particular missed meal or rest break. To succeed on a classwide claim for meal and rest break violations, California law is clear that Class Members must show USX prohibited every meal break at issue, every time, for everybody and failed to authorize and permit every rest break at issue, every time, for everybody. *See e.g.*, *Dilts v. Penske Logistics, LLC*, 188 F. Supp. 3d 1016, 1019-20 (S.D. Cal. 2016); *Cole*, 317 F.R.D. at 145. That connection between the alleged policy and actual violations is missing and Class Members have advanced no way to bridge the evidentiary gap. *See Brinker,* 53 Cal. 4th at 1041 (recognizing that an employer's obligation to pay an employee premium pay is contained in Section 226.7 and the applicable wage order); *Munoz v. Giumarra*

10

*Vinyards Corp.*, No. 1:09-cv-0703 AWI JLT, 2015 WL 5350563, at *3 (E.D. Cal. Sep. 11, 2015) (noting that the penalty for meal and rest break arises from Section 226.7).

Finally, Class Members cannot credibly argue that USX had policies—including the cargo security policy[1] or unwritten policies—preventing them from taking meal and rest breaks because Plaintiff Ayala and Class Members admit that they took breaks and had discretion about when and for how long to take them. *SUF*, ¶¶ 23, 41-45, 49, 52-53, 55, 59-64, 68, 73, 83, 86, 88, 91, 93. Plaintiff Ayala testified that he took breaks every day he worked for USX and never complained that he was unable to take breaks. *SUF*, ¶ 42. He was free to schedule rest breaks as he pleased, and "as a general rule" he could take meal breaks if he wanted them. *SUF*, ¶ 43. And no one from USX ever told Plaintiff Ayala that he was not allowed to take meal or rest breaks at any time. *SUF*, ¶ 44. Similarly, Class Members noted that they were never told they could not take a break; that they were instructed during training that they could take a break at any time; and that they did, in fact, take frequent breaks. *SUF*, ¶¶ 23, 41-45, 49, 52-53, 55, 59-64, 68, 73, 83, 86, 88, 91, 93. During those breaks, they were free to leave their truck—eat a meal, take a shower, or go shopping. Their collective testimony supports only one inference: that USX neither prevented nor obstructed Class Members from taking meal or rest breaks. Accordingly, there is no genuine issue of fact regarding that USX is not liable for alleged meal and rest break violations, and the Court should enter summary judgement against the Class on these claims.

### 2. The PHMSA Has Preempted California's Break Laws for Hazardous Materials Loads

Class Members also do not have claims for meal and rest breaks while they were under a hazardous materials load. On September 21, 2018, PHMSA, an agency of the

---

[1] USX disagrees with Plaintiff Ayala's interpretation of the "cargo security policy," as detailed in Section D.2 below. The fact that Plaintiff Ayala and other Class Members were generally not required to attend the truck and the load and could and did take breaks establishes that such policy does not transform off-duty break time into on-duty time.

11

DOT, determined that California's meal and rest break requirements "are preempted by 49 U.S.C. 5125(a)(1) and 49 U.S.C. 5125(a)(2) with respect to all drivers of motor vehicles that are transporting hazardous materials" because they "create an unnecessary delay in the transportation of hazardous materials." 83 Fed. Reg. 47966-47967. It found that California's requirements both make it impossible to comply with, and are an obstacle to accomplishing and carrying out, the requirement in the Hazardous Materials Regulations that "[a]ll shipments of hazardous materials must be transported without unnecessary delay, from and including the time of commencement of the loading of the hazardous materials until its final unloading at destination." 49 C.F.R. § 177.800.

This Court should defer to the PHMSA's decision. As originally enacted by Congress in 1975, the Hazardous Materials Transportation Act ("HMTA") included a preemption provision "to preclude a multiplicity of State and local regulations and the potential for varying as well as conflicting regulations in the area of hazardous materials transportation." PHMSA properly made this determination under the standards and procedures set forth in 49 U.S.C. § 5125 and rules promulgated thereunder at 49 C.F.R., Part 107, Subpart C. Congress created this process to be "a binding administrative process for determining whether State and local requirements are preempted." H.R. Rep. No. 101-444(I), 101st Cong., 2d Sess. 48 (1989)). Given Congress's express preemption of certain state laws and Congress' express authorization of PHMSA to determine preemption in a legally binding manner, this Court should enforce PHMSA's determination that California's break laws do not apply to hazardous materials loads.

During the class period, approximately 1,171 loads hauled by Class Members in California between 2011 and the present contained hazardous materials, (SUF, ¶ 27) which is defined for purposes of the unnecessary delay rule as:

> a substance or material that the Secretary of Transportation has determined is capable of posing an unreasonable risk to health, safety, and property when transported in commerce, and has designated as hazardous under section 5103 of Federal hazardous materials transportation law (49 U.S.C. 5103). The term includes hazardous substances, hazardous wastes, marine pollutants, elevated temperature materials, materials designated as hazardous in the Hazardous

12

Materials Table (See 49 CFR 172.101), and materials that meet the defining criteria for hazard classes and divisions in part 173 of this subchapter.

49 C.F.R. § 177.800. This Court should conclude as a matter of law that Class Members cannot recover for any alleged meal or rest break violations associated with these loads.

### 3. At Best, California Law Only Applies When Class Members Worked the Entire Day in California

Even if this Court declines to grant USX's motion for summary judgment in full on the meal and rest break claims, it should still limit the meal and rest break claims to days on which Class Members only worked in California. California law makes no provisions for when employees cross state lines during their workday. Instead, the regulations calculate when employees are owed breaks based on how many hours they have worked—i.e., a rest break is owed every four hours and a meal break is due before the end of the fifth hour of work. Wage Order No. 9 §§ 11-12. Because the regulations do not address the scenario where a worker crosses state lines during the workday, the Court should hold that they do not apply to those days.

To apply California's break laws to Class Members on days they worked both in California and another state—would be an unjustified expansion of California law. Consider these situations:

• Class Member works two hours out-of-state. He then crosses the border and works three hours within California. He has performed 5 total hours of work, but should not be entitled to a meal break because he has not worked those 5 hours in California.

• Class Member works two hours out-of-state. She takes a 30-minute off-duty break and then crosses the border and works an additional five hours within California. She has performed 7 total hours of work and taken a 30-minute off-duty break. She should not be entitled to another meal break, even though she has not yet taken one inside California.

The only logical way to resolve these inconsistencies is to apply California's break requirements only when Class Members have spent the entire day working within California.

13

### D.  The Class's Minimum Wage Claim Has No Legal or Factual Basis

The Class's minimum wage claim is based on two distinct theories, both of which fail as a matter of law. Class Members first allege that they were not paid the minimum wage because they were paid on a piece-rate basis for miles driven and were not separately compensated for additional non-driving tasks they performed. This argument fails because California law expressly permits piece-rate payments to cover tasks "directly related" to the work performed. *See* Cal. Lab. Code § 226.2. Class Members additionally ask this Court to consider their time spent in the sleeper berth as compensable work time under a variety of theories, including allegations that USX required Class Members to serve as security guards around the clock or otherwise be on call. This theory likewise fails because according to Class Members' own testimony with limited exceptions, they were not required to stay with the load during their off-duty time, and even if they were "on-call", USX did not exert enough control over them to convert this off-duty time to compensable hours worked. Even if sleeper berth time was otherwise compensable, such an interpretation of California's minimum wage law would be preempted by the Federal Aviation Administration Authorization Act ("FAAAA") for high-value loads.

### 1.  USX's Pay System Properly Compensated Class Members for All Tasks

It is undisputed that USX paid Plaintiff and Class Members a fixed amount for delivered loads. *SUF*, ¶¶ 35, 37-38, 56 That rate is calculated for each load based on the number of miles attributable to the load (determined and communicated to the driver before the load was ever hauled). *Id.* The rate is not based on actual miles driven, nor does it only cover time spent driving. *Id.* As the Class Members themselves described, delivery of a load requires the following tasks: picking up trailers, dropping off trailers, communicating with dispatch, fueling the truck, complete pre- and post-trip inspections, and waiting at and exchanging papers with the shipper or receiver, *SUF*, ¶¶ 56, 58. Plaintiff Ayala likewise conceded in his deposition that this pay compensated him for driving and non-driving tasks *directly related* to each load he delivered, including time

14

spent receiving dispatch instructions, trip planning, performing pre-trip and post-trip inspections, fueling the truck, and doing paperwork. *SUF*, ¶ 37. As Plaintiff Ayala explained, his pay "covers everything I got to do to get it there." *Id.*

USX's handbook clearly states that:

> The Company pays drivers the designated mileage rate as compensation for completing a trip and delivering a load on behalf of the Company. In order to complete the trip and deliver the load, the driver is required to perform various job functions, and the mileage pay is designed to compensate a driver for all hours worked by the driver performing those job functions in completing the trip and delivering the load (i.e., all on-duty time, both driving and non-driving), including, but not limited to, receiving the dispatch, trip planning for the load, pre-trip and post-trip inspections of equipment, driving, fueling, on-duty breaks, dealing with customers, waiting to load and unload, and completing and returning paperwork for the load, unless otherwise noted. The mileage-based pay formula describes the basis for a driver's compensation; it does not define the work for which the drivers are compensated. In other words, the mileage-based pay is intended to compensate drivers for all of the work they perform for the Company, not just the time they spend driving.

*SUF*, ¶ 35.

The Class Members have argued that the mileage-based formula used to calculate pay for the delivery of a load violates California law by failing to separately compensate the drivers for any non-driving tasks. The Class Members' testimony, USX policy, and California law are at odds with that argument. Employers that use a piece-rate system need only separately compensate "nonproductive time" if that time "is not directly related to the activity being compensated on a piece-rate basis." Cal. Lab. Code § 226.2. In *Cole*, a truck driver brought a class action lawsuit against the motor carrier that employed him for a number of claims, including a claim for failure to pay minimum wage for nonproductive tasks. *Cole*, 2017 WL 1234215, at *8. The motor carrier moved for summary judgment on whether its mileage-based compensation system covered those nonproductive tasks. *Id.* The district court for the Central District of California granted the motor carrier's motion because the driver handbook and the plaintiff's own testimony showed that the mileage-based pay "was designed to cover all of [his] on-duty driving and not driving time . . . includ[ing] picking up and delivery of freight, performing pre-

15

trip and post-trip inspections, opening and closing the trailer doors, taking care of the trailers, fueling, and waiting to load or unload." *Id.* (internal quotations omitted).

In an effort to avoid the plain language of USX's compensation policy, Class Members relied on *Ridgeway v. Wal-Mart Stores, Inc.*, and *Vaquero v. Stoneledge Furniture, LLC*, to certify this claim, but these cases are distinguishable. In *Ridgeway*, the district court granted summary judgment for the plaintiffs on whether nonproductive time was "directly related" to the piece rate pay because the driver handbook specified the "activities for which drivers are not paid." *Ridgeway v. Wal-Mart Stores, Inc.*, 107 F. Supp. 3d 1044, 1052 (N.D. Cal. 2015). USX's handbook—like the handbook in *Cole*— does not list unpaid activities. *SUF*, ¶ 35, *USX Driver Handbook* at USXA000781. Instead, it properly explains that the mileage-based pay formula computes an amount that the driver will earn for delivery of the load, which is designed to "compensate a driver for all hours worked by the driver performing those job functions in completing the trip and delivering the load." *Id.* Likewise, while the employer in *Ridgeway* used actual miles, USX uses "dispatched miles"—i.e., a pre-determined number of miles associated with the load as determined by Rand McNally or other mileage guides as the shortest route from origin to destination. *Id.* Class Members knew how many "dispatched miles" were associated with the load before they ever hauled it. *Id.* Consequently, the conclusions drawn in *Ridgeway* with payment for actual miles driven and additional pay for some, but not all, of the tasks required for the drivers are without persuasive value in the factual context of this case.

*Vaquero* is also distinguishable, insofar as it requires employers to pay separately for rest periods *actually taken*. *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal. App. 5th 98, 117 (Ct. App. 2017). Class Members in this case have alleged that they did not, in fact, take rest breaks. Class Members cannot recover both premium pay for *missed* rest breaks and separate payment for the same rest breaks they now claim they took. USX has no duty to record rest breaks, and Class Members bear the burden of proof on showing USX prevented or impeded them from taking rest breaks (as explained *supra*), Class

16

Members would have to show actual rest breaks taken in California for which they did not receive separate payment in order for this claim to survive. They have not and cannot, and summary judgment should be entered against them.

Finally, even accepting Class Members' argument that USX's compensation policy illegally failed to separately compensate them for non-driving tasks, that is not enough. Instead, Class Members must prove that their performance of allegedly uncompensated non-driving work resulted in payment of less than the minimum wage *in each hour during which the non-driving work was performed*. Again, the *Cole* court is instructive: "assuming a driver was paid $.30 per mile, and drives for 30 minutes at 60 m.p.h. and then waits to load or unload for a total of 30 minutes, that driver earns $9.00 for that hour of work," an amount "exceed[ing] [at that time] the California minimum wage." *Cole v. CRST, Inc.*, EDCV 08-1570-VAP (SPX), 2012 WL 4479237, at *8 (C.D. Cal. Sept. 27, 2012), *abrogated on other grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014). Class Members have yet to identify a single hour in which they (1) performed non-driving tasks (or, for that matter, driving tasks) in California, and (2) did not receive the minimum wage.

### 2.     USX's Policies Did Not Convert Off-Duty Time to On-Duty Time

USX has no policy that converts off-duty time to compensable work time. Under the federal HOS regulations, drivers may spend *up to* 14 hours in on-duty statuses each day.[2] After that, the driver must be in an off-duty status for at least 10 hours. 49 C.F.R. § 395.3(a)(1). During that 10-hour window, many Class Members avail themselves of the sleeper berth available in their tractor to sleep, eat, or talk on the phone. *SUF*, ¶¶ 40, 51, 66, 94. Others will stay at the homes of friends or a hotel. *SUF*, ¶ 34. All USX asks during this period, for non-high value loads, is that the Class Member take common sense

---

[2] Beginning July 1, 2013, the federal HOS regulations provided that drivers must take a 30-minute "rest break" in which they are relieved of duty for the truck and the load, 49 C.F.R. Part 395.3(a)(ii), thereby effectively reducing the maximum of on-duty time during the 14-hour window to 13.5 hours.

measures, like parking the truck and load in a safe location, backing the trailer up to a wall or other trailer if possible, locking the doors while under load, and not leaving the keys in the truck. *SUF*, ¶¶ 16-17, 19-21, 46-47, 50, 53, 62, 72,78. USX does not expect Class Members to patrol the freight or even check on it at any particular interval of time. *SUF*, ¶¶ 16-21, 87, 92. Likewise, while taking breaks during their 14 hours of possible "on-duty" time, these steps were all that USX expected the Class Members to do in order to secure their truck and their load. *Id.* And this is how the Class Members understood the policy. *SUF*, ¶¶ 16-21, 46-47, 50, 53, 62, 72, 78. Indeed, Class Members testified that all they felt they needed to do in order to comply with their "cargo security responsibilities," was to lock the truck, take the keys with them, park in a well-lit area, and, if available, back the trailer up against another trailer or a wall to prevent access to the doors. *Id.* After accomplishing these tasks, the Class Members were free to go about their personal business as they saw fit. *Id.* Specifically, as discussed above, Plaintiff Ayala testified that he could take breaks whenever he pleased, *SUF*, ¶¶ 41-44, as did his co-driver Glen Wayne. *SUF*, ¶¶ 45-47. Other Class Members testified that when they took breaks during the day they could go into a Wal-Mart and shop, do laundry at a truck stop, or take a shower. *SUF*, ¶¶ 46, 55, 68. Consequently, USX did not control the Class Members' off-duty time such that the Court should consider it compensable.

Of course, in determining whether time is compensable, the dispositive consideration under California law is to what extent the employer controls the employee. *See Mendiola v. CPS Sec. Sol'ns, Inc.*, 60 Cal. 4th 833, 840 (2015); *Morillon v. Royal Packing Co.*, 22 Cal. 4th 575 (2000). "When an employer directs, commands, or restrains an employee from leaving the work place . . . that employee remains subject to the employers control." *Morillon*, 22 Cal. 4th at 583 (quotations and citations omitted). Here, drivers under non-high value loads could and did leave their trucks if they wished to go

about their personal business.[3] Consequently, the Court should conclude that their off-duty time is not compensable as a matter of law. *See id.*

However, even if the Court considers the time the drivers spent off-duty in their trucks "on-call" time, the Court should still conclude that such time is non-compensable. "On-call waiting time may be compensable only if it is spent primarily for the benefit of the employer and its business." *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 523 (2009). "A determination of whether on-call waiting time is spent predominately for the employer's benefit depends on two considerations: (1) the parties' agreement and (2) the degree to which the employee is free to engage in personal activities." *Id.* Courts consider a number of factors in determining whether an employee is free to engage in personal activities, including: "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restricts on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether the use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." *Mendiola*, 60 Cal. 4th at 841 (citing *Gomez*, 173 Cal. App. 4th at 523-24).

These factors compel the conclusion that time Class Members logged as "off-duty" either in or away from their sleeper berths is not compensable. *SUF*, ¶ 34. First, as discussed above, there is no on-premises living requirement. Second, there are no specific geographical restrictions on a solo drivers' movements during his or her sleeper berth time for non-high value loads.[4] Third, it is USX policy to limit calls or messages during

---

[3] Class Members hauling High Value loads are prohibited from stopping for 200 miles from the pickup point of their load, requiring them to take breaks before commencing on their trip. *SUF*, ¶ 20.

[4] Generally, if a Class Member was part of a team when he or she was driving for USX, his or her sleeper berth time would have been spent inside the truck while it was moving. In this Motion, USX is not seeking a ruling on the compensability of sleeper berth time spent in a moving truck by a team driver.

19

a drivers' 10-hour break sleeper berth time and to not expect a response to messages sent during that time window. *SUF*, ¶ 29. Fourth, as discussed below, USX does not have a general expectation regarding when a Class Member would be required to respond to a message over the on-board computer. *SUF*, ¶¶ 29, 48, 51, 67, 69, 79, 85, 90. To the extent such a message was urgent, the Class Member's manager may call the Class Member, and a Class Member had the ability to utilize an app on his or her mobile phone to review and respond to messages on-the-go. *SUF*, ¶¶ 29, 69. Finally, with respect to whether Class Members actually engaged in personal activities during the alleged "on-duty" time, the evidence overwhelmingly demonstrates that they did. To the extent they kept an ear out for disturbances to the truck or the load when they chose to stay in the truck overnight, it was the same level of caution that any person would exercise when going to sleep for the night. Obviously, were the truck to catch on fire or be broken into, the Class Member would respond. However, after securing his or her person, USX and the federal HOS regulations would require the Class Member to change his or her duty status from off-duty "sleeper berth" to "on-duty, not driving."

USX has no company policy that drivers must respond immediately to onboard computer messages. *SUF*, ¶¶ 29, 48, 51b 67, 69, 85, 90. And, while operating in a team, the driver in the sleeper berth was not obligated to respond to the onboard computer unit. *SUF*, ¶¶ 51, 54. Additionally, the onboard computer unit could be silenced just as the drivers could silence their cell phones. *SUF*, ¶¶ 51, 67, 79, 85. In fact, some Class Members did silence their phones and onboard computer units to avoid any potential interruptions on their breaks. *Id.* Class Members can point to no admissible evidence that USX had a classwide policy that required immediate responses to onboard computer messages. Indeed, such a policy would make no sense: USX has a strong interest in having well-rested drivers delivering its loads.

### 3. The FAAAA Preempts State Laws That Prevent Motor Carriers From Offering Particular Services

USX anticipates that Class Members will argue that high-value loads are subject to a more strenuous cargo security policy, which required Class Members to remain with the vehicles at certain points, even while on break. This argument, however, places their claim squarely within the confines of the FAAAA and as a result, it is preempted.[5] Indeed, the Supreme Court has explicitly determined that under the FAAAA:

> (1) [] state enforcement actions *having a connection with, or reference to*, carrier rates, routes, or services, are preempted; (2) [] such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) [], in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) [] pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption related objectives.

*Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370-71 (2008) (internal quotations omitted) (emphasis in original).

The Supreme Court has set forth two rules that control the outcome of this case. First, faithful to the breadth of the FAAAA's text, the Supreme Court holds that the FAAAA applies to claims "having a connection with or reference to" a motor carrier's prices, routes, or services, "whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). Preemption is not limited to state laws or regulations that are specifically directed at motor carrier's routes, prices, and services; the statute also preempts generally applicable laws that indirectly relate to a motor carrier's rates, routes, or services. *Nw., Inc. v. Ginsberg*, 572 U.S. 273 (2014). Second, the claim must be related to the prices, routes, and services of a motor carrier "with respect to the transportation of

---

[5] USX believes that *all* of Class Members' breaks should properly be considered preempted by the FAAAA, but realizes the Ninth Circuit has rejected this argument. USX does not move on it in this paper but preserves the right to advance this argument later in the litigation. *See Singh v. Gonzales*, 502 F.3d 1128, 1129 (9th Cir. 2007) (noting "it is acceptable to make a rejected argument for purposes of preserving it for en banc or Supreme Court consideration while acknowledging that it has been rejected by the court").

21

property." *Dan's City*, 569 U.S. at 255. The FAAAA preempts all state law claims that satisfy these rules regardless of how well intentioned or paternalistic the state regulation.

In particular, the Ninth Circuit has indicated that the FAAAA preempts laws that affect customer requirements. *See Cal. Trucking Ass'n v. Su*, 903 F.3d 953 (9th Cir. 2018) (differentiating between the application of the FAAAA to wage-and-hour laws of general applicability and the application of the FAAAA to the services offered by a motor carrier to a customer). The Ninth Circuit noted that even laws of general applicability may be preempted depending on "where in the chain of a motor carrier's business it is acting to compel a certain result (*e.g.*, consumer or workforce) and what result it is compelling (*e.g.*, a certain wage, non-discrimination, a specific system of delivery, a specific person to perform the delivery)." *Id.* at 966. Under this rubric, this Court should distinguish this case, which impacts customer relationships from those dealing only with the relationship between a motor carrier and its workforce, like *Dilts v. Penske Logistics,* 769 F.3d 637 (9th Cir. 2014).

Here, the Class Members' claim provides USX with the Hobson's choice of compensating the Class for time spent in the sleeper berth on high-value loads or suffer a service failure. Unlike *Dilts*, the Class Members' claim will impact more than merely the relationship between the USX and its workforce. Compelling USX to compensate drivers for sleeper berth time and on-duty meal breaks in relation to those loads will result in USX's inability to meet current customer requirements. Moreover, it is undisputed that delivering high-value loads relates to the transportation of property. The Court should therefore find that the Class Members' meal and rest break claims with respect to high value loads are preempted by the FAAAA.

### E.   The Wage Statement Claims Are Untimely

The statute of limitations has run on Plaintiff Ayala's wage statement claims and he therefore no longer has standing to bring these claims on behalf of Class Members. Specifically, Class Members seek "damages and penalties" for violations of California Labor Code § 226(a) ("Section 226(a)"). *Compl.*, ¶ 30. Consequently, the one-year statute

22

of limitations for an action for penalties, Cal. Code of Civil Proc. § 340(a), applies to his claim. *See Brewer v. Gen. Nutrition Corp.*, No. 11-cv-3587, 2015 WL 5072039, at *8 (N.D. Cal. Aug. 27, 2015) (holding that the Unfair Competition Law does not extend the one-year statute of limitations on claims for "damages and penalties" made under Section 226(a)). Plaintiff filed his original complaint in this case on December 23, 2015. *See* ECF No. 1-1 at 2. Plaintiff Ayala's final pay statement was dated July 11, 2014. *SUF*, ¶ 38.

Accordingly, Plaintiff Ayala's claim under Section 226(a) is time-barred, and he lacks standing to assert it. *See*, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that, to establish standing, "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."). Therefore, Plaintiff Ayala also lacks standing to advance this claim on behalf of the Class Members.

In any case, Plaintiff Ayala's claim fails because there is no evidence suggesting that his or Class Members' wage statements were deficient in any way, or, if they were, the alleged deficiency was "knowing and intentional." *Amey v. Cinemark USA Inc.*, No. 13-CV-05669-WHO, 2015 WL 4148366, at *3-4 (N.D. Cal. July 9, 2015) (denying plaintiff's motion for leave to amend complaint for failing to meet the second and third requirements of a section 226(a) claim); *Cleveland v. Groceryworks.com, LLC*, No. 14-CV-00231-JCS, 2016 WL 4140504, at *22 (N.D. Cal. Aug. 4, 2016) (granting summary judgment in favor of defendant on driver's Section 226 claim based on failure to furnish accurate wage statements due to requiring him to stay with his truck during meal breaks and not paying premiums for missed breaks where plaintiff failed to submit evidence sufficient to show that any failure to furnish accurate wage statement was knowing and intentional). A wage statement violation is not "knowing and intentional" if the employer has a good faith belief that its pay practices do not violate the law. *See Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486, at *36-37 (N.D. Cal. Sept. 3, 2015) (applying good faith defense to both Section 203 and Section 226 claims and granting summary judgment in favor of defendant). USX had a reasonable, good faith

23

belief that its wage statements included the information required by Section 226. As such, there is no issue of fact for trial that any wage statement violation was "knowing and intentional."

Moreover, to the extent Class Members attempt to predicate this claim on USX's alleged failure to include meal and rest break premiums on the wage statements, this claim likewise must fail because the failure to list premium pay on a wage statement is not actionable under Section 226. *Jones v. Spherion Staffing LLC*, LACV11-06462 JAK, 2012 WL 3264081, at *8 (C.D. Cal. Aug. 7, 2012) (holding violations of Section 226.7 could not support wage statement claims); *Henryhand v. Digital Sys. LLC*, LACV1302735JAKAGRX, 2014 WL 11728721, at *13 (C.D. Cal. May 19, 2014) ("With respect to the second argument, Plaintiff cannot advance claims for noncompliant wage statements . . . based solely on alleged violations of Section 226.7."); *Nguyen v. Baxter Healthcare Corp.*, 8:10-CV-01436-CJC, 2011 WL 6018284, at *8 (C.D. Cal. Nov. 28, 2011) ("[T]he plain language of Section 226(a) does not require that wage statement include an itemized listing of any premium payments owed to her for missed meal periods.").[6]

For any of these three reasons, USX is entitled to summary judgment on this claim.

## F.   Class Members Cannot Recover Section 203 Penalties

Class Members have requested penalties under Cal. Lab. Code § 203 in association with their substantive claims, but Class Members are not entitled to these penalties regardless of the outcome of the Class Members' other claims.

### 1.   There Is No Evidence Defendants Willfully Failed to Pay Any Wages

Class Members allege USX "willfully failed to pay all termination wages," and seek penalties under Section 203. *First Am. Compl.*, ECF No. 99, ¶¶ 24, 29. Under Section

---

[6] The Ninth Circuit recently certified this issue to the California Supreme Court. *Stewart v. San Luis Ambul., Inc.*, 878 F.3d 883 (9th Cir. 2017). The California Supreme Court accepted the certified question on March 28, 2018. *Stewart v. San Luis Ambulance*, Case No. S246255.

24

203, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced." Cal. Lab. Code § 203(a). The penalties "shall not continue for more than 30 days." *Id.*

Willfulness is "a required element of a Labor Code section 203 claim." *Bradescu v. Hillstone Rest. Group, Inc.*, SACV 13-1289-GW RZX, 2014 WL 5312546, at *8–10 (C.D. Cal. Sept. 18, 2014), *order confirmed*, SACV 13-1289-GW RZX, 2014 WL 5312574 (C.D. Cal. Oct. 10, 2014). A plaintiff's evidence of an employer's negligence— or even recklessness—in failing to pay final wages is insufficient to survive a motion for summary judgment. *See Pedroza v. PetSmart, Inc.*, ED CV 11-298 GHK DTB, 2012 WL 9506073, at *5–6 (C.D. Cal. June 14, 2012); *Velazquez v. Costco Wholesale Corp.*, 603 Fed. Appx. 584, 587 (9th Cir. 2015) (unpublished) ("It is not enough that the company knew that it was not paying the overtime, or the language of § 203(a) would be superfluous."). Rather, "[t]he settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done." *Amaral v. Cintas Corp. No. 2*, 78 Cal. Rptr. 3d 572, 607 (Cal. App. 1st Dist. 2008). *See also Barnhill v. Robert Saunders & Co.*, 177 Cal. Rptr. 803, 806 (Cal. App. 1st Dist. 1981). The employee bears the burden of proving willfulness under Section 203. *See Velazquez*, 603 Fed. Appx. at 587 (reversing district court's award of Section 203 penalties because "[t]here [was] no evidence in this case to support a 'willful' failure to pay by Costco"); *Maldonado v. Epsilon Plastics, Inc.*, 232 Cal. Rptr. 3d 461, 478 (Cal. App. 2d Dist. 2018), *review denied* (Aug. 22, 2018) ("Certainly, an argument could be made that since section 203 provides that waiting time penalties are awarded only for a 'willful' failure to pay wages, lack of good faith is an element of willfulness on which plaintiffs had the burden of proof.").

Here, there is no evidence that USX willfully failed to pay final wages to Class Members. Indeed, USX's corporate designee testified that when a California-resident driver's employment is terminated, USX sends the driver's final wage payment within 24

25

hours. *SUF*, ¶ 36. Therefore, USX is entitled to summary judgment on the claims for penalties under Section 203. *Velazquez*, 603 Fed. Appx. at 587; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *Bradescu*, WL 5312546, at *8–10 (noting that, under *Devereaux*, defendant could have simply pointed out "that Plaintiff lacked evidence of willfulness, a required element of a Labor Code section 203 claim").

USX is also entitled to summary judgment on Section 203 penalties because a good faith dispute exists regarding whether any wages are due to Class Members. A "good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." *Amaral*, 78 Cal. Rptr. 3d at 607 (quoting Cal. Code Regs. tit. 8, § 13520). This "occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee." *Id.* (quoting Cal. Code Regs. tit. 8, § 13520(a)). Further, "[t]he fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id.*

Here, USX's pay system properly compensated Class Members for all work, including non-driving tasks. *See supra* Section III.D.1. Indeed, the compensation policy at issue in this case is similar to the compensation policy the *Cole* court held complied with California law. *Cole*, 2017 WL 1234215, at *8. But even if this Court ultimately finds USX failed to properly compensate Class Members, that does not preclude a finding that USX maintained a reasonable belief that its pay policies comported with California law. In *Ridgeway v. Wal-Mart*, a case upon which Class Members have relied throughout the course of this litigation, the Court surveyed the developing law of piece-rate pay in California and held that "[b]ecause Wal-Mart's payment policy developed in this uncertain landscape, . . . Wal-Mart had reasonable grounds for believing their piece-rate compensation scheme complied with California minimum wage law." *Ridgeway*, 2017 WL 363214, at *6 (declining to award liquidated damages under Section 1194.2). This

26

uncertainty surrounding California's amorphous piece-rate minimum wage law precludes any finding that USX willfully failed to pay final wages to Plaintiff and the Class. *Amaral*, 78 Cal. Rptr. 3d at 607 (rejecting plaintiff's argument that violations were willful, in part because "the legal obligations imposed on employers . . . were unclear at the time of" the violations).

Furthermore, USX's good faith belief that its employment relationships with Class Members are not subject to the California Labor Code also precludes a finding of willfulness. Specifically, USX maintains that (1) under California conflict of law principles, the California Labor Code does not apply to Class Members, ECF No. 109 at 2–14; and (2) even if California law does apply, application of California law would violate the Dormant Commerce Clause, *supra* Section III.B. Although this Court found the conflict of law arguments Defendants made in their opposition to Plaintiff's renewed motion for class certification unpersuasive, two recent Ninth Circuit cases demonstrate that the question of *whether* the California Labor Code applies—particularly as to interstate workers like Class Members—is still an unresolved issue. *See Oman v. Delta Airlines, Inc.*, 889 F.3d 1075 (9th Cir. 2018) (certifying to the California Supreme Court questions regarding whether California minimum wage and wage statement requirements apply to out-of-state employer); *Ward v. United Airlines, Inc.*, 889 F.3d 1068 (9th Cir. 2018) (certifying to the California Supreme Court question regarding whether California wage statement statute applies to California-resident employees working for out-of-state employer). Consequently, Plaintiff cannot demonstrate that USX's position to the contrary lacks good faith. *See Amaral*, 78 Cal. Rptr. 3d at 609 (declining to find willfulness where there was "no evidence that [defendant did] not entertain a 'good faith belief' that the [living wage ordinance] did not apply to workers in Plaintiffs[]"). USX is entitled to summary judgment on the Class Members' request for penalties under Section 203.

### 2. Section 203 Penalties Are Not Permitted for Non-Payment of Premiums for Missed Meal and Rest Breaks

Plaintiff Ayala alleges he and other Class Members can recover Section 203 penalties predicated on USX's alleged failure to pay meal and rest break premium pay. *First Am. Compl.*, ECF No. 99, ¶¶ 23–24. But the California Supreme Court has held that "a section 226.7 action is brought for the *nonprovision of meal and rest periods*, not for the 'nonpayment of wages.'" *Kirby v. Immoos Fire Protec., Inc.*, 274 P.3d 1160, 1167 (Cal. 2012) (emphasis in original). Therefore, "[f]ollowing *Kirby*, section 226.7 cannot support a section 203 penalty because section 203, subdivision (b) tethers the waiting time penalty to a separate action for wages." *Ling v. P.F. Chang's China Bistro, Inc.*, 200 Cal. Rptr. 3d 230, 244 (Cal. App. 6th Dist. 2016), *review denied* (July 13, 2016); *see also Jones*, 2012 WL 3264081, at *8 (holding violations of Section 226.7 could not support Section 203 penalties); *Henryhand*, 2014 WL 11728721, at *13 ("With respect to the second argument, Plaintiff cannot advance claims for noncompliant wage statements or failure to pay wages due upon termination based solely on alleged violations of Section 226.7.").[7]

Accordingly, USX is entitled to summary judgment on the claims for Section 203 penalties based on alleged non-payment of meal and rest break premiums.

### G. The Class's Claims Under California's Unfair Competition Law ("UCL") Should Also Be Dismissed

Since UCL claims are derivative in nature, USX is also entitled to summary judgment on this claim as a matter of law if the other claims are dismissed. *See e.g.*, *Cleveland*, 2016 WL 4140504, at *24; *Rubin v. Wal–Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (dismissing UCL claims that were derivative of deficient claims for violations under the California Labor Code).

Moreover, to the extent Class Members seek meal and rest break premiums under the UCL, summary judgment should also be entered against them even if the meal and

---

[7] This issue was also certified to—and accepted for review by—the California Supreme Court in *Stewart v. San Luis Ambul., Inc.*, 878 F.3d 883 (9th Cir. 2017).

28

rest break claim as a whole is not. Employees cannot recover meal and rest break premiums as "restitution" under the UCL. *See*, *e.g.*, *Francisco v. Emeritus Corp*., CV1702871BROSSX, 2017 WL 7790038, at *6 (C.D. Cal. July 14, 2017) (striking UCL claims premised on Section 226.7 violations); *Lucas v. Michael Kors (USA), Inc.*, CV181608MWFMRWX, 2018 WL 2146403, at *4 (C.D. Cal. May 9, 2018 ("[T]he Court notes that premium payments pursuant to section 226.7 are not restitutionary for purposes of the UCL."); *Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 807–08 (E.D. Cal. 2017); *Parson v. Golden State FC, LLC*, No. 16-CV-00405-JST, 2016 WL 1734010, at *7 (N.D. Cal. May 2, 2016).  Accordingly, USX is also entitled to summary judgment on the UCL claims, to the extent those claims seek to recover meal and rest break premiums.

### H.     USXE Is Not A Proper Defendant

There is no genuine dispute that USXE—the parent company of USX—did not employ Plaintiff Ayala or any Class Member; therefore, the claims against USXE should be dismissed even if the case as a whole is not dismissed for the reasons discussed *supra*. Generally, "there is a strong presumption against holding a parent corporation liable for the acts or omissions of the subsidiary on the theory that the two corporate entities constitute a single employer." *Urrutia v. Chipotle Mexican Grill, Inc.*, No. 16-02065-BRO (MRWx), 2017 WL 2901717, at *11 (C.D. Cal. June 16, 2017) (citing string of cases). "This presumption is based on the principle that corporate entities have separate existences." *Id.* (citing *Vasquez v. Wells Fargo Bank, Nat'l Ass'n.*, 77 F. Supp.3d 911, 922-23 (N.D. Cal. 2015)). Indeed, it should "disregarded only when the 'ends of justice require this result.'" *Vasquez*, 77 F. Supp. 3d at 922 (citing string of cases).

Class Members do not have the requisite proof to overcome this presumption. The undisputed evidence shows that USXE had no more than a high-level strategic role with respect to employee relations and management. *SUF*, ¶ 10. USXE did not pay Class Members; did not participate in the hiring process of Class Members; did not make termination decisions with respect to Class Members; did not assign Class Members their

29

loads to drive; and did not supervise Class Members. SUF, ¶¶ 2-3, 10-12USXE's strategic guidance is not the kind of "interrelated operations" contemplated under California's integrated enterprise law. *See Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226 (C.D. Cal. 2007) (granting defendant's motion for summary judgment on plaintiff's "integrated enterprise" argument when it did not have more interrelated operations or centralized control of labor relations that a parent company normally has over its subsidiary).

Indeed, even if a parent company has common management, ownership and financial control, it is still not an integrated enterprise with its subsidiary for purposes of wage-and-hour law. *See id.* at 1239 (noting that defendant had common management, and common ownership or financial control with the subsidiary); *see also Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2018 WL 3760983, at *2 (N.D. Cal. Aug. 8, 2018) ("common ownership or control alone is never enough to establish parent liability"). More control of the day-to-day operations is necessary to overcome the strong presumption against finding an integrated enterprise. *See Maddock*, 631 F. Supp. 2d at 1241 (holding high-level strategic guidance is insufficient to show "involvement in the day-to-day personnel decisions" of the subsidiary) (citing *Lockard v. v. Pizza Hut*, 162 F. 3d 1062, 1071 (10th Cir. 1998)). Under California's standards, therefore, USXE is not an integrated enterprise with USX as a matter of law.

## IV.   **CONCLUSION**

This case should not proceed to trial on February 5, 2019, because there are no genuine issues of material fact regarding Defendants' liability on the class claims. Defendants respectfully request that the Court enter summary judgment in their favor.

Dated: November 7, 2018

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.

By:   /s/ *James H. Hanson*
James H. Hanson

Attorney for Defendants, U.S. XPRESS ENTERPRISES, INC. and U.S. XPRESS, INC.

4830-9495-5381, v. 13

30