# Exhibit 1
## FMCSA's Order

through *www.regulations.gov.* You must make any alternative arrangements before transmitting a document and in advance of the relevant deadline by contacting USTR at *Special301@ustr.eop.gov.*

USTR will place comments in the docket and they will be open to public inspection, except business confidential information. You can view comments on the *www.regulations.gov* website by entering Docket Number USTR–2018–0037 in the 'Search' field on the home page.

**Daniel Lee,**
*Assistant U.S. Trade Representative for Innovation and Intellectual Property (Acting), Office of the United States Trade Representative.*

[FR Doc. 2018–28319 Filed 12–27–18; 8:45 am]
**BILLING CODE 3290–F9–P**

---

**DEPARTMENT OF TRANSPORTATION**

**Federal Motor Carrier Safety Administration**

**[Docket No. FMCSA–2018–0304]**

**California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption**

**AGENCY:** Federal Motor Carrier Safety Administration (FMCSA), DOT.

**ACTION:** Order; grant of petition for determination of preemption.

**SUMMARY:** The FMCSA grants petitions submitted by the American Trucking Associations and the Specialized Carriers and Rigging Association requesting that the State of California's Meal and Rest Break rules (MRB Rules) are preempted under 49 U.S.C. 31141 as applied to property-carrying commercial motor vehicle (CMV) drivers covered by the FMCSA's hours of service regulations. Federal law provides for preemption of State laws on CMV safety that are additional to or more stringent than Federal regulations if they have no safety benefit; are incompatible with Federal regulations; or would cause an unreasonable burden on interstate commerce. The FMCSA has determined that the MRB Rules are laws on CMV safety, that they are more stringent than the Agency's hours of service regulations, that they have no safety benefits that extend beyond those already provided by the Federal Motor Carrier Safety Regulations, that they are incompatible with the Federal hours of service regulations, and that they cause an unreasonable burden on interstate commerce. The California MRB Rules, therefore, are preempted under 49 U.S.C. 31141(c).

**ADDRESSES:** You may see all the comments online through the Federal Document Management System (FDMS) at *http://www.regulations.gov.*

*Docket:* For access to the docket to read background documents or comments, go to *http://www.regulations.gov* or Room W12–140 on the ground level of the West Building, 1200 New Jersey Avenue SE, Washington, DC, between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays. The FDMS is available 24 hours each day, 365 days each year.

*Privacy Act:* Anyone may search the electronic form of all comments received into any of our dockets by the name of the individual submitting the comment (or of the person signing the comment, if submitted on behalf of an association, business, labor union, etc.). You may review DOT's Privacy Act Statement for the Federal Docket Management System (FDMS) published in the **Federal Register** on December 29, 2010. 75 FR 82132.

**FOR FURTHER INFORMATION CONTACT:** Charles J. Fromm, Deputy Chief Counsel, Office of the Chief Counsel, Federal Motor Carrier Safety Administration, 1200 New Jersey Avenue SE, Washington, DC 20590, (202) 366–3551; email *Charles.Fromm@dot.gov.*

**SUPPLEMENTARY INFORMATION:**

**Background**

On September 24, 2018, the American Trucking Associations (ATA) petitioned the Federal Motor Carrier Safety Administration (FMCSA) to preempt California statutes and rules requiring employers to give their employees meal and rest breaks during the work day, as applied to drivers of commercial motor vehicles (CMVs) subject to the FMCSA's hours of service (HOS) regulations. On October 29, 2018, the Specialized Carriers and Rigging Association (SCRA) also filed a petition seeking a preemption determination concerning the same meal and rest break requirements. The SCRA opted to submit a petition in lieu of comments as part of Docket No. FMCSA–2018–0304; therefore, the Agency will not open a separate docket for the SCRA's petition. For the reasons set forth below, the FMCSA grants the petitions insofar as the provisions at issue apply to drivers of property-carrying CMVs subject to the FMCSA's hours of service regulations.[1]

**California Meal and Rest Break Rules (MRB Rules)**

Section 512, Meal periods, of the California Labor Code reads, in part, as follows:

"(a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

"(b) Notwithstanding subdivision (a), the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees."

Section 516 of the California Labor Code reads, in relevant in part, as follows:

"(a) Except as provided in Section 512, the Industrial Welfare Commission may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers."

Section 226.7 of the California Labor Code reads, in relevant part, as follows:

"(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . .

"(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

Section 11090 of Article 9 (Transport Industry) of Group 2 (Industry and Occupation Orders) of Chapter 5 (Industrial Welfare Commission) of Division 1 (Department of Industrial Relations) of Title 8 (Industrial Relations) of the California Code of

---

[1] While the Agency received comments in support of the ATA's petition from the American Bus Association, Coach USA, Greyhound Lines, and the United Motorcoach Association, this determination of preemption does not apply to drivers of passenger-carrying CMVs in interstate commerce. The Agency, however, would consider any petition asking for a determination as to whether the MRB Rules are preempted with respect to such drivers.

Regulations, is entitled ''Order Regulating Wages, Hours, and Working Conditions in the Transportation Industry'' (hereafter: ''8 CCR 11090'' or ''section 11090'').[2]

Section 11090(11). Meal Periods, reads as follows:

''(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

''(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

''(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

''(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

''(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.''

Section 11090(12). Rest Periods, reads as follows:

''(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

''(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.''

---

[2] California Industrial Welfare Commission Order No. 9–2001 is identical to 8 CCR 11090.

Although section 11090(3)(L) provides that ''[t]he provisions of this section are not applicable to employees whose hours of service are regulated by: (1) The United States Department of Transportation, Code of Federal Regulations, Title 49, sections 395.1 to 395.13, Hours of Service of Drivers,'' the California courts have interpreted the word ''section'' to refer only to section 11090(3), which regulates ''hours and days of work,'' not to all of section 11090, including meal and rest breaks in section 11090(11) and (12). *See Cicairos* v. *Summit Logistics, Inc.,* 133 Cal App.4th 949 (2006).

### Federal Preemption Under the Motor Carrier Safety Act of 1984

Section 31141 of title 49, United States Code, a provision of the Motor Carrier Safety Act of 1984 (the 1984 Act), 49 U.S.C. Chap. 311, Subchap. III, prohibits States from enforcing a law or regulation on CMV safety that the Secretary of Transportation (Secretary) has determined to be preempted. To determine whether a State law or regulation is preempted, the Secretary must decide whether a State law or regulation: (1) Has the same effect as a regulation prescribed under 49 U.S.C. 31136, which is the authority for much of the Federal Motor Carrier Safety Regulations; (2) is less stringent than such a regulation; or (3) is additional to or more stringent than such a regulation. 49 U.S.C. 31141(c)(1). If the Secretary determines that a State law or regulation has the same effect as a regulation based on section 31136, it may be enforced. 49 U.S.C. 31141(c)(2). A State law or regulation that is less stringent may not be enforced. 49 U.S.C. 31141(c)(3). And a State law or regulation the Secretary determines to be additional to or more stringent than a regulation based on section 31136 may be enforced unless the Secretary decides that the State law or regulation (1) has no safety benefit; (2) is incompatible with the regulation prescribed by the Secretary; or (3) would cause an unreasonable burden on interstate commerce. 49 U.S.C. 31141(c)(4). To determine whether a State law or regulation will cause an unreasonable burden on interstate commerce, the Secretary may consider the cumulative effect that the State's law or regulation and all similar laws and regulations of other States will have on interstate commerce. 49 U.S.C. 31141(c)(5). The Secretary need only find that one of the conditions set forth at paragraph (c)(4) exists to preempt State the provision(s) at issue. The Secretary may review a State law or regulation on her own initiative, or on the petition of an interested person. 49 U.S.C. 31141(g). The Secretary's authority under section 31141 is delegated to the FMCSA Administrator by 49 CFR 1.87(f).

### Federal Motor Carrier Safety Regulations (FMCSRs) Concerning Breaks, Fatigue, and Coercion

For truck drivers operating a CMV in interstate commerce, the Federal HOS rules impose daily limits on driving time. 49 CFR 395.3. In addition, the HOS rules require long-haul truck drivers operating a CMV in interstate commerce to take at least 30 minutes off duty no later than 8 hours after coming on duty if they wish to continue driving after the 8th hour.[3] 49 CFR 395.3(a)(3)(ii). The HOS regulations also impose both daily and weekly limits after which driving is prohibited. There are separate HOS regulations, imposing different limits on driving time, for drivers of passenger-carrying CMVs. 49 CFR 395.5.

In addition, the FMCSRs also prohibit a driver from operating a CMV, and a motor carrier from requiring a driver to operate a CMV, while the driver is impaired by illness, fatigue, or other cause, such that it is unsafe for the driver to begin or continue operating the CMV. 49 CFR 392.3. The FMCSRs also prohibit a motor carrier, shipper, receiver or transportation intermediary from coercing a driver to operate a CMV in violation of this and other provisions of the FMCSRs or Hazardous Materials Regulations. 49 CFR 390.6.

### The ATA and SCRA Petitions and Comments Received

As set forth more fully below, the ATA argues that California's MRB Rules, as applied to CMV drivers working in interstate commerce, are within the scope of the Secretary's preemption authority under section 31141 because they are laws ''on commercial motor vehicle safety.'' In this regard, the ATA acknowledges that the Agency took the position in 2008 that the MRB Rules at issue cannot be regulations ''on commercial motor vehicle safety'' because they ''cover far more than the trucking industry.'' The ATA contends, however, that the Agency's conclusions in the 2008 Decision do not compel the same result here because the Agency's interpretation of section 31141 was wrong as a matter of statutory interpretation. Additionally, the ATA provides evidence purporting to show that the MRB Rules undermine safety. The ATA also contends that the

---

[3] The 30-minute rest break requirement does not apply to drivers operating under either of the short-haul exemptions in 49 CFR 395.1(e)(1) or (2).

MRB Rules are incompatible with Federal HOS regulations and impose an unreasonable burden on interstate commerce. The ATA's petition seeks an order declaring that California's MRB Rules, as applied to CMV drivers who are subject to DOT's jurisdiction to regulate hours of service, should be preempted pursuant to 49 U.S.C. 31141(c)(4) and, therefore, may not be enforced.

The SCRA explained that it filed a separate petition, rather than submit comments in support of the ATA's petition, to underscore their organization's concern that FMCSA ''be the final arbiter of whether a state has enacted a standard or regulation that is not identical to the federal standard'' and that the Agency should preempt State laws and regulations that are not compatible with the FMCSRs. The SCRA stated that the organization supports the ATA's arguments, and much of the SCRA's petition advanced the argument that the MRB Rules are more stringent than the FMCSRs and are incompatible. The petition requests that the Agency:

[D]eclar[e] California's Meal and Rest Break requirements are preempted from being applied to drivers subject to the HOS regulations on rest breaks, and order that California, or any representative authorized under the Labor Code Private Attorneys General Act of 2004, is not authorized to legally enforce any conflicting provisions related to California's Meal and Rest Break requirements.

The SCRA also contends that the Agency ''should also be willing to initiate a proceeding under 49 CFR 350.215'' to withhold Motor Carrier Safety Assistance Program grant funds from ''states with non-compatible state motor carrier safety laws.''

The FMCSA published a notice in the **Federal Register** on October 4, 2018 seeking public comment on whether the MRB Rules are preempted by Federal law. 83 FR 50142. Although preemption under section 31141 is a legal determination reserved to the judgment of the Agency, the FMCSA voluntarily sought comment on issues relevant to the preemption determination, including what effect, if any, California's MRB Rules have on interstate motor carrier operations. The public comment period closed on October 29, 2018.

The Agency received more than 700 comments, including submissions from more than 120 organizations.[4] While the public comment period ended on October 29, the Agency continued to accept public comments until November 5. Approximately half of the organizations that commented support preemption of the MRB Rules and half opposed. Of the individuals who commented, approximately 94% support preemption while 6% expressed opposition. In addition, the Agency received 9 letters from 68 members of Congress.

**The Agency's Prior Position Regarding Preemption Under Section 31141**

*I. The FMCSA's December 24, 2008 Decision Rejecting a Petition for a Preemption Determination*

On July 3, 2008, a group of motor carriers[5] petitioned the FMCSA for a determination under 49 U.S.C. 31141(c) that: (1) The California MRB Rules are regulations on CMV safety, (2) the putative State regulation imposes limitations on a driver's time that are different from and more stringent than Federal ''hours of service'' regulations governing the time a driver may remain on duty, and (3) that the State law should therefore be preempted. 73 FR 79204. The Agency denied the petition for preemption, reasoning that the MRB Rules are merely one part of California's comprehensive regulation of wages, hours, and working conditions, and that they apply to employers in many other industries in addition to motor carriers. The FMCSA concluded that the MRB Rules were not regulations ''on commercial motor vehicle safety'' within the meaning of 49 U.S.C. 31141 because they applied broadly to all employers and not just motor carriers, and that they therefore were not within the scope of the Secretary's statutory authority to declare unenforceable a State motor vehicle safety regulation that is inconsistent with Federal safety requirements. 73 FR 79204.

*II. Dilts v. Penske Logistics, LLC, United States Court of Appeals for the Ninth Circuit, No. 12–55705 (2014)*

In *Dilts* v. *Penske Logistics,* the plaintiffs, 349 delivery drivers and installers, filed a class action lawsuit against the defendants, Penske Logistics, LLC, and Penske Truck Leasing Co. alleging that they routinely violate the MRB Rules. The defendants argued that the MRB Rules as applied to motor carriers were preempted under the Federal Aviation Administration

---

[4] Some comment letters were joined by multiple organizations, including one letter from the Center for Justice and Democracy opposing the ATA's petition, which was joined by 39 organizations.

[5] Affinity Logistics Corp.; Cardinal Logistics Management Corp.; C.R. England, Inc.; Diakon Logistics (Delaware), Inc.; Estenson Logistics, LLC; McLane Company, Inc.; McLane/Suneast, Inc.; Penske Logistics, LLC; Penske Truck Leasing Co., L.P.; Trimac Transportation Services (Western), Inc.; and Velocity Express, Inc.

Authorization Act of 1994 (FAAAA), 49 U.S.C. 14501(c), because the provisions at issue were related to prices, routes, or services. The United States Court of Appeals for the Ninth Circuit invited the United States to file a brief as amicus curiae (*Dilts* amicus brief).

In the *Dilts* amicus brief, the United States argued that: (1) State laws like California's, which do not directly regulate prices, routes, or services, are not preempted by the FAAAA unless they have a ''significant effect'' on prices, routes, or services; (2) in the absence of explicit instructions from Congress, there is a presumption against preemption in areas of traditional State police power, including employment; (3) there was no showing of an actual or likely significant effect on prices, routes, or services with respect to the short-haul drivers at issue in the case, and so the California laws at issue were not preempted by the FAAAA; and (4) the preemption analysis might be different with respect to long-haul or interstate drivers.

The United States also explained that the FMCSA continued to adhere to the view expressed in the 2008 Decision that the MRB Rules were not preempted by section 31141 of the 1984 Act because they were not laws ''on commercial motor vehicle safety.'' In addition, the United States stated that the MRB provisions, as applied to the plaintiffs in *Dilts,* did not run afoul of general Supremacy Clause principles of conflict preemption because the drivers in question were not subject to the Agency's HOS regulations, as they were either short-haul or intrastate long-haul drivers. Therefore, the *Dilts* amicus brief explained that the application of the MRB Rules had little if any effect on the ability of the *Dilts* plaintiffs to comply with Federal regulatory standards.

The Ninth Circuit concluded that the FAAAA did not preempt California's MRB Rules, as applied to the plaintiff drivers, because those State laws were not ''related to'' the defendants' prices, routes, or services. The Ninth Circuit made no determination whether the MRB Rules were within the scope of the Secretary's preemption authority under section 31141 because that question was not before the Court.

**Decision**

At the outset, the FMCSA notes that several commenters contend that the MRB Rules are subject to a presumption against preemption. The FMCSA acknowledges that ''in all preemption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [there] is an assumption that the historic

police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'' *Wyeth* v. *Levine,* 555 U.S. 555, 565 (2009) (alterations omitted). That presumption does not apply here, however, because section 31141 is an express preemption provision. When a ''statute contains an express pre-emption clause, [courts] do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'' *Puerto Rico* v. *Franklin California Tax-Free Trust,* 136 S. Ct. 1938, 1946 (2016) (quotations omitted). Thus, the question that the FMCSA must answer is whether the MRB Rules are subject to preemption under section 31141.

*I. The California Meal and Rest Break Provisions Are Laws or Regulations ''On Commercial Motor Vehicle Safety'' Within the Meaning of 49 U.S.C. 31141*

The initial question in a preemption analysis under section 31141 is whether the provisions at issue are laws or regulations ''on commercial motor vehicle safety.'' 49 U.S.C. 31141(c)(1). The ATA argues that California's MRB Rules, as applied to CMV drivers subject to the FMCSA's HOS regulations, are rules on commercial motor vehicle safety subject to review under section 31141. In this regard, the ATA contends that both the text of section 31141 and its structural relationship with other statutory provisions make it clear that Congress's intended scope of section 31141 was broader than the construction the Agency gave it in the 2008 Decision. The ATA points out that the language of section 31141 mirrors that of 49 U.S.C. 31136, which instructs the Secretary to ''prescribe regulations on commercial motor vehicle safety.'' 49 U.S.C. 31136(a). Thus, the ATA contends that State laws and regulations covering the same ground as Federal regulations promulgated under section 31136 are precisely what Congress had in mind when it enacted section 31141.

The FMCSA agrees. The ''on commercial motor vehicle safety'' language of section 31141 mirrors that of section 31136, and by tying the scope of the Secretary's preemption authority directly to the scope of the Secretary's authority to regulate the CMV industry, the Agency believes that Congress provided a framework for determining whether a State law or regulation is subject to section 31141. In other words, if the State law or regulation imposes requirements in an area of regulation that is already addressed by a regulation promulgated under 31136, then the State law or regulation is a regulation ''on commercial motor vehicle safety.'' Because California's MRB Rules impose the same types of restrictions on CMV driver duty and driving times as the FMCSA's HOS regulations, which were enacted pursuant to the Secretary's authority in section 31136, they are ''regulations on commercial motor vehicle safety.'' Thus, the MRB Rules are ''State law[s] or regulation[s] on commercial motor vehicle safety,'' and are subject to review under section 31141.

In the 2008 Decision, the Agency narrowly construed section 31141 to conclude that because the MRB Rules are ''one part of California's comprehensive regulations governing wages, hours and working conditions,'' and apply to employers in many other industries in addition to motor carriers, the provisions are not regulations ''on commercial motor vehicle safety,'' and, thus, were not within the scope of the Secretary's preemption authority. The FMCSA has reconsidered this conclusion. There is nothing in the statutory language or legislative history that supports such a limitation. To the contrary, the statutory language refers only to a ''State law or regulation on commercial motor vehicle safety,'' and, the legislative history of the 1984 Act clearly expresses Congress's intent that ''there be as much uniformity as practicable whenever a Federal standard and a State requirement cover the same subject matter.'' *See* S. Rep. No. 98–424, at 14 (1984).

The 2008 Decision rejected the claim, made by the petitioners in that case, that ''the FMCSA has power to preempt any state law or regulation that regulates or affects any matters within the agency's broad Congressional grant of authority.'' 73 FR at 79206. The FMCSA stated that if it ''were to take such a position, any number of State laws would be subject to challenge.'' The Agency observed, for example, that ''it is conceivable that high State taxes and emission controls could affect a motor carrier's financial ability to maintain compliance with the . . . FMCSRs,'' and doubted that the FMCSA has ''the authority to preempt State tax or environmental laws.'' 73 FR at 79206. The FMCSA, however, has determined that its prior position was unnecessarily restrictive and that it can determine that the MRB Rules are subject to section 31141 preemption without deciding whether section 31141 covers State tax laws, environmental laws, or other laws that ''affect'' CMV safety. As explained above, the MRB Rules impose the same types of work limitation requirements as the FMCSA's HOS regulations; thus, just as the HOS regulations are ''regulations on commercial motor vehicle safety'' prescribed under section 31136, the California MRB Rules are ''law[s] or regulation[s] on commercial motor vehicle safety'' covered by section 31141. This determination does not rely on a broad interpretation of section 31141 as applicable to any State law that ''affects'' CMV safety.[6]

California's Labor Commissioner, California's Attorney General, the American Association for Justice (AAJ), the International Brotherhood of Teamsters, and other commenters who oppose the ATA's petition argue that the Agency's analysis and conclusions in the 2008 Decision and in the *Dilts* amicus brief were correct, and that FMCSA should not deviate from its legal position therein regarding the scope of the Secretary's preemption authority under section 31141.

Although the commenters opposing preemption accurately summarize the Agency's prior position on whether California's MRB Rules are preempted, the Agency's position need not forever remain static. It is well-settled that ''[a]n initial agency interpretation is not instantly carved in stone''; on the contrary, an agency must consider varying interpretations and the wisdom of its policy on a continuing basis. *See Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 863–64 (1984). When an agency changes course, it must provide a ''reasoned analysis for the change.'' *See Motor Vehicle Manufacturers* v. *State Farm,* 463 U.S. 29, 42 (1983). The Supreme Court has rejected the idea that an agency interpretation requires greater justification, or is subject to more searching review, merely because it represents a change from the agency's prior view. *FCC* v. *Fox Television Stations, Inc.,* 556 U.S. 502, 514–16 (2009). Instead, an agency advancing a changed interpretation must acknowledge the change, and provide a reasoned explanation of why the agency believes the new interpretation is better than the old. *Ibid.* Here, the FMCSA has reconsidered its interpretation of section 31141 as applied to California's MRB Rules, and this decision explains the

---

[6] The 2008 Decision also rejected the petitioners' claims that the California MRB Rules undermined safety, and that the rules were subject to preemption because they ''prevent carriers from maximizing their employees' driving and on-duty time.'' 73 FR 79204, 79205 n.3, 79206. It does not appear that the Agency relied on these points when determining that the MRB Rules were not regulations ''on commercial motor vehicle safety.'' To the extent the points are relevant to the other portions of this analysis, they are discussed below.

basis for reconsidering its previous position.[7]

In her comments opposing the ATA's petition, the California Labor Commissioner argues:

> In the decade that the FMCSA has adhered to this position, Congress has failed to amend 49 U.S.C. 31141 to give the FMCSA the power to declare a wider range of State laws and regulations unenforceable. This Congressional inaction suggests the conclusion that FMCSA's views on the limited extent of its authority, as announced in 2008 and again in 2014, has the support of Congress.

The Agency is unpersuaded by this argument. The Supreme Court has explained that "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction . . . ." *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 187 (1994) (internal quotations omitted); *see also Rapanos* v. *United States,* 547 U.S. 715, 750 (noting that while the Supreme Court has "sometimes relied on congressional acquiescence when there is evidence that Congress considered and rejected the '*precise* issue' presented before the Court," it does so only when there is "*overwhelming evidence* of acquiescence") (emphases in original). Here, the California Labor Commissioner presents no evidence that Congress has considered the appropriateness of the 2008 Decision's determination that the California MRB Rules were not covered by section 31141. Thus, what the California Labor Commissioner portrays as the "support of Congress" "should more appropriately be called Congress' failure to express any opinion." *Ibid.*

The FMCSA's departure from the 2008 Decision is also supported by intervening events. In December 2011, approximately 3 years after issuing the 2008 Decision, the FMCSA revised the Federal HOS regulations. Among other changes, the 2011 final rule generally prohibits CMV drivers from operating property-carrying commercial motor vehicles if more than eight hours have passed since the end of the driver's last off-duty or sleeper-berth period of at least 30-minutes, commonly referred to as a "rest period." 76 FR 81134, 81186; 49 CFR 395.3(a)(3)(ii). Prior to the 2011 revisions, the Federal HOS regulations contained no provisions requiring a mandatory rest period. The Agency cited the Secretary's regulatory authority under section 31136 and 49 U.S.C. 31502 as the legal basis for implementing the Federal HOS 30-minute off-duty or sleeper berth rest period. The Federal HOS regulations, including the required 30-minute rest period provision, are unquestionably rules "on commercial motor vehicle safety" under section 31136, and are part of the baseline against which Congress instructed the Agency to compare State rules under section 31141. Because the MRB Rules govern the same subject matter as the Federal HOS regulations, the FMCSA considers them to be rules "on commercial motor vehicle safety" as applied to property-carrying CMV drivers that are within the Agency's HOS jurisdiction and, thus, they are subject to preemption review under section 31141.

As the California Employment Lawyers Association pointed out, the Federal HOS regulations are within the Secretary's authority because they "would improve highway safety and the health of CMV drivers." The Agency notes that in her comments on this petition, the California Labor Commissioner acknowledged that the MRB Rules improve driver and public safety stating, "It is beyond doubt that California's meal and rest period requirements promote driver and public safety." In addition, the ATA argues in a supplemental submission, that the Labor Commissioner made a similar statement in a preemption proceeding concerning the MRB Rules before the Pipeline and Hazardous Materials Administration. 83 FR 47961. There, she stated that the MRB Rules are "designed to ensure that workers have sufficient rest and break-time in order to perform their jobs safely." The Agency applauds California's commitment to driver and public safety; however, the Labor Commissioner admits that the MRB Rules are, in fact, laws on CMV safety. Thus, the Labor Commissioner's statements are new information, received well after the 2008 Decision, that further demonstrate that the MRB Rules are rules "on motor carrier safety" and therefore fall squarely within the scope of the Secretary's preemption authority.

Finally, the AAJ commented that the ATA's petition is inconsistent with its previous position in the ATA's own amicus brief in *Dilts.* Specifically, the AAJ contends that the ATA took the position in *Dilts* that there was no evidence that the break requirements at issue were intended to address motor vehicle safety, and that the break requirements are not responsive to any such concerns. But the question of whether the *ATA* is taking inconsistent positions is not relevant to the *FMCSA's* analysis. While the FMCSA is considering this matter upon a petition, it is not adjudicating a dispute between private parties; instead, it is exercising its own statutory responsibility to review State laws or regulations. Thus, the FMCSA must reach what it believes to be the correct legal conclusion in the matter presently before it, regardless of the ATA's prior positions. The FMCSA notes, moreover, that the prior ATA argument cited by the AAJ related to 49 U.S.C. 14501(c)(2)(A), which provides that the FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles"; this language does not necessarily have the same scope as section 31141.[8]

*II. The MRB Rules Are "Additional to or More Stringent Than" the Agency's HOS Regulations Within the Meaning of Section 31141*

Having concluded that the California MRB Rules are rules "on commercial motor vehicle safety," under section 31141, the Agency next must decide whether the MRB Rules have the same effect as, are less stringent than, or are additional to or more stringent than the Federal HOS regulations. 49 U.S.C. 31141(c)(1). The ATA and the SCRA argue that the MRB Rules are "additional to or more stringent than" the Agency's HOS regulations because they impose additional obligations. As discussed more fully below, the FMCSA agrees. The MRB Rules require employers to provide CMV drivers with more rest breaks than the Federal HOS regulations, and they allow a smaller window of driving time before a break is required. For these reasons, the MRB Rules do not have the same effect and are not less stringent than the Federal HOS regulations, and instead are additional to or more stringent than the HOS regulations.

Although the California Labor Commissioner contends that the ATA

---

[7] An agency may also be required to consider whether "its prior policy has engendered serious reliance interests that must be taken into account." *Fox,* 556 U.S. at 515. Here, no commenter has argued that the FMCSA's prior position has "engendered serious reliance interests," and the FMCSA is aware of no such interests. In any event, the existence of reliance interests would not change the FMCSA's view that California's MRB Rules are covered by section 31141.

[8] Sections 14501(c)(2)(A) and 31141 do not necessarily have the same scope because the two provisions were enacted to achieve different purposes. Section 14501(c)(2)(A) serves to ensure that the preemption of States' economic authority over motor carriers of property not infringe upon a State's exercise of its traditional police power over safety. *See City of Columbus* v. *Ours Garage & Wrecker Serv., Inc.,* 536 U.S. 424, 426 (2002). As explained above, however, Congress enacted the 1984 Act, which includes section 31141, to ensure that there be as much uniformity as practicable whenever a Federal standard and a State requirement cover the same subject matter.

exaggerates the requirements imposed by the MRB Rules, she does not deny that the MRB Rules provide for more breaks than the HOS regulations. She argues, however, that the MRB Rules are not ''additional to or more stringent than'' the Agency's HOS regulations, within the meaning of 49 U.S.C. 31141(c), because under the MRB Rules, employers are obligated to either provide required meal and rest periods, or pay higher wages. She further explains that while California permits employers to pay higher wages as an alternative to complying with the MRB Rules, FMCSA's HOS regulations contain a flat prohibition on driving after more than 8 hours on duty without a 30-minute rest period, and thus the MRB Rules are not more stringent that the HOS regulations. Some organizations and drivers who oppose the ATA's petition echo this argument.

The Agency disagrees with this position. California law provides that an employer ''*shall not*'' require an employee to work during a mandated meal or rest break, and provides for additional pay as a remedy for violating that prohibition. Cal. Labor Code 226.7(b)–(c) (emphasis added). The California Supreme Court has held—in a decision not mentioned by the Labor Commissioner—that section 226.7 ''does not give employers a lawful choice between providing *either* meal and rest breaks *or* an additional hour of pay,'' and that ''an employer's provision of an additional hour of pay does not excuse a section 226.7 violation.'' *Kirby* v. *Immoos Fire Protection, Inc.,* 274 P.3d 1160, 1168 (Cal. 2012) (emphasis in original). This ruling is not undercut by the two cases cited by the Labor Commissioner. While it is true that the California Supreme Court stated in *Augustus* v. *ABM Security Services, Inc.* that ''employers who find it especially burdensome to relieve their employees of all duties during rest periods'' could provide the extra hour of pay, it emphasized that this ''option[ ] should be the exception rather than rule, to be used'' only in the context of ''irregular or unexpected circumstances such as emergencies.'' 385 P.3d 823, 834 & n.14 (Cal. 2016). And while the California Supreme Court in *Murphy* v. *Kenneth Cole Prods., Inc.* held that the extra hour of pay is ''wages'' for statute of limitations purposes, that ruling predated *Kirby* by six years, and is not inconsistent with *Kirby's* holding that an employer does not have a lawful choice to ignore the MRB Rules. Indeed, the California Supreme Court in *Kirby* specifically noted that its decision was consistent with *Murphy. See Kirby,* 274 P.3d at 1168 (''[T]o say that a section 226.7 remedy is a wage . . . is not to stay that the *legal violation* triggering the remedy is nonpayment of wages. As explained above, the legal violation is nonprovision of meal or rest breaks . . . .''). Accordingly, the MRB Rules do not give employers the option of either complying with the requirements or providing penalty pay. The MRB Rules therefore are ''additional to or more stringent than'' the HOS regulations.[9]

### III. The MRB Rules Have No Safety Benefits That Extend Beyond Those Provided by the FMCSRs

Because the MRB Rules are more stringent than the Federal HOS regulations, they may be enforced *unless* the Agency also decides either that the MRB Rules have no safety benefit, that they are incompatible with the HOS regulations, or that enforcement of the MRB Rules would cause an unreasonable burden on interstate commerce. 49 U.S.C. 31141(c)(4). The Agency need only find that one of the aforementioned conditions exists to preempt the MRB Rules. 49 U.S.C. 31141(c)(4).

Section 31141 authorizes the Secretary to preempt the MRB Rules if they have ''no safety benefit.'' 49 U.S.C. 31141(c)(4)(A). The FMCSA interprets this language as applying to any State law or regulation that provides no safety benefit *beyond* the safety benefit already provided by the relevant FMCSA regulations. While the plain statutory language could be read as applying only to State laws or regulations with no safety benefit *at all,* such a reading would render section 31141(c)(4)(A) a nullity, since every State law or regulation that is ''additional to or more stringent'' than an FMCSA regulation necessarily provides at least the safety benefits of the FMCSA regulation. A State law or regulation need not have a negative safety impact to be preempted under section 31141(c)(4)(A), although a law or regulation with a negative safety impact would be preempted.

#### A. Fatigue

The ATA and the SCRA argue that imposition of California's MRB Rules on CMV drivers constitutes a threat to highway safety by specifying breaks at arbitrary times rather than when they are most needed. In this regard, the ATA contends that having to take multiple breaks at arbitrary intervals when they are not needed is a strong disincentive for a CMV driver to take breaks when they are needed. In addition, the ATA argues that ''by consuming significant amounts of what would otherwise be productive time permitted under the federal HOS rules, the California rules extend a driver's day significantly.''[10]

The Labor Commissioner, the AAJ, the Transportation Trades Department/AFL–CIO (TTD), and other commenters dispute the ATA's argument that the MRB Rules provide no safety benefit. Commenters in opposition to the petition overwhelmingly argue that the MRB Rules benefit highway safety because they combat driver fatigue. The Labor Commissioner, Worksafe, and the AAJ cite studies by the National Transportation Safety Board, academia, and others to show that CMV drivers' safety performance can easily deteriorate due to fatigue.

The FMCSA need not resolve the arguments by the ATA and the SCRA that the MRB Rules pose a threat to highway safety with regard to fatigued driving, because the Agency determines that the MRB Rules provide no safety benefit beyond the safety benefit already provided by the Federal HOS regulations and other provisions of the FMCSRs. Here, the MRB Rules generally require that drivers be given a 30-minute meal break every five hours, as well as an additional 10-minute rest break every four hours. The FMCSRs require drivers to take a 30-minute rest break within 8 hours of coming on duty, 49 CFR 395.3(a)(3)(ii), and they provide for rest by prohibiting a driver from operating a CMV if she feels too fatigued or is otherwise unable to safely drive. 49 CFR 392.3. Additionally, employers are prohibited from coercing a driver too fatigued to operate the CMV safely to remain behind the wheel or otherwise violate the FMCSRs. 49 CFR 390.6. The Agency appreciates the dangers of fatigued driving. As the ATA pointed out, the FMCSRs allow the driver a 30-minute rest when needed at any time

---

[9] Even if employers did have an option of either complying with the MRB Rules or paying a penalty, the MRB Rules would still be ''additional to or more stringent than'' the HOS regulations, since the MRB Rules would either: (1) Require that employers provide breaks not required by the HOS regulations; or (2) pay a penalty not required by the HOS regulations.

[10] To illustrate this point, the ATA cites the example of a driver who starts her day at 7 a.m. Operating solely under the MRB Rules, the driver would have a required 10-minute break as close as practicable to 9 a.m., a 30-minute break some time before noon, a second 10-minute break as close as practicable to 1 p.m., and another 30-minute break some time before 5 p.m., for a total of 80 minutes. The ATA estimated that a driver would also spend an additional 5 minutes on either side of a break to find parking and return to the highway for an additional 30 minutes. Considering the amount of break time required by the MRB Rules, the ATA estimates that a driver's work day would have to be extended by 80 minutes to accomplish the same amount of work.

during an 8-hour driving interval, as well as other breaks, of no set time limit. The FMCSRs, moreover, prohibit drivers of property-carrying vehicles from driving more than 11 hours during a 14-hour shift, require them to take at least 10 hours off between 14-hour shifts, and prohibit them from exceeding certain caps on weekly on-duty time. 49 CFR 395.3. California's additional requirements that breaks be of specific durations, and occur within specific intervals, do not provide additional safety benefits.

In establishing the Federal rest break requirement in 2011, the Agency adjusted its initial proposal from requiring the rest break to occur within the first 7 hours of a work shift in response to ''numerous comments about the breaks, primarily from team drivers.'' 76 FR 81134, 81145. After balancing the need to prevent excessive hours of continuous driving with a driver's need for flexibility in scheduling a rest break, the Agency ultimately determined that an 8-hour driving window was appropriate to provide ''drivers [with] great flexibility in deciding when to take the break . . . [and to] make it significantly easier for team drivers to coordinate their sleeper-berth periods and . . . enable drivers who do not drive late into their work shift to dispense with a break altogether.'' 76 FR 81134, 81146. Here, the MRB Rules abrogate the flexibilities the Agency purposefully built into the Federal HOS Rules regarding when a driver is required to take a 30-minute rest period, and they graft onto the Federal HOS regulations a requirement for additional 10-minute rest breaks. While the Labor Commissioner cites studies, statistics and recommendations from the NTSB, academia, and the FMCSA tending to show that drowsy driving causes crashes, the Agency has reached the same conclusion, hence the off-duty break requirement in the HOS regulations and the explicit prohibition against fatigued driving. Therefore, FMCSA determines that the MRB Rules do not provide a safety benefit not already realized under the FMCSRs.

B. Parking

The ATA argues the MRB Rules also negatively impact safety by arbitrarily forcing trucks off the road more frequently, thus contributing to a critical shortage of safe truck parking. In support, the ATA cites of number recent of studies that were published after the Agency's 2008 Decision and the 2014 *Dilts* amicus brief. In this regard, Congress enacted ''Jason's Law'' in 2012 as part of the Moving Ahead for Progress in the 21st Century Act, Public. Law. 112–141 1401(c), which required the DOT to ''evaluate the capability of [each] State to provide adequate parking and rest facilities for commercial motor vehicles engaged in interstate transportation.'' The Federal Highway Administration (FHWA) issued the report in 2015, which stated:

Truck parking shortages are a national safety concern. An inadequate supply of truck parking spaces can result in two negative consequences: First, tired truck drivers may continue to drive because they have difficulty finding a place to park for rest and, second, truck drivers may choose to park at unsafe locations, such as on the shoulder of the road, exit ramps, or vacant lots, if they are unable to locate official, available parking.

*See* Federal Highway Administration, Jason's Law Truck Parking Survey Results and Comparative Analysis 1–2 (Aug. 2015) (Jason's Law Report), available at *https://ops.fhwa.dot.gov/freight/infrastructure/truck_parking/jasons_law/truckparkingsurvey/jasons_law.pdf.*

The FHWA's Jason's Law Report also found that ''[m]ore than 75 percent of truck drivers . . . reported regularly experiencing problems with finding safe parking locations when rest was needed,'' and that ''[n]inety percent reported struggling to find safe and available parking during night hours.'' *Ibid.* at viii. The report further noted that nearly 80% of drivers reported that they have difficulty finding parking at least once per week. *Ibid.* at 66. Additionally, the Jason's Law Report showed that as many as 94% of State motor carrier safety officials surveyed identified locations used by commercial drivers for unofficial or illegal parking. *Ibid.* at 60. Of those locations, over three quarters were highway ramps or shoulders, *Ibid.* at 61, and the vast majority of unofficial parking happened at night or in the early morning hours, *Ibid.* at 62.

The ATA also cited other recent studies and statistics showing the negative safety impacts associated with inadequate parking for CMVs:

• A 2016 report finding that 83.9% of surveyed drivers park in an unauthorized location at least once each week, and nearly half—48.7%—three or more times per week. C. Boris et al., Managing Critical Truck Parking Case Study—Real World Insights from Truck Parking Diaries (2016), available at *http://atri-online.org/wp-content/uploads/2016/12/ATRI-Truck-Parking-Case-Study-Insights-12-2016.pdf.*

• A 2016 survey of drivers by the Washington State Department of Transportation showing that more than 60% of drivers reported that at least three times per week they drive while fatigued because they are unable to find adequate parking when they need to rest. WSDOT Truck Parking Survey (Aug. 2016), available at *http://www.wsdot.wa.gov/NR/rdonlyres/D2A7680F-ED90-47D9-AD13-4965D6D6BD84/114207/TruckParkingSurvey2016_web2.pdf.*

• A 2017 report prepared for the FHWA and the Oregon Department of Transportation that noted that the safety hazard of the truck parking shortage in Oregon ''increases closer to the California border,'' where ''more crashes are occurring,'' likely as ''a result of encountering troubles finding safe and adequate parking in Southern Oregon.'' S. Hernandez & J. Anderson, Truck Parking: An Emerging Safety Hazard to Highway Users (July 2017).

In the 2014 *Dilts* amicus brief, the Agency opined that long haul CMV drivers would be using interstates or other major highways where periodic rest stops capable of accommodating a large truck are available. However, the studies cited by the ATA, of which the Agency did not have the benefit in 2014, show that the shortage of parking for CMVs continues to be a pressing highway safety issue. The studies cited by the ATA demonstrate that inadequate truck parking will often mean that drivers face a choice between driving while fatigued or parking where their vehicles will present a hazard for other motorists. Indeed, as the Washington State Department of Transportation Study shows, of those sampled, most drivers reported spending more time behind the wheel driving fatigued due to a lack of safe parking. The Jason's Law Report also demonstrates that drivers will have to resort to unsafe, unauthorized locations—such as shoulders and ramps—where they present a serious hazard to other highway users due to the shortage of safe, authorized parking spaces. The report explained that ''[v]ehicles parked on the shoulders . . . are a serious potential hazard to other motorists because they are fixed objects within the roadway cross-section that are unprotected by a barrier or horizontal buffer area.'' *See* Jason's Law Report at 7. In addition, ''[w]hen trucks park on shoulders or ramps . . . , maneuvering in and out of traffic . . . poses safety risks to the truck driver and other vehicles due to the mix of higher speed traffic and the slower speeds of the trucks in and out of these areas.'' *Ibid.*

Further illustrating this point, some commenters have also described how the shortage of available parking for CMVs has resulted in drivers having to park in locations that pose a potential

Federal Register / Vol. 83, No. 248 / Friday, December 28, 2018 / Notices	67477

safety hazard. In this regard, the Arkansas Trucking Association, Covenant Transport, Hercules Forwarding, International Foodservice Distributors Association, National Restaurant Association, and the Sysco Corporation commented that their drivers have to park at roadside increasing the risk of motorist accidents and injuries when safer parking options are unavailable due to the CMV parking shortage. In addition, Dealer's Choice Truckaway System, the International Warehouse Logistics Association, Tiger Lines, CRST International, and United Road specifically state that the shortage of available CMV parking in California results in their drivers having to park at unsafe locations. The International Warehouse Logistics Association explained that a member driver was killed when his CMV was struck by another vehicle after he parked on the shoulder of a roadway to take a mandatory rest break. The National Fraternal Order of Police (NFOP) also commented that ''because of a scattered patchwork of State rules on rest breaks and hours of service, some truck drivers have to take breaks in places that are not optimal for the public or highway.'' The NFOP continued, ''Having one clear and enforceable Federal standard in place for commercial drivers engaged in interstate commerce is important from any safety standpoint, especially on our nation's highways.'' The Truckload Carriers Association cited a recent survey where 95% of 5,400 surveyed drivers stated that they park in unauthorized areas when legal parking is not available. *See* Heavy Duty Trucking, August 29, 2018, *https://www.truckinginfo.com/312029/80-of-drivers-say-elds-make-finding-parking-harder.*

The California Employment Lawyers Association commented that the studies the ATA relies upon fail to show causation, stating, ''Despite the fact that truckers taking rest breaks contribute to the demand for parking, the studies are clear that the cause of the problem is a lack of parking, not State meal and rest break regulations.'' This argument is unpersuasive. Under the Federal HOS regulations, a CMV driver would be required to stop and park once during an 8-hour driving period; however, during a shift of more than 6 and up to 10 hours, the MRB Rules would, at a minimum, require drivers to stop and park 3 times, even though they may not be fatigued.[11] Because there is a current shortage of available parking for CMVs, in order to comply with the MRB Rules drivers may resort to parking at roadside or at an unauthorized location if the break does not coincide with a scheduled stop, and the Jason's Law Report illustrates the inherent dangers to the general public and the driver associated with CMV roadside parking. In fact, the FMCSA discussed the safety impacts associated with the parking shortage for CMVs in a 2015 decision granting the SCRA an exemption from the HOS rest break requirement for oversized loads, stating:

> It is also true that parking shortages affect drivers of many types of vehicle . . . . No matter how well marked, trucks parked at roadside, especially at night, are too often mistaken for moving vehicles and struck, frequently with fatal consequences, before an inattentive driver can correct his mistake. 80 FR 34957.

The Agency reiterated this point in a 2016 decision granting the SCRA a second exemption from the HOS rest break requirements. 81 FR 75727. The cited studies need not show that the CMV parking shortage is a result of the MRB Rules. Irrespective of the cause, the fact remains that there is a shortage of safe parking for CMVs, and the Agency believes that requiring CMV drivers to make triple the number of stops during a 10-hour shift under the MRB Rules compared to the Federal HOS rules, when there is a demonstrated inability for some drivers to safely park, has negative safety implications.

The California Labor Commissioner commented, ''If parking is a problem, surely keeping fatigued drivers on the road because there is nowhere to park is not the answer.'' The Agency agrees with the Labor Commissioner's general premise; in fact, the FMCSRs prohibit a driver from operating a CMV when too fatigued to drive safely. However, as explained above, the Agency believes that the increase in required stops to comply with the MRB Rules, when the driver may not be fatigued, will exacerbate the problem of drivers parking at unsafe locations.

### IV. The MRB Rules Are Incompatible With the Federal HOS Regulations

As described above, the MRB Rules must be preempted if the Agency decides that they are ''incompatible with the regulation prescribed by the Secretary.'' 49 U.S.C. 31141(c)(4)(B). Here, the Agency determines that the MRB Rules are incompatible with the Federal HOS regulations.

The legislative history of the 1984 Act clearly expresses Congress's intent that ''there be as much uniformity as practicable whenever a Federal standard and a State requirement cover the same subject matter.'' *See* S. Rep. No. 98–424, at 14 (1984). To that end, in determining whether a State law or regulation is compatible, the Agency applies the definition of ''compatible or compatibility'' in accordance with the Agency's regulations implementing the Motor Carrier Safety Assistance Program (MCSAP), which state, ''Compatible or Compatibility means that State laws and regulations applicable to interstate commerce and to intrastate movement of hazardous materials are identical to the FMCSRs and the HMRs or have the same effect as the FMCSRs . . . .'' 49 CFR 355.5.

The MCSAP was first authorized in sections 401–404 of the Surface Transportation Assistance Act of 1982 (STAA). Public Law 97–424, 96 Stat. 2097, 2154. Section 402 of the STAA authorized the Secretary to make grants to States for the development or implementation of programs for the enforcement of State rules, regulations, standards, and orders applicable to commercial motor vehicle safety that were compatible with Federal requirements. The 1984 Act subsequently authorized the Secretary to preempt incompatible State laws and regulations on commercial motor vehicle safety under section 31141. The Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA), Public Law 102–240, 105 Stat. 1914, reauthorized the MCSAP, and in 1992, the FHWA, the FMCSA's predecessor agency, issued a final rule to implement revisions to the MCSAP as required by the ISTEA, including adopting a definition for ''compatible or compatibility.'' 57 FR 40946. The final rule stated that not only did it serve to implement the requirements of the ISTEA, it also explained:

> This rule does implement express preemption provisions contained in the MCSA of 1984. The preemptive authority therein furthers the goal of national uniformity of commercial motor vehicle safety regulations and their enforcement, as intended by Congress. This intention was evidenced in the STAA of 1982, creating the MCSAP; the review of State commercial motor vehicle safety laws and regulations and determinations of compatibility required by the MCSA of 1984; and the intrastate compatibility provision in section 4002 of the ISTEA.

Because the FHWA promulgated the MCSAP regulations at 49 CFR part 355 to implement the compatibility provision in section 4002 of the ISTEA

---

[11] Drivers working shifts of more than six hours up to ten hours are entitled to two 10-minute rest periods and one 30-minute meal break. *See* 8 CCR 11090 (11) and (12); *Brinker Rest. Corp.* v. *Superior Court,* 273 P.3d 513, 529–30, 536–38 (Cal. 2012).

and the preemption provisions of the 1984 Act, the Agency believes that 49 CFR 355.5 sets forth the appropriate test for determining whether a State law or regulation is compatible under section 31141. The Agency notes that the compatibility test under section 355.5 is different from ''conflict preemption'' under the Supremacy Clause, where conflict arises when it is impossible to comply with both the State and Federal regulations. Under the MCSAP regulations, the ability to comply with both the State law and the FMCSRs does not make the State law compatible.

Here, both the ATA and the SCRA argue that the MRB Rules are not compatible with the HOS regulations; therefore, they may be preempted. In this regard, the ATA argues:

> The California rules are also incompatible with federal HOS rules. In the regulations it adopted ''[t]o provide guidelines for a continuous regulatory review of State laws and regulations,'' 49 CFR 355.1(b), the Agency has defined ''[c]ompatible or compatibility'' to mean, in relevant part, ''that State laws and regulations applicable to interstate commerce . . . are *identical to* the FMCSRs . . . *or have the same effect as* the FMCSRs,'' *Ibid.* at § 355.5 (emphases added). The California break rules cannot meet this standard: They are indisputably not ''identical to'' the federal break rule, and their effect, as discussed above, is far different.

The SCRA explains, ''The petitioners contend that [compatibility] should be interpreted to require [the provision at issue] not exactly to be identical, but almost identical in every meaningful way, so the state standard could be worded differently as long as it achieved identical requirements.'' The SCRA goes on to argue that while California has taken steps to ensure its other regulations on motor carrier safety are compatible with the FMCSRs, it has failed to bring the MRB Rules into compatibility.

The Agency agrees with the ATA and with the SCRA that the MRB Rules are incompatible with the Federal HOS regulations. As described above, the MRB Rules are more stringent than the Federal HOS regulations; therefore, the requirements are not identical. Not only do the MRB Rules require employers to provide CMV drivers with more rest breaks than the Federal HOS regulations, the timing requirements for rest periods under the MRB Rules provide less flexibility than the Federal HOS regulations. As described more fully above, the Agency determined 8 hours was an appropriate window to require driver to take a 30-minute rest while providing great flexibility to do so. The MRB Rule's requirement that drivers be provided a 30-minute break every five hours, as well as an additional 10-minute rest break every four hours, significantly reduces the flexibilities the Agency built into the Federal HOS regulations, and they graft onto the Federal HOS rules additional required rest breaks that the Agency did not see fit to include. The MRB Rules therefore are not compatible with the Federal HOS regulations.

*V. Enforcement of the MRB Rules Would Cause an Unreasonable Burden on Interstate Commerce*

The MRB Rules may not be enforced if the Agency decides that enforcing them ''would cause an unreasonable burden on interstate commerce.'' 49 U.S.C. 31141(c)(4)(C). Section 31141 does not prohibit enforcement of a State requirement that places an incidental burden on interstate commerce, only burdens which are unreasonable. In determining whether a State law poses an unreasonable burden on interstate commerce, it is well settled that the Agency should consider whether the burden imposed is clearly excessive in relation to the putative local benefits derived from the State law. *See e.g., Pike* v. *Bruce Church, Inc.,* 397 U.S. 137, 142 (1970).

A. Decreased Productivity, Administrative Burden, and Costs

The ATA contends that California's rules impose an unreasonable burden on interstate commerce because they ''entail an enormous loss in driver productivity by requiring carriers to provide far more off-duty time within a driver's duty window than the Agency has deemed necessary under the federal rules.'' According to its example described above, the ATA calculates that the MRB Rules would add 80 minutes of additional non-productive time to a driver's ten-hour shift beyond the required 30-minute rest period under the Federal HOS rules, thus reducing a driver's productivity by more than 13%. Citing its 2017 American Trucking Trends statistics, the ATA contends that such a productivity reduction is a massive burden on interstate commerce because in 2016 trucks carried 70.6% of primary shipment domestic tonnage, accounting for 79.8% of the nation's primary shipment freight bill. *See* American Trucking Associations, American Trucking Trends 2017. The ATA further cites statistics compiled by the Port of Oakland Seaport showing that California's three major container ports carry approximately 50% of the nation's total container cargo volume. *See* Port of Oakland Seaport, Facts and Figures, available at *http://www.oaklandseaport.com/performance/facts-figures/* (''California's three major container ports carry approximately 50% of the nation's total container cargo volume''). Given California's share of the national economy and the role of its ports in interstate commerce, the ATA argues that the estimated loss of productivity due to the MRB Rules ''would be more than enough to represent an unreasonable burden on interstate commerce.''

The California Labor Commissioner argues that the ATA overstates the loss of productivity and that the ATA's example incorrectly calculated the amount of break time the MRB Rules would require and employer to provide a driver working a 10-hour shift. In this regard, the Labor Commissioner explained that, rather than the 4 breaks totaling 80 minutes calculated by the ATA, an employer would only be required to provide a driver working a 10-hour shift with 3 breaks totaling 50 minutes.[12] The Labor Commissioner further argues that using the ATA's example, an employer would only have to provide two 10-minute breaks beyond the 30 minute off-duty rest period already required by the Federal HOS regulations.

Other commenters opposing the petition, including the TTD and the California Employment Lawyers Association, argue that the ATA's arguments concerning lost productivity are speculative and unsupported. In this regard, the TTD states that the ATA's argument is nothing more than a '' 'back of the napkin' speculation on lost productivity . . . [that] invokes the theoretical specter of damage to

---

[12] Citing *Brinker,* the Labor Commissioner explains that the MRB Rules require a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of the employee's 10th hour of work. Thus, in the ATA's example, the employer would only be required to provide one meal period no later than noon and two 10-minute rest breaks. While the ATA and the Labor Commissioner disagree about the specific hypothetical at issue, there are many hypotheticals where the California rules require significantly more break time than the Federal HOS regulations. In *Brinker,* the California Supreme Court explained, ''Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on.'' 273 P.3d at 529. Regarding meal breaks, the court explained, ''[S]ection 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work.'' *Ibid.* at 537. Thus, the MRB Rules would require an employer to provide an employee working 12 hours with three 10 minute breaks and two 30-minute meal breaks while the Federal HOS regulations would require one 30 minute off-duty break to be taken within the first 8 hours of driving time.

interstate shipping without evidence.'' The California Employment Lawyers Association commented that the ATA's petition ''cannot cite any actual evidence of any burden they have caused on interstate commerce'' and that ''[u]nsupported conjecture is not a basis for finding preemption pursuant to section 31141(c)(4)–(5).''

At the outset, the Agency acknowledges that the State of California has a legitimate interest in promoting driver and public safety, as the Labor Commissioner explained. However, the Federal HOS rules and the provisions in the FMCSRs relating to fatigued driving and employer coercion serve to promote that interest. The Agency does not dismiss as mere speculation the ATA's argument that the MRB Rules will result in decreased productivity. It is indisputable that the MRB Rules decrease each driver's available duty hours, as the Agency recognized in the *Dilts* amicus brief, as compared to the Federal HOS regulations. *See Dilts* Amicus Brief at 19. In addition, some commenters have provided information describing decreased productivity caused by the MRB Rules, thus bolstering the ATA's argument in this regard. For example, CRST International explained that its carriers move time sensitive freight from ports in California across the nation and, by forcing its drivers to shut down for breaks beyond those required by the Federal HOS regulations, the MRB Rules result in decreased productivity, greater fuel consumption, and increased emissions. In the same vein, The FedEx Corporation stated:

> The California rules have resulted in a costly loss to driver productivity by requiring more off-duty time for drivers than what is deemed necessary by federal rules. Though FedEx networks are carefully engineered to ensure the safe and efficient movement of customers' goods, the state-required breaks prevent Fed Ex companies from using efficient network designs to their full potential.

The FedEx Corporation further explained that in order to take off-duty breaks, the ''drivers must slow down, exit the roadway, find a safe and suitable location to park and secure their vehicles, and then exit the vehicle'' and that the company has to build additional time, up to 90 minutes, into the drivers' routes. Similarly, the National Retail Federation explained that a member company reported that due to the MRB Rules, the company's drivers in California had a 3% reduction in productivity compared to drivers in the balance of the country, which cost the company $1.5 million annually.

Citing a recent study by the American Transportation Research Institute (ATRI) to determine the impact of California's MRB Rules on trucking productivity, New Prime commented:

> Under the ATRI study's methodology, GPS data was used to quantify the unproductive time associated with securing parking during prescribed meal and rest break periods. *See* ATRI, California Truck Parking Analysis (Oct. 2018). The ATRI study employed a sample of eleven truck parking areas in California. By tracking ten trucks with each of these truck stop areas, ATRI determined that, on average, it required 12.5 minutes of additional time to locate a spot and then to return to the highway for continued driving. *Ibid.* at 3. Applying ATRI's $66.65 average cost per hour to operate a commercial vehicle, each required stop comes at a price tag of $13.84 in direct costs.

New Prime further explained that applying ATRI's findings to its business, complying with the MRB Rules it could equate to an annual cost of more than $1.8 million, assuming 180 of the company's trucks had an average of two break stops per day, to be borne by New Prime and its independent contractor drivers. The FMCSA acknowledges that even without the MRB Rules, many drivers would take breaks beyond those required by the HOS regulations. It is nevertheless clear that the MRB Rules require drivers to take more breaks than they otherwise would, and may require those breaks to occur at times they otherwise would not occur.

In addition to decreased productivity resulting from the MRB Rules, some commenters have also provided information about the costs and the administrative burden associated with complying with the MRB Rules. In this regard, C.R. England explained that the company regularly considers whether market forces justify the costs associated with conducting interstate commercial business in California, and explained that the MRB Rules have:

> [R]esulted in additional compliance costs such as additional administrative head count, additional operations headcount, adjustments to the timing and costs of freight delivery and logistics, and costs associated with outside vendors and internal programming and product development, among other things. In addition, the ever complicated and onerous regulatory and legal framework in California, including these break rules, results in significant legal fees and costly litigation.

Similarly, Joval Transportation claims to have stopped conducting business in California due to the excessive regulations. The FedEx Corporation commented, ''California rules on meal periods and rest breaks have required FedEx companies to revise routes, as well as compensation plans and policies, at a great operational cost . . . We have been forced to lengthen routes and driver workdays to accommodate compliant break times and locations.''

Based on the numerous comments received, the FMCSA concludes that the MRB Rules impose significant and substantial costs stemming from decreased productivity and administrative burden.

B. Cumulative Effect of the MRB Rules and Other States' Similar Laws

Section 31141 does not limit the Agency to looking only to the State whose rules are the subject of a preemption determination. The FMCSA ''may consider the effect on interstate commerce of implementation of that law or regulation with the implementation of all similar laws and regulations of other States.'' 49 U.S.C. 31141(c)(5). Here, the ATA argues that the Agency should consider what the cumulative effect would be if all States implemented rules similar to California's MRB Rules. In this regard, the ATA states, ''[T]he proliferation of rules like California's in other states, applied to commercial drivers working in interstate commerce, would increase the associated freight productivity loss enormously, and would represent an even larger burden on interstate commerce.''

To date, 20 States in addition to California regulate, in varying degrees, meal and rest break requirements, as the National Conference of State Legislators, the Center for Justice and Democracy, and other commenters have pointed out.[13] For example, Oregon requires employers to provide meal periods of not less than 30 minutes to non-exempt employees who work 6 or more hours in one shift and a 10-minute rest period for every 4 hours worked.[14] *See* Or. Admin. R. 839–020–0050. In the State of Washington, employers are required to provide non-exempt, nonagricultural employees a meal break of 30 minutes

---

[13] According to the National Conference of State Legislators, the following States have meal and rest laws: California, Colorado, Connecticut, Delaware, Illinois, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Nebraska, Nevada, New Hampshire, New York, North Dakota, Oregon, Rhode Island, Tennessee, Vermont, Washington, and West Virginia.

[14] In Oregon, no meal period is required if the shift is less than 6 hours, additional meal periods are required to be provided to employees who work 14 hours or more. If the shift is less than seven hours, the meal period must commence between two and five hours from the beginning of the shift. If the work period is more than seven hours, the meal period between three and six hours from the beginning of the shift. These rest and meal period requirements apply to employees 18 years of age and older, and Oregon's rest and meal period requirements specific to minors are found at OAR 839–021–0072.

or more for every 5 hours worked and a rest break of 10 minutes or more for every 4 hours worked.[15] *See* WAC 296–126–092. The State of Nevada requires employers to provide nonexempt employees a 30-minute meal period when working a continuous eight hours and a 10-minute break for each four (4) hours worked or major fraction thereof.[16] *See* NRS 608.019; NAC 608.145.

Here, the diversity of State regulation of required meal and rest breaks for CMV drivers has resulted in a patchwork of requirements, and several commenters have described the difficulty navigating them. In this regard, the American Association of Bakers stated that its member companies and drivers who are part of regional distribution networks have had to create ''elaborate schedules to remain in compliance with separate meal and rest break rules that are far less flexible'' than the Federal HOS regulations. C.R. England provided a map showing the patchwork of State-mandated break laws that a driver could encounter on one or more long-haul trips that span the country, and stated that complying with disparate State laws in this regard was costly and time consuming. The National Association of Wholesaler-Distributors commented that one of its member companies that operates in six States must spend ''several thousand dollars annually simply to track the differences in [rest break] rules for the states in which they operate.'' Other commenters, such as the Association of American Railroads, Motor Carriers of Montana, New Prime, and the National Association of Small Trucking Companies, also discussed operating procedure adjustments and other administrative burdens that result from varying State requirements which serve to disrupt the flow of interstate commerce.

The International Brotherhood of Teamsters argues that drivers pass through an assortment of State or local regulations throughout their workday, including varying speed limits, tolling facilities, and enforcement zones for distracted driving and DUI; yet those rules do not constitute an unreasonable burden on interstate commerce. The Agency is not persuaded by this argument. The 1984 Act explicitly prohibits the Agency from ''prescrib[ing] traffic safety regulations or preempt[ing] state traffic regulations'' such as those described. 49 U.S.C. 31147(a). In addition, issues surrounding State taxation and tolling are well outside the scope of the Agency's statutory authority. Therefore, the extent to which the ''assortment of state or local regulations'' cited by the International Brotherhood of Teamsters unreasonably burden interstate commerce, if at all, as compared to the MRB Rules is not part of the Agency's deliberative process.

The Agency determines that enforcing the MRB Rules decreases productivity and results in increased administrative burden and costs. In addition, the Agency believes it to be an unreasonable burden on interstate commerce for motor carriers to have to cull through the varying State requirements, in addition to Federal HOS rules, to remain in compliance, as commenters have described. As explained above, uniform national regulation is less burdensome than individual State regulations, which are often conflicting. Therefore, the Agency concludes that the MRB Rules place an unreasonable burden on interstate commerce.

### Preemption Decision

As described above, the FMCSA concludes that: (1) The MRB Rules are State laws or regulations ''on commercial motor vehicle safety,'' to the extent they apply to drivers of property-carrying CMVs subject to the FMCSA's HOS rules; (2) the MRB Rules are additional to or more stringent than the FMCSA's HOS rules; (3) the MRB Rules have no safety benefit; (4) the MRB Rules are incompatible with the FMCSA's HOS rules; and (5) enforcement of the MRB Rules would cause an unreasonable burden on interstate commerce. Accordingly, the FMCSA grants the petitions for preemption of the ATA and the SCRA, and determines that the MRB Rules are preempted pursuant to 49 U.S.C. 31141. California may no longer enforce the MRB Rules with respect to drivers of property-carrying CMVs subject to FMCSA's HOS rules.

Dated: December 21, 2018.

**Raymond P. Martinez,**
*Administrator.*
[FR Doc. 2018–28325 Filed 12–21–18; 4:15 pm]
**BILLING CODE 4910–EX–P**

---

[15] In Washington, the meal period must commence between two and five hours from the beginning of the shift. The rest break must commence no later than the end of the third hour of the shift. WAC 296–126–092

[16] Nevada requires one 10-minute break if the employee works between 3½ and 7 hours; two 10-minute breaks if the employee works between 7 and 11 hours; three 10-minute breaks if the employee works between 11 and 15 hours; or four 10-minute breaks if the employee works between 15 and 19 hours. *See* NAC 608.145(a)–(d).

---

## DEPARTMENT OF TRANSPORTATION

### Federal Railroad Administration

[Docket No. FRA–2001–11213, Notice No. 23]

### Drug and Alcohol Testing: Determination of Minimum Random Testing Rates for 2019

**AGENCY:** Federal Railroad Administration (FRA), Department of Transportation (DOT).

**ACTION:** Notification of determination.

---

**SUMMARY:** This notification of determination announces FRA's minimum annual random drug and minimum annual random alcohol testing rates for covered employees and for maintenance-of-way (MOW) employees for calendar year 2019.

**DATES:** This determination takes effect December 28, 2018.

**FOR FURTHER INFORMATION CONTACT:** Gerald Powers, FRA Drug and Alcohol Program Manager, W33–310, Federal Railroad Administration, 1200 New Jersey Avenue SE, Washington, DC 20590 (telephone 202–493–6313); or Sam Noe, FRA Drug and Alcohol Program Specialist, Federal Railroad Administration (telephone 615–719–2951).

**SUPPLEMENTARY INFORMATION:** FRA is announcing the 2019 minimum annual random drug and alcohol testing rates for covered service employees, and the 2019 minimum annual random drug and alcohol testing rates for MOW employees. For calendar year 2019, the minimum annual random testing rates for covered service employees will continue to be 25 percent for drugs and 10 percent for alcohol, while the minimum annual random testing rates for MOW employees will continue to be 50 percent for drugs and 25 percent for alcohol.

To set its minimum annual random testing rates for each year, FRA examines the last two complete calendar years of railroad industry drug and alcohol program data submitted to its Management Information System (MIS). The rail industry's random drug testing positive rate for covered service employees (employees subject to the hours of service laws and regulations) remained below 1.0 percent for 2016 and 2017. The Administrator has therefore determined the minimum annual random drug testing rate for the period January 1, 2019, through December 31, 2019, will remain at 25 percent for covered service employees. The industry-wide random alcohol testing violation rate for covered service