

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| ANTHONY AYALA,<br><br>        Plaintiff,<br><br>v.<br><br>U.S. XPRESS ENTERPRISES, INC., et al.,<br><br>        Defendant. | No. EDCV 16-137-GW-KKx<br><br>**PRELIMINARY INSTRUCTIONS** |

## **Preliminary Jury Instructions**

Members of the jury: You are now the jury in this case. It is my duty to instruct on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

To help you follow the evidence, I will give you a brief summary of the positions of the parties and an overview of the case:

This case is a class action that involves the claims of a group of truck drivers, represented by the plaintiff Anthony Ayala ("Plaintiff") who contend that they were not paid the minimum wage for all the work they performed for Defendant U.S. Xpress, Inc. ("Defendant" or "USX"). A class action is a lawsuit that has been brought by one or more named plaintiffs on behalf of a larger group of people with the same or very similar claims. All of these people together are called a "class." The class in this case consists of: All California resident drivers who worked or work in California for USX after the completion of training at any time between December 23, 2011 and November 22, 2017.

During the majority of the time involved in this case, USX paid its drivers compensation as provided in its 2013 Driver Handbook. The 2013 Driver Handbook provides that:

> The Company pays drivers the designated mileage rate as compensation for completing a trip and delivering a load on behalf of the Company. In order to complete the trip and deliver the load, the driver is required to perform various job functions, and the mileage pay is designed to compensate a driver for all hours worked by the driver performing those job functions in completing the trip and delivering the load (i.e., all on-duty time, both driving and non-driving), including, but not limited to, receiving the dispatch, trip planning for the load, pre-trip and post-trip inspections of equipment, driving, fueling, on-duty breaks, dealing with customers, waiting to load and unload, and completing and returning paperwork for the load, unless otherwise noted.

In general, under California law, employees are entitled to compensation for time when they are under their employer's control. Plaintiff claims that USX failed to pay class members: (1) for certain periods which USX treated as off-duty time but which class members were in effect under USX's control, (2) minimum wages under California law given the amount of pay which

1

the employees received in light of the amount of time expended to complete the tasks, and (3) for work that some class members actually completed but were not paid. USX contends that it properly compensated Plaintiff and other USX drivers for the work they performed. USX paid its drivers for every trip they completed through a mileage-based formula that generated a fixed fee for each trip. USX's compensation formula used a computer program to assign a set number of miles for each trip and then multiplied those miles by each driver's mileage rate which varies by driver (for example, a driver's rate will vary depending on the driver's seniority and whether the driver is working solo or in a team) to come-up with the total compensation the drivers earned for each load.

Specifically, the plaintiff class seeks to recover (and bears the burden of proving by a preponderance of the evidence) purportedly unpaid wages in the following situations:

(1) As to deliveries of "**high value product**," the time away from the truck by solo drivers was limited in the 2013 Driver's Handbook to one hour maximum. As to "high value product," where the delivery was made by a two-person team, one team member was required to physically remain with the truck. Plaintiff must establish which drivers remained with the truck and the amount of hours each of the drivers were impacted by that policy.

(2) Plaintiff also contends that USX's policies governing the movement of "**HAZMAT**" **loads** precluded him and other USX drivers from using their off-duty time "as they would like." It will be up to you to decide whether USX has a HAZMAT policy that in fact precluded drivers from using their off-duty time "as they would like" and, if so, which employees were so affected and the amount of hours in which they were impacted.

(3) A "**layover**" occurs during any 24-hour period when a driver indicates that he/she is available for dispatch or assignment and is not dispatched on a load due to lack of freight or other circumstances beyond the driver's control. In such situations, drivers are paid $50 for each 24-hour period, but must be in communication with USX's operations and remain available to dispatch or assignment during the period. Plaintiff must establish that said policy precluded drivers from using their off-duty time "as they would like" thereby establishing control in violation of California's minimum wage laws and, if so, which employees were so affected and the amount of hours in which they were impacted.

(4) Some USX drivers, including Plaintiff, at times worked as team drivers. You will hear that **team drivers** frequently spend their time in the part of the truck called a "**sleeper berth**," while their teammate was driving. Plaintiff contends that the drivers were under USX's control during the sleeper berth times which precluded those drivers from using their off-duty time "as they would like." Plaintiff must establish that USX had a policy or practice which placed a team driver under its control during the sleeper berth periods and, if so, which employees were so affected and the amount of hours in which they were impacted.

(5) Drivers were at times required to **wait at shippers and receivers**, including time at a loading dock. For class members to recover additional wages for such times, Plaintiff must prove that such periods were not covered by the compensation provided in the 2013 Drivers Handbook due to some USX policy or practice, and which employees were so affected and the amount of hours in which they were impacted.

(6) Plaintiff contends that, even aside from high value property or HAZMAT loads, USX

2

would require the drivers to stay with the truck or required them to promptly respond to messages from supervisors and that these requirements prevented drivers from using off-duty" time "as they would like." Plaintiff must prove the existence of such policy or practice, which drivers were subject to USX's control, and the amount of hours that the drivers were so impacted.

(7) Plaintiff contends that, for certain trips while in California, USX drivers' **pay fell below the California minimum wage** even when USX was giving them credit for all hours worked. Plaintiff must prove whether USX violated California's minimum wage laws for this time, which class members were so affected and the amount of hours involved.

(8) Plaintiff also contends that certain drivers completed trips and segments of trips for which they were never paid at all. Plaintiff must prove the existence of such **unpaid trips**, which drivers were not paid, and the amount of unpaid hours.

(9) As to the time period at issue in this case, there is a brief period prior to the effective date of the 2013 Driver's Handbook (from **December 23, 2012 to December 31, 2012**) where the parties disagree on the applicable compensation for work during that time. Plaintiff must prove that USX failed to pay class members the appropriate compensation for that period, and the amount of any unpaid or underpaid wages.

(10) Plaintiff contends that USX owes him and certain other former USX drivers **penalties** that may be available under California law, for willfully failing to timely pay wages. Plaintiff must prove that there were wages that were not timely paid and that USX's failure to pay was willful.

USX contends that it paid its drivers at least the minimum wage for all hours they worked. USX also contends that Plaintiff and other USX drivers cannot offer evidence sufficient to meet their burden of proving their claims or damages. USX also raises as an **affirmative defense** that it had a **good faith dispute** that additional wages were owed. If USX proves by a preponderance of the evidence that there was a good faith dispute, that means that Plaintiff and other USX drivers may be entitled to damages for unpaid wages but are not entitled to some of the penalties they seek.

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

In a class action, the claims of many individuals may be resolved at the same time instead of requiring each member to sue separately. Because of the large number of claims that are at issue in this case and the large number of class members, not everyone in the class will testify. All members of the class will be bound by the result of this trial.

The evidence you are to consider in deciding what the facts are consists of:
1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I may instruct you to accept as proved.

In reaching your verdict, you may consider only the testimony and exhibits received into

3

evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:
(1) the opportunity and ability of the witness to see or hear or know the things testified to;
(2) the witness's memory;
(3) the witness's manner while testifying;
(4) the witness's interest in the outcome of the case, if any;
(5) the witness's bias or prejudice, if any;
(6) whether other evidence contradicted the witness's testimony;
(7) the reasonableness of the witness's testimony in light of all the evidence; and
(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it (although I have no information that there will be news reports about this case); do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved – including the parties, the witnesses or the lawyers – until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside

5

the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

It is my practice to allow jurors to ask questions of the witnesses. In doing so, I am not suggesting that jurors should ask questions. Also, if you do so, remember that you are not advocates for one side or the other.

The procedure for asking questions is as follows: when attorneys have finished their examination of a witness, I will ask the jury if anyone has a question for the witness. If a juror has a question, he or she must write it down on paper that will be provided and the attorneys and I will discuss it. However, not all questions may be asked. If the rules of evidence do not permit a particular question, I will advise you, and the question will not be asked.

After your questions, if any, the attorneys may ask additional questions.