David Borgen (SBN 099354), Of Counsel
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
Raymond A. Wendell (SBN 298333)
rwendell@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:    (510) 763-9800
Fax:   (510) 835-1417

Justin L. Swidler
jswidler@swartz-legal.com
Joshua S. Boyette
jboyette@swartz-legal.com
SWARTZ SWIDLER LLC
9 Tanner St. Ste 101
Haddonfield, NJ 08033
Tel:    (856) 685-7420
Fax:   (856) 685-7417

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY AYALA, individually and on behalf of all those similarly situated, and Gabriel Nunez<br><br>        Plaintiffs,<br><br>vs.<br><br>U.S. XPRESS ENTERPRISES, INC., U.S. XPRESS, INC., and DOES 1-100,<br><br>        Defendants. | Case No.: 5:16-cv-00137-GW (KK)<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEY'S FEES, LITIGATION COSTS, AND SERVICE PAYMENTS**<br><br>Date:    Sept. 14, 2023<br>Time:   8:30 am<br>Crtrm:  9D<br>Before: Hon. George H. Wu |

840956.19

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 14, 2023 at 9:00 a.m., in the Courtroom of the Honorable George H. Wu, located at 350 West First Street, Los Angeles, CA 90012, Plaintiffs Anthony Ayala and Gabriel Nunez, on behalf of himself and all others similarly situated, will and hereby do move the Court to: (1) approve Plaintiff's request for attorneys' fees of $1,563,333.33; and (2) approve reimbursement of actual litigation costs of $874,831.48; and (3) approve a $10,000 service award for Class Representative Anthony Ayala for his service to the Class throughout this litigation. A separate motion for final approval of the settlement will be filed on or before August 18, 2023.

This Motion is based upon: this Notice of Motion and Memorandum of Points and Authorities in Support Thereof; the Declarations of Justin L. Swidler, David Borgen, James Sitkin, and Anthony Ayala, and the exhibits thereto in support of the Motion; such argument of counsel as the Court may hear; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order regarding this motion will be submitted with the Motion for Final Approval.

Dated: July 7, 2023

Respectfully submitted,

SWARTZ SWIDLER, LLC

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.

*Attorneys for Plaintiffs and Certified Class*

840956.19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David Borgen (SBN 099354), Of Counsel
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
Raymond A. Wendell (SBN 298333)
rwendell@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel:   (510) 763-9800
Fax:   (510) 835-1417

Justin L. Swidler
jswidler@swartz-legal.com
Joshua S. Boyette
jboyette@swartz-legal.com
SWARTZ SWIDLER LLC
9 Tanner St. Ste 101
Haddonfield, NJ 08033
Tel:   (856) 685-7420
Fax:   (856) 685-7417

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY AYALA, individually and on behalf of all those similarly situated, and Gabriel Nunez<br><br>     Plaintiffs,<br><br>vs.<br><br>U.S. XPRESS ENTERPRISES, INC., U.S. XPRESS, INC., and DOES 1-100,<br><br>     Defendants. | Case No.: 5:16-cv-00137-GW (KK)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE PAYMENTS**<br><br>Date:   Sept. 14, 2023<br>Time:   8:30 am<br>Crtrm:  9D<br>Before: Hon. George H. Wu |

840956.19

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.  THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS'
    FEES .......................................................................................................................3

    A.  An Attorneys' Fees Award of One-Third of the Settlement Common
        Fund Is Well Supported by Caselaw. ....................................................4

    B.  Given the Results Obtained and Risk Borne by Class Counsel, the
        Court Should Award Fees Equal to One-Third of the Common Fund. 6

        1.  The Excellent Settlement Result Supports the Fee Request. ......7

        2.  Class Counsel Took on Substantial Risk to Litigate this Case
            and Bore the Financial Burden of Litigating on a Contingency
            Basis. ....................................................................................7

    C.  Class Counsel's skill in representing the class supports the fee
        request. ..................................................................................................10

    D.  Class Counsel's Lodestar for Work Performed for the Class Also
        Supports the Award Sought. .................................................................10

        1.  Class Counsel's Hourly Rates are Reasonable. .......................10

        2.  The Number of Hours Claimed is Reasonable. ........................12

    E.  Awards in Similar Cases Confirm the Reasonableness of the
        Requested Fee Award. ..........................................................................13

II. THE COURT SHOULD AWARD THE REQUESTED LITIGATION
    COSTS ..................................................................................................................13

    A.  The Costs are Reasonable. ...................................................................14

III. THE COURT SHOULD AWARD THE REQUESTED INCENTIVE
     AWARD. ..............................................................................................................16

IV. CONCLUSION ....................................................................................................17

840956.19

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Austin v. Metro. Council*,
  2012 U.S. Dist. LEXIS 41750 (D. Minn. Mar. 27, 2012) ........................................ 16

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................. 13

*Bennett v. SimplexGrinnell LP*,
  No. 3:11-cv-01854-JST, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) ................... 5

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 907 (S.D. Ohio 2001) ....................................... 16

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ................................................. 10

*Camp v. Progressive Corp.* ,
  CIVIL ACTION NO. 01-2680 c/w 03-721, 04-1151, 04-1344, 04-1368 & 04-1921
  SECTION "I" (2), 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) ........... 16

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) .............................................. 16

*Craft v. Cnty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................... 4

*Deaver v. Compass Bank*,
  No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ..................... 7

*Deluca v. Farmers Ins. Exch.*,
  No. 17-cv-00034-TSH, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) .................... 8

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ......................................................... 3

*Flores v. TFI Int'l, Inc.*,
  No. 12-cv-05790-JST, 2019 WL 1715180 (N.D. Cal. Apr. 17, 2019) .................... 5

*Fritsch v. Swift Transp. Co. of Ariz., L.L.C., No.*,
  2022 U.S. Dist. LEXIS 14589 (C.D. Cal. Jan. 4, 2022) ..................... 13, 5

*Garcia v. Gordon Trucking, Inc.*,

840956.19

CASE NO. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 29, 2012) ................................................................................. 16-17

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................. 7-8

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*),
654 F.3d 935 (9th Cir. 2011) ................................................................. 4, 6

*La. Asociacion De Trabajadores De Lake v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) .................................................................. 3

*Marshall v. Northrop Grumman Corp.*,
No. 16-CV-6794 AB (JCx), 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .............. 5

*Miller v. CEVA Logistics USA, Inc.*,
No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176 (E.D. Cal. Aug. 10, 2015) ..... 4-5

*Mondrian v. Trius Trucking Inc.*,
2022 U.S. Dist. LEXIS 184152 (E.D. Cal. Oct. 6, 2022) ......................................... 16

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.* ,
No. 4:19-cv-07087-DMR, 2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) ................ 4

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.* ,
No. ?DOCKET?, 2021 WL 4133860 (?COURT? ?MONTH? ?DAY?, 2021) .......... 5

*Ozga v. U.S. Remodelers, Inc.*,
No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010) ..... 17

*Philips v. Munchery Inc.*,
No. 19-cv-00469-JSC, 2021 WL 326924 (N.D. Cal. Feb. 1, 2021) ................... 10, 13

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................... 15, 16

*Rosado v. Ebay Inc.*,
No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ................... 5

*Smith v. CRST Van Expedited, Inc.*,
CASE NO. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) . 5

*Taylor v. Populus Grp., L.L.C.*,
2023 U.S. Dist. LEXIS 3904 (S.D. Cal. Jan. 9, 2023) ............................................... 5

*Taylor v. Shippers Transp. Express, Inc.*,
No. CV13-02092-BRO (PLAx), 2015 U.S. Dist. LEXIS 191461 (C.D. Cal. May 14,

2015) ............................................................................................ 13, 5

*Uschold v. NSMG Shared Servs., L.L.C.*,
   No. 18-cv-01039-JSC, 2020 WL 3035776 (N.D. Cal. June 5, 2020) ................ 13, 15

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................ 4, 7, 8

*Xcel Energy, Inc.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................ 16

*Yanez v. HL Welding, Inc.*,
   2022 U.S. Dist. LEXIS 46169 (S.D. Cal. Mar. 15, 2022) .......................................... 7

**Statutes**

Cal. Civ. Proc. Code § 1021.5 .................................................................... 3

Cal. Lab. Code § 218.5 ........................................................................ 13

Cal. Lab. Code §§ 1194 ......................................................................... 3

840956.19

## MEMORANDUM OF POINTS AND AUTHORITIES

In accordance with the Court's April 24, 2023 Order re: Motion for Preliminary Approval (ECF No. 625), granting preliminary approval of the parties' class action settlement, Plaintiffs Anthony Ayala and Gabriel Nunez move for an award of $1,563,333 in attorneys' fees (representing one-third of the $4,690,000 settlement fund), $874,831.48 in litigation expenses, and for a $10,000 incentive award to Class Representative Anthony Ayala. The Settlement resolves two cases, which have been combined into one amended complaint in the instant case for settlement purposes: (1) *Ayala v. U.S. Xpress, Inc., et al.*, Case No. 3:18-CV-05813 (C.D. Cal.) and (2) *Nunez v. U.S. Xpress, Inc., et al.*, Case No. BC711661 (L.A. Super. Court) (alleging PAGA violations).  The results in this case and the legal effort and time required of Class Counsel to achieve such a result justify the requested modest upward departure from the "benchmark" fee of 25% of the common fund, for the following reasons.

As the Court is aware, the settlement, reached on the third day of a class-wide jury trial after nearly 8 years of hard-fought litigation, provides significant concessions obtained from USX which provide a large and substantial benefit to the class of 1,105 California truck drivers.

*First*, the settlement achieved significant relief for California drivers employed by Defendants U.S. Xpress, Inc. and U.S. Xpress Enterprises, Inc. (together, "USX").  The Settlement requires USX to pay $4,690,000, plus a separate payment of the employer's share of payroll taxes for the wage portion of the settlement payment, for 1,105 individuals who are eligible to participate in the settlement.  This results in an average payment amount, after costs and fees, of: $1,997 per class member. *See* Declaration of Justin L. Swidler in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Swidler Fees Decl.") ¶ 27, filed herewith.  Class members who were employed the longest will receive over $13,000 each. *Id.*

*Second*, Class Counsel took on significant litigation risk and bore the financial burden of litigating this case on a contingency basis for nearly eight years of hard-fought

litigation.  Not only did Class Counsel dedicate a substantial amount of hours on this case (more than 6,500 hours), Class Counsel also took significant risk in fronting all litigation costs associated with this matter, which included substantial expert costs, among other expenses required to properly litigate this matter through the first week of trial.

The extraordinary amount of effort and expense dedicated by Class Counsel to bring this matter to a successful completion on behalf of the class cannot be reasonably disputed. This case settled only after nearly eight years of litigation, numerous failed private mediations, an interlocutory appeal, discovery motion practice, summary judgment motion practice, class certification motion practice, dozens of depositions and significant electronic discovery.  It was only at the eleventh hour – in the middle of the *third* day of a jury trial – the Parties reached a class-wide settlement wherein USX will pay $4,690,000 to settle all claims in this action.  The amount ultimately obtained in settlement during the third day of the trial represents the highest settlement offer USX ever made at any point during nearly eight years of litigation. Swidler Decl. at ¶ 28. Thus, Class Counsel's continued efforts to push the case forward ultimately resulted in a significant benefit to the Class.

Indeed, to ensure the Class will realize such benefit, Class Counsel agreed to request fees as a percentage of the fund, rather than requesting a lodestar award.  As provided in detail herein, the percentage requested by Class Counsel represents only a fraction of their calculated lodestar, producing a negative lodestar multiplier of 0.21. In other words, should the Court grant the request, Class Counsel's services to the class will be provided at a discount of nearly 80% when compared to services billed at their reasonable hourly rates.

In these circumstances, Plaintiffs' request for Class Counsel fees of one-third of the settlement fund is reasonable and should be approved by the Court.

Furthermore, the Court should approve Plaintiffs' request to reimburse Class Counsel for their out-of-pocket litigation expenses reasonably incurred in litigating this matter.  Class Counsel fronted all litigation costs, and agreed to only recover such costs

if they succeeded in recovering for the class.  As provided in detail in Class Counsel's attached declarations and detailed costs records, Class Counsel collectively fronted $939,217.48 in litigation costs, costs which were reasonably incurred in pursuing the class's interests in this dispute.  The Court should approve Plaintiffs' request that the Settlement Fund reimburse Class Counsel for $874,831.48 of such expenses.[1]

The Court should also approve Plaintiffs' request to approve the requested service payment to Class Representative Ayala of $10,000. Mr. Ayala was instrumental to the class in pursing this action.  He assisted throughout discovery, participated in numerous mediations, and was present at counsel table throughout the trial.  His dedication to the case cannot reasonably be disputed, and his commitment to the class ultimately resulted in a successful recovery for 1,105 absent class members who will recover, on average, more than $1,997 each due to his efforts. Swidler Decl. ¶ 29.

Accordingly, Plaintiffs respectfully request that the Court approve the requested attorneys' fees, reimbursement of actual litigation expenses, and approve a $10,000 service award in recognition of Class Representative Ayala's critical efforts to reach this settlement.

## I.  THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES

Plaintiffs are entitled to recover their attorneys' fees and costs for prevailing on their asserted claims.  *See* Cal. Lab. Code §§ 1194(a), 2699(g)(1); Cal. Civ. Proc. Code § 1021.5.  Here, Plaintiffs are prevailing parties and entitled to recover their reasonable attorneys' fees and costs because they obtained a successful settlement.  *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff.").

---

[1] As discussed *infra*, a prior order of the Court (ECF No. 223) awarded Plaintiffs expert costs of $64,386, and Plaintiffs have therefore reduced the amount they seek to be reimbursed from the Settlement Fund to account for the prior reimbursement.

840956.19

In the Ninth Circuit, district courts have the discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method in evaluating a request for attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) ("*Bluetooth*"). A district court can depart from the Ninth Circuit's 25% "benchmark" for a reasonable fee award if it provides an adequate explanation of the special circumstances that justify the departure. *Id.* at 942.

Plaintiffs request attorneys' fees equal to one-third (or 33.3%) of the $4.69 million common fund, or $1,563,333. Plaintiffs' request for a higher percentage than the 25% benchmark is justified because of the size of the common fund (*i.e.* under $10 million), the significant result for the 1,105 individuals eligible to participate in the Settlement, the risks Class Counsel took in litigating a contingency fee case, and because the lodestar cross-check results in a substantial negative multiplier that supports a finding that the fee request is reasonable.

## A. An Attorneys' Fees Award of One-Third of the Settlement Common Fund Is Well Supported by Caselaw.

In cases resulting in settlements such as this one, courts have approved fees of one-third of the settlement common fund. An upward departure from the benchmark is often appropriate for common funds below $10 million. *See, e.g.*, *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result in fees above 25%."); *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 4:19-cv-07087-DMR, 2021 WL 4133860, at *5 (N.D. Cal. Sept. 10, 2021) (same; awarding one-third of the settlement common fund); *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) ("California district courts usually award attorneys' fees in the range of 30-40% in

840956.19

wage and hour class actions that result in the recovery of a common fund under $10 million"; awarding one-third of the $2.6 million settlement common fund); *Bennett v. SimplexGrinnell LP*, No. 3:11-cv-01854-JST, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (38.8% of a $4.9 million common fund); *Smith v. CRST Van Expedited, Inc.*, No. 3:10-cv-01116-IEG, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) (33 1/3 % fee, and citing wage and hour class actions awarding fees of 40% of a common fund).  Indeed, "wage and hour class action cases in California often depart from the 25% benchmark." *Taylor v. Populus Grp., LLC*, 2023 U.S. Dist. LEXIS 3904, *9 (S.D. Cal. Jan. 9, 2023).

In similar wage and hour lawsuits involving minimum wage claims of truck drivers, courts have awarded one-third of the class settlement as fees.  *See e.g. Fritsch v. Swift Transp. Co. of Ariz., LLC*, No., 2022 U.S. Dist. LEXIS 14589, at *2 (C.D. Cal. Jan. 4, 2022); *Taylor v. Shippers Transp. Express, Inc.*, 2015 U.S. Dist. LEXIS 191461, at *50 (C.D. Cal. May 14, 2015).

Courts frequently grant fee awards greater than the twenty-five percent benchmark where, as is here, the requested award is less than the total lodestar, which supports the reasonableness of the requested award.  *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 2:16-cv-06794-AB-JC, 2020 WL 5668935, at *7 (C.D. Cal. Sept. 18, 2020) (awarding one-third of the fund where class counsel's lodestar was greater than the requested award); *Moreno*, 2021 WL 4133860, at *6 (awarding one-third of the common fund where there was a substantial negative multiplier); *Flores v. TFI Int'l, Inc.*, No. 3:12-cv-05790-JST, 2019 WL 1715180, at *10 (N.D. Cal. Apr. 17, 2019) (granting attorneys' fees totaling 61% of the total amount paid by Defendants where the award was 83% of counsel's lodestar); *see also Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (a negative multiplier "strongly suggests the reasonableness of the negotiated fee").  Compensation at the 25% benchmark would significantly undercompensate Class Counsel in light of, among other things, the significant amount of time counsel incurred in these two matters and the excellent result obtained in a case in which recovery was uncertain due to the litigation risks and USX's

staunch defense in this matter. *See* Declaration of Justin L. Swidler in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Swidler Decl.") ¶¶ 18, 23. As provided herein, should the Court grant Plaintiffs' request awarding one-third of the settlement as fees, Class Counsel will be awarded only 21% of their $7,434,954 lodestar to date (which, among other items not included, does not include time and effort required to obtain final approval, distribute any approved settlement, and enter final judgment). *See* Swidler Decl. ¶ 24 (Swartz Swidler adjusted lodestar: $1,458,047.25 Declaration of David Borgen ("Borgen Decl."), filed herewith, at ¶ 22 (GBDH adjusted lodestar: $4,132,026 Sitkin Decl. ¶ 17 (Law Office of James Sitkin adjusted lodestar: $1,843,113.78)

Thus, Plaintiffs' requested award of one-third of the settlement fund is reasonable and consistent with similar wage and hour cases.

## B.    <u>Given the Results Obtained and Risk Borne by Class Counsel, the Court Should Award Fees Equal to One-Third of the Common Fund</u>.

While the "benchmark" for a reasonable percentage-of-the-fund award is twenty-five percent in the Ninth Circuit, district courts may adjust the lodestar to account for several factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of non-payment. *Bluetooth*, 654 F.3d at 942. Here, the effective litigation by highly experienced Class Counsel resulted in a substantial settlement for the settlement class members and Class Counsel took on the risk of litigating a complex wage and hour misclassification case on contingency. Moreover, these results were only achieved by Class Counsel's significant efforts which included significant disputed motion practice, including class certification, *Daubert*, and summary judgment, as well as preparing for and conducting a class wide trial which lasted for several days prior to the Parties reaching a settlement on the third day of trial.

When a court awards fees as a percentage of the common fund and determines whether to depart from the benchmark, the ultimate consideration is whether the fee award

840956.19

is reasonable.  The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel (contingent lodestar and costs); and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50; *Yanez v. HL Welding, Inc.*, 2022 U.S. Dist. LEXIS 46169, *31 (S.D. Cal. March 15, 2022).

All these factors support Plaintiffs' requested fee award.

### 1.  <u>The Excellent Settlement Result Supports the Fee Request.</u>

In light of the litigation and appellate risks and the per person allocation achieved, Class Counsel negotiated an excellent settlement, which justifies the modest upward adjustment to a fee of one-third of the fund.  The Settlement provides a payment of $4,690,000.00, plus a separate payment of the employer's share of payroll taxes for the wage portion of the settlement payment.  As stated above, to obtain the settlement result ultimately achieved—which represents the highest offer USX made at any time during the 7+ years of litigation—Class Counsel was required litigate the case through the third day of a class-wide jury trial. Class Members will receive an average pre-tax award of $1,997, which some class members receiving awards as high as over $13,000.  Swidler Decl. at ¶ 29. The monetary benefits for the settlement members are significant and favor an upward adjustment from the benchmark. *Cf. Deaver*, 2015 WL 8526982, at *11 (Scott Corley, J. noting that an average recovery of over $700 for those who submitted claims was "very favorable" considering the litigation challenges).

The excellent result in this settlement – the most important factor for a departure from the 25% benchmark – supports Plaintiff's request for attorneys' fees equal to one-third of the settlement fund.

### 2.  <u>Class Counsel Took on Substantial Risk to Litigate this Case and Bore the Financial Burden of Litigating on a Contingency Basis.</u>

The requested fee is also reasonable in light of the risks associated with litigating

on a contingent basis. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee .... This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees.") (citations omitted). Class Counsel dedicated significant attorney resources to the prosecution of this litigation, which reduced Counsel's ability to work on less risky cases in which recovery of fees was more certain. Swidler Decl. ¶ 18; Borgen Decl. ¶ 24. In the time that these cases have been pending, Class Counsel have not received any compensation or reimbursement from their clients for their efforts and have advanced all expenses. Swidler Fees Decl. ¶ 18; Borgen Decl. ¶ 24. The significant outlay of Class Counsel's resources in terms of both time and out of pocket expenses was wholly dependent upon obtaining a substantial recovery for the Settlement Class. Class Counsel bore those expenses because of the potential of recovering a fee award if they succeeded. Swidler Fees Decl. ¶ 18; Borgen Decl. ¶ 24.

Class Counsel's fee request is supported by its willingness to take on the significant litigation risks involved in a complex minimum wage case in the prospect of a changing and unclear legal regime. Despite such risks, Class Counsel zealously advocated for Plaintiffs and the class, and incurred hundreds of thousands of dollars of out-of-pocket costs which they would not have recouped had they not successfully resolved this action on behalf of the Class. This is not a case in which a substantial settlement and a recovery of a large attorney's fee was a foregone conclusion. *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Due to the complexity of proving liability and damages, Plaintiffs faced risk they could lose on the merits after extensive litigation. *See Deluca v. Farmers Ins. Exch.*, No. 3:17-cv-00034-TSH, 2020 WL 5071700, at *4 (N.D. Cal. Aug. 24, 2020) ("Employment class actions are, by their nature, time-consuming and expensive to litigate. Wage and hour trials are complex and expensive.") (internal quotations and

citations omitted).  USX maintained significant defenses that placed substantial risk on Plaintiffs, both in their ability to prevail and to maintain a class action through trial: (i) USX maintained that California law did not apply to the class and/or was preempted by federal law; (ii) USX argued that it paid for all time a driver was under a paid load because it asserted the mileage-based pay provided pay based on the trip, and paid for all compensable work during such time; and (iii) USX asserted that its pay policies paid minimum wages for all hours worked.

Additionally, to prevail at trial, Plaintiffs were required to present an admissible damages model to estimate hours worked and damages for the class.  USX did not maintain accurate time records of time worked, but instead maintained complex datapoints stored over numerous database tables which required significant expertise and analysis to review.  USX's struggles with producing such data, and the significant effort and costs of analyzing such information once received, are well documented in the Court's docket. *See, e.g.* December 28, 2018 Order at 2-4 (ECF No. 202).  Ultimately, these complexities produced substantial out-of-pocket expert costs, which were incurred by Class Counsel and which Class Counsel would not have recouped in the absence of a recovery.

Even without the inclusion of expert fees, Class Counsel's out-of-pocket litigation costs were substantial.  The Parties engaged in numerous private mediations, ultimately generating tens of thousands of dollars in mediator fees.  Similarly, the case settled on the third day of trial, and significant costs were necessarily incurred for trial, including those related to exhibits, digital presentations, and travel of Class Counsel and witnesses.

Finally, Class Counsel collectively spent more than 6,500 attorney hours litigating this matter through trial.

Due to the contingent nature of Class Counsel's representation, such cost and time would have been lost if there was no recovery for the class.  Thus, because Class Counsel took on significant risk to represent low-wage workers on novel legal theories under California wage and hour law, the Court should find the requested fee reasonable.

The substantial risk undertaken by Class Counsel in litigating a complex wage and hour case involving the minimum wage rights of interstate transportation workers supports the fee request of 1/3 of the settlement fund.

### C. Class Counsel's skill in representing the class supports the fee request.

Throughout the entire litigation, Class Counsel represented the class with substantial skill and zealously. As provided herein, this case was hard fought and settled in the midst of a class-wide jury trial. The settlement achieved at trial was the highest offer made by USX during the entire litigation. Achieving such a settlement was only possible due to the skilled efforts of Class Counsel throughout the litigation and trial.

In each of the attached declarations from Class Counsel, counsel has provided details regarding their experience and expertise in this area of the law. *See* Swidler Decl. ¶11-15 Borgen Decl. ¶¶3-9; Sitkin Decl. ¶¶ 4-7.

Thus, the skill required in this litigation supports the fee request.

### D. Class Counsel's Lodestar for Work Performed for the Class Also Supports the Award Sought.

The requested fee is also appropriate under the lodestar cross check to confirm the reasonableness of the fee. *See Philips*, 2021 WL 326924, at *9. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Philips*, 2021 WL 326924, at *8 (citing *Bluetooth*, 654 F.3d at 941).

#### 1. Class Counsel's Hourly Rates are Reasonable.

Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similarly complex federal litigation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Here, Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill in litigating complex class and collective actions involving California and federal wage and hour laws

10

840956.19

and the jurisdictions in which they are located.  Swidler Decl. ¶11-15, 22 Borgen Decl. ¶¶3-9; Sitkin Decl. ¶¶ 4-7. The background and experience of the primary attorneys who worked on this matter are set forth in the supporting declarations of Class Counsel.  *Id.* Their rates are summarized in the table below:

| Rates for Goldstein, Borgen, Dardarian & Ho | | |
|---|---|---|
| **Professional** | **Law School Graduation Year** | **2023 Rate** |
| David Borgen, Partner | 1981 | $1075 |
| James Kan, Partner | 2005 | $925 |
| Raymond Wendell, Partner | 2013 | $800 |
| Jacqueline Thompson, Senior Paralegal | -- | $395 |
| **Rates for James Sitkin** | | |
| **Professional** | **Law School Graduation Year** | **2023 Rate** |
| James Sitkin | 1983 | $1075 |
| Katherine E. Fox, Paralegal | | $350 |
| **Rates for Swartz Swidler, LLC** | | |
| **Professional** | **Law School Graduation Year** | **2023 Rate** |
| Justin L. Swidler, Managing Partner | 2007 | $925 |
| Joshua S. Boyette, Partner | 2010 | $850 |
| Travis Martindale, Partner | 2014 | $775 |
| Daeun Kim, Lead and Trial Paralegal | | $350 |

Class Counsels' hourly rates have been approved by other federal and state courts. Recent approvals of GBDH rates include: *Githieya v. Global Tel Link Corp.*, Case No. 1:15-CV-00986-AT (add court info) (Aug. 30, 2022), ECF No. 369 ¶ 32 (approving several GBDH's attorneys' 2022 rates reasonable); *Lashbrook v. City of San Jose*, No. 5:20-cv-01236-NC (N.D. Cal. Sept. 2, 2020), ECF No. 25 (finding that GBDH's 2020 hourly rates were "within the market range of hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation"); *Nevarez v. Forty Niners Football Co., LLC*, No. 5:16-cv-07013-LHK (N.D. Cal. Jul. 23, 2020) , ECF No.

416 (awarding full lodestar based on GBDH's 2019 hourly rates, adjusted by an upward multiplier of 1.124); *Flowers v. Twilio, Inc.*, No. RG16804363 (Alameda Cnty. Super. Ct. June 13, 2019) (finding that GBDH's "2019 hourly rates are reasonable and commensurate with the prevailing rates for class actions"); *Yumori Kaku v. City of Santa Clara*, No. 17-CV-319862 (Santa Clara Cnty. Super. Ct. Jan. 22, 2019) (finding GBDH's 2018 hourly rates reasonable and "comparable to rates charged by other local attorneys with specialized skills that are necessary for litigating complex cases involving novel issues"); *Siciliano v. Apple, Inc*., No. 2013-I-CV-257675 (Santa Clara Cnty. Super. Ct. Nov. 2, 2018) (approving GBDH's 2018 rates as reasonable in contested lodestar fee award).

Moreover, Class Counsel's rates are well within the range of rates charged by similarly experienced and qualified attorneys practicing in their respective jurisdictions area, and are those charged other clients who pay for attorneys' fees on an hourly basis. Borgen Decl. ¶ ¶ 10-13; Swidler Decl. ¶ 22.

## 2.   The Number of Hours Claimed is Reasonable.

Class Counsel has maintained detailed time records billed at 1/10 of an hour increments and are filing their detailed billing records through July 1, 2023.  Swidler Decl. ¶¶ 20-21; 23-26; Borgen Decl. ¶¶ 14, 22; Sitkin Decl. ¶¶ 13, 17..  Class Counsel has reviewed these records and has exercised billing judgment twice: first, each firm closely reviewed their records and exercised billing judgment by eliminating vague or duplicative entries. *Id.*  Class Counsel further removed all hours which were submitted to the Court in early 2019 in their request for sanctions, even though the Court denied payment at that time for some of the hours claimed, including because the hours were not caused by discovery misconduct for which the sanction was to be issued. *Id.*

After making all such deductions, each firm representing the class also took at least a 10% across-the-board reduction in their respective lodestar amounts as a further exercise of billing judgment.   Swidler Decl. ¶ 24; Borgen Decl. ¶ 20; Sitkin Decl. ¶ 13. Furthermore, the documented lodestar does not include work necessary to obtain final

approval, distribute class awards, and complete the administration of the settlement through judgment. The lodestar does not include hours spent by counsel working on the instant motion.

Even after making all such deductions from the lodestar, a reasonable lodestar calculation for Class Counsel is: $7,434,954. *See* Swidler Decl. ¶ 24; Borgen Decl. ¶ 22; Sitkin Decl. ¶ 17.

As the Court is aware, and the number of hours required demonstrates, this case was hard fought and resulted in settlement only at the literal eleventh hour—after lunch on the third full day of the class-wide jury trial.

## E.   Awards in Similar Cases Confirm the Reasonableness of the Requested Fee Award.

As provided *supra*, in similar wage and hour cases brought by truck drivers in this circuit, courts have awarded class counsel one-third of the fund as a reasonable fee. *See e.g. Fritsch*, 2022 U.S. Dist. LEXIS 14589, at *2; *Taylor*, 2015 U.S. Dist. LEXIS 191461.

## II.   THE COURT SHOULD AWARD THE REQUESTED LITIGATION COSTS

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reasonable litigation expenses from that fund." *Philips*, 2021 WL 326924, at *10 (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014)); *see also* Cal. Lab. Code §§ 218.5; 2699(g)(1). "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses – including reasonable travel expenses – in wage-and-hour class actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (citations omitted); *see also Uschold v. NSMG Shared Servs., LLC*, No. 3:18-cv-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (approving litigation expenses including mediation costs). Courts also regularly award administration costs associated with providing notice to the class. *See, e.g.*, *Bellinghausen*, 306 F.R.D. at 266; *Uschold*, 2020 WL 3035776, at *1

## A.   **The Costs are Reasonable.**

Here, Class Counsel has incurred out-of-pocket costs totaling $939,217.48, including, expert fees, fees relating to distributing class notice, mediation costs, transcript costs, ESI consultants, trial costs, travel costs and filing fees. Swidler Decl. at ¶ 10 ($391,759.61 in costs); Borgen Decl. ¶ 27 ($390,594.56 in costs) Sitkin Decl. ¶ 18 ($156,863.31 in costs)  Importantly, pursuant to the February 14, 2019 Sanctions Order, Class Counsel previously received reimbursement for $64,386 in out-of-pocket expert costs incurred to Dr. Speakman.  (ECF No. 223).   Thus, Plaintiffs herein seek reimbursement of Class Counsel's out-of-pocket costs, reduced by the amount they were previously awarded, totaling: $874,831.48.

Class Counsel seeks to recover the types of costs typically recoverable in by attorneys who successfully recover on behalf of a class including: expert costs, costs for mediation, trial preparation, exhibit preparation, jury consultant costs, filing costs, class notice notices, and other costs, all which are fully documented in Class Counsel's attached declarations. *See* Swidler Decl. at ¶ 27; Ex. B attached to Swidler Decl.; Borgen Decl. ¶ 27; Ex. 3 attached to Borgen Decl.; Sitkin Decl. ¶ 18 Ex. 2 attached to Sitkin Decl.  Class Counsel has provided detailed accounting of all costs for which they seek to be reimbursed.  *Id.*

Plaintiffs recognize that the expert costs in this action are in the higher-end of expert fees typically incurred in wage and hour class actions, and summarize herein why such costs are reasonable.

The vast majority of Plaintiffs' expert costs for which Plaintiffs seek the Court order may be recouped from the settlement fund—$626,864.87—were billed by Dr. Speakman.[2]   Due to the substantial costs involved, Plaintiffs have attached Dr.

---

[2] Dr. Speakman's total billings to Plaintiffs in this action totaled: $691,250.87. Swidler Decl. Ex. C. However, as stated *supra,* in February of 2019, the Court ordered USX to pay $64,386.00 to reimburse Plaintiff for expert costs incurred to Dr. Speakman. (ECF No. 223).  Thus, Plaintiffs here reduced their request for costs by the same amount, thereby reducing the amount of costs related to Speakman to: $626,864.87.

840956.19

Speakman's invoices, which include his billing detail, for all work he performed in this action. *See* Ex. C, attached to Swidler Decl. Though such costs are substantial, they were necessary and reasonable given the complex issues involved in this litigation.

Dr. Speakman was retained by Plaintiff Ayala on behalf of the class to perform class wide damages calculations. Dr. Speakman is an economist who specializes in labor economics and econometrics. (ECF No. 611 at 447:22-25). In this action, he was retained to estimate damages under various theories of liability which were to be tried by the jury. Dr. Speakman's testimony and calculations were of significant and substantial value to the class—indeed, Defendants' request to engage in a frank settlement discussion with the Court occurred immediately after Dr. Speakman's testimony on the third day of trial.

Dr. Speakman's calculations required significant effort and time to complete. Dr. Speakman testified that he was required to analyze an enormous volume of data, with over 16,000 files, each containing up to 1,000 unique fields. These fields contained information ranging from personal details to employment specifics such as duty status and location. Visualizing the scale, Dr. Speakman testified that one data file contained nearly 200 million rows of data, equating to a stack of printed papers higher than six and a half football fields standing end-to-end. *Id.* at 454-458.

With millions of lines of data, organizing, reviewing, and analyzing it all required a significant amount of time. The data was intricate and required meticulous attention to ensure accuracy and comprehensiveness. And as the Court is aware from prior filings, Dr. Speakman was required to perform these calculations multiple times because USX's initial data productions ultimately contained significant errors and needed to be replaced in full. *See* December 28, 2018 Order at 2-4 (ECF No. 202).

It cannot be reasonably disputed that Dr. Speakman was necessary and integral to Plaintiffs' case in chief, and his testimony and calculations ultimately benefited Plaintiffs significantly and impacted the ultimate resolution of this action.

Thus, the Court should find the costs incurred in the nearly 8-year litigation were reasonable and necessary, and should order that Class Counsel be reimbursed for the costs

1   they incurred out of the settlement fund.

2       **III.**    **THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARD.**

3       Anthony Ayala, the only named plaintiff in the federal action and appointed as the

4   sole Class Representative by the Court, seeks an incentive award of $10,000 for the risks

5   he took and work he performed on behalf of the class.

6       "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g*

7   *Corp*., 563 F.3d 948, 958 (9th Cir. 2009). "[They] are intended to compensate class

8   representatives for work done on behalf of the class, to make up for financial or

9   reputational risk undertaken in bringing the action, and, sometimes, to recognize their

10   willingness to act as a private attorney general." *Id*. at 958-59.

11       By bringing suit against a large company and having documents publicly filed with

12   their names on them, named plaintiffs who assist in class action litigation "[take] on

13   certain risks.  By bringing suit against a major company[,]… they risk their good will and

14   job security in the industry for the benefit of the class as a whole." *Id.*; *see also Camp v.*

15   *Progressive Corp*., 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) (allowing

16   incentive awards to named plaintiffs and other class members who participated in

17   discovery); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*, 364 F.

18   Supp. 2d at 1000 ($100,000 award approved to lead plaintiffs); *Brotherton v. Cleveland*,

19   141 F. Supp. 2d 907, 913–14 (S.D. Ohio 2001) (awarding a $50,000 service payment to

20   the class representative out of a $5.25 million common fund); *Cook v. Niedert*, 142 F.3d

21   1004, 1009, 1016 (7th Cir. 1998) (awarding a $25,000 incentive award to the class

22   representative); *Austin v. Metro. Council*, 2012 U.S. Dist. LEXIS 41750, *32 (D. Minn.

23   Mar. 27, 2012) (approving $20,000 award).

24       As provided in the submitted declaration of Anthony Ayala, Mr. Ayala provided

25   significant assistance in this litigation, participated in discovery, sat for deposition,

26   traveled to Los Angeles to participate in the trial, remained with counsel at counsel table

27   throughout the trial, and assisted counsel in prosecuting the case and bringing the case to

28   its conclusion.  Mr. Ayala sacrificed significant time – more than 100 hours, as well as

significant and sustained effort through the entirety of the litigation, and his modest request for a service payment is especially reasonable based on his substantial participation in bringing and prosecuting this action. Declaration of Anthony Ayala, filed herewith, ¶¶ 4-11. The reasonableness of the service payment is further demonstrated by the fact that it amounts to just 0.2% of the total settlement fund.

Courts have approved incentive payments of $10,000 in similar cases. *See Mondrian v. Trius Trucking Inc.*, 2022 U.S. Dist. LEXIS 184152 (E.D. Cal. Oct. 6, 2022) (approving two $10,000 incentive payments which totaled about 2% of the total settlement fund where plaintiffs actively participated in litigation on behalf of other truck drivers, risked getting blacklisted, and dedicated 40-50 hours of their time in assisting with prosecution of case); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052, (E.D. Cal. Oct. 31, 2012) (approving a service fee of $15,000); *Ozga v. U.S. Remodelers, Inc.*, 2010 U.S. Dist. LEXIS 91196, (N.D. Cal. Aug. 9, 2010) (approving service fees of $10,000).

Based on the foregoing, Plaintiffs respectfully request the Court approve the requested incentive payment to Mr. Ayala of $10,000.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that the Court: (1) approve Plaintiffs' request for attorneys' fees of $1,563,333; (2) approve reimbursement of actual litigation costs of $874,831.48 and (3) approve a service award of $10,000 for Class Representative Anthony Ayala.  A Proposed Order will be submitted with the Motion for Final Approval, to be filed by August 18, 2023.

Dated: July 7, 2023

Respectfully submitted,

SWARTZ SWIDLER LLC

*/s/ Justin L. Swidler*
Justin L. Swidler

17

840956.19

1  Joshua S. Boyette

2  GOLDSTEIN, BORGEN, DARDARIAN &
3  HO

4  David Borgen, Of Counsel
   James Kan
5  Raymond A. Wendell

6  Attorneys for Plaintiff Anthony Ayala and the
   Certified Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

840956.19